IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON WALTERS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-cv-01840-K |
| | § | |
| EXEL, INC. D/B/A DHL SUPPLY CHAIN, | § | |
| | § | |
| *Defendant*. | § | |

## DEFENDANT'S UNOPPOSED MOTION TO EXTEND EXPERT DESIGNATION DEADLINE

COMES NOW Defendant Exel Inc. ("**Defendant**") and submits this Unopposed Motion to Extend Expert Designation Deadline and, in support thereof, would respectfully show the Court as follows:

1. Plaintiff Jason Walters ("**Plaintiff**") filed his Original Complaint [Doc. #1] on August 19, 2022 to assert claims against Defendant under the FLSA and COBRA.

2. On January 25, 2023, Plaintiff was granted leave to file his Second Amended Complaint [Doc. #19].

3. The Second Amended Complaint [Doc. #18] ("**Second Amend. Compl.**") added an additional claim against Defendant for Title VII discrimination.

4. On June 5, 2023, this matter was reassigned to Hon. Judge Kinkeade [Doc. # 33].

5. The Court thereafter *sua sponte* entered a Second Amended Scheduling Order [Doc. # 41] on June 14, 2023.

6. In relevant part, the Second Amended Scheduling Order requires the parties to each file a written designation of their testifying experts and otherwise comply with Fed. R. Civ. P. 26(a)(2) on or before October 27, 2023. *See id.*

7. The parties mediated Plaintiff's claims on August 14, 2023 but were unable to reach an agreed settlement [*see* Doc. # 46].

8. On September 7, 2023, Plaintiff provided his objections and responses to Defendant's Second Set of Interrogatories (**Exhibit 1**) and Second Set of Requests for Production (together, the "**Second Discovery Set**").

9. By the Second Discovery Set, Defendant sought information regarding Plaintiff's claim for back- and front-pay as well as compensatory damages, which claims were added by Plaintiff's Second Amended Complaint. *See id.*; *see also* Second Amend. Compl.

10. By email on October 27, 2023, Defendant identified various deficiencies in Plaintiff's responses to the Second Discovery Set, including that he did not provide the information requested thereby with respect to any specific mitigation efforts by Plaintiff. *See* Ex. 1; *see also* **Exhibit 2** (conferral email).

11. Plaintiff respectfully requests the deadline for the parties' expert designations be extended to and including November 27, 2023, to account for Plaintiff's amendment and supplementation of his prior discovery responses, in accordance with the Federal Rules.

12. The requested extension does not include or affect any other deadlines applicable to this matter, including the current discovery deadline of January 15, 2024 or the trial date of October 7, 2024. [*See* Doc. # 41].

13. Defendant makes such request for extension not for purposes of delay, but so that justice may be done.

Submitted this 27th day of August, 2023.

Respectfully Submitted,

*/s/ Theanna Bezney*
Annie Lau
Texas Bar No. 24057723
Theanna Bezney
Texas Bar No. 24089243
Fisher & Phillips LLP
500 North Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
*alau@fisherphillips.com*
*tbezney@fisherphillips.com*

**COUNSEL FOR DEFENDANT**
**EXEL INC. d/b/a DHL SUPPLY CHAIN**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that I conferred with Bob Whitehurst, counsel of record for Plaintiff, by email regarding the relief requested herein. Mr. Whitehurst advised Plaintiff does not oppose such extension request.

*/s/ Theanna Bezney*
Theanna Bezney

## CERTIFICATE OF SERVICE

      I hereby certify that on this 27th day of October, 2023, I electronically filed the foregoing document with the Court's electronic case filing system, which shall send notice of the foregoing filing to all counsel of record, as follows:

Bob Whitehurst
Texas Bar No. 21358100
WHITEHURST & WHITEHURST
5380 Old Bullard Road, Suite 600, #363
Tyler, TX 75703
Tel: (903) 593-5588
*whitehurstlawfirm@yahoo.com*

Donald E. Uloth
LAW OFFICE OF DONALD E. ULOTH
18208 Preston Road, Suite D-9 #261
Dallas, TX 75252
Phone: (214) 989-4396
*don.uloth@uloth.pro*

                                                  */s/ Theanna Bezney*
                                                  Theanna Bezney

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JASON WALTERS
    PLAINTIFF

vs.                                          CIVIL ACTION 3:22-cv-01840-C
                                                JURY REQUESTED

EXEL, INC. D/B/A
DBA DHL SUPPLY CHAIN
    DEFENDANT

**PLAINTIFF'S RESPONSE AND OBJECTIONS TO DEFENDANT'S SECOND SET OF INTERROGATORIES**

TO: EXEL, INC. D/B/A DHL SUPPLY CHAIN, by and through their attorney of record, Ms. Theanna Bezney , Fisher & Phillips, LLP., 500 North Akard Street, Suite 3550, Dallas, Texas 75201, *tbezney@fisherphillips.com*

      COMES NOW, Plaintiff JASON WALTERS  in the above-entitled and numbered cause, and submit the following Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories  pursuant to the Federal Rules of Civil Procedure.

      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules"), Plaintiff, serves these written responses and objections to Defendant's First Set of Interrogatories as follows.

GENERAL OBJECTIONS

1. Plaintiff objects to each and every one of Defendant's Interrogatories to the extent they request information or documents protected from discovery by the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege or immunity from disclosure. Production of any document or information subject to such privilege, protection

or immunity in response to any of Defendant's requests is inadvertent and shall not constitute or be deemed to constitute a waiver of such privilege, protection or immunity.

2. Nothing contained in any response herein shall be deemed to be an admission, concession or waiver by Plaintiff as to the relevance, materiality or admissibility of any document or information provided in response to Defendant's discovery requests.

3. Plaintiff responds to each of Defendant's interrogatories based on the information available as of the date hereof and will provide information in his control, custody or possession which is responsive to Defendant's requests and not otherwise protected from discovery.  Plaintiff reserves the right to supplement or amend its responses as it may hereafter deem appropriate.

4. Plaintiff objects to each and every one of Defendant's Interrogatories on the grounds that individually and cumulatively the interrogatories are so broad and ambiguous as to constitute a burden far in excess of that authorized or imposed by the Federal Rules or warranted by the materiality of the information requested in relation to the issues before the Court in these proceedings and that the information requested in large part is more appropriately and efficiently to be obtained, if necessary at all, through other means of discovery. Plaintiff further objects that it is not required to marshall its order of proof at trial in response to these interrogatories.

5. Plaintiff objects to each and every one of Defendant's Interrogatories to the extent that the information requested constitutes confidential, proprietary or commercially sensitive information or information which is confidential and personal to the individuals involved.

6. The present of an objection to any interrogatory does not necessarily indicate that

information responsive to the interrogatory has been withheld from discovery

**INTERROGATORY NO. 14:** Describe all steps Plaintiff has taken in an effort to mitigate the economic damages claimed in this Lawsuit. To avoid vagueness and ambiguity, "describe all steps" means to identify each prospective employer Plaintiff has been in contact with; state the job title for each position to which Plaintiff applied with each prospective employer; describe the job duties for each position to which Plaintiff applied with each prospective employer; describe each category of compensation offered in connection with each position (*e.g.*, salary amount, method of bonus calculation, 401k match amount, etc.); state the date(s) of each pre-employment contact between Plaintiff and each potential employer; state the nature of each such pre-employment contact (*e.g.*, online application, resume submission, in-person interview, etc.); describe the nature of any reply or response received from each prospective employer; identify whether Plaintiff accepted any offer of employment; if Plaintiff declined any job offer, provide all reasons why Plaintiff declined such offer; and, if Plaintiff accepted any job offer and is not currently employed in such role, state the date and describe the circumstances under which such employment ceased.

**ANSWER**: Tried several different places, such as ABC auto,, several truck leasing, different positions, good prospect turned out did away with position. Logistic truck leasing looked at managerl posiitons with local places, such as whataburger that were close by. Several whataburgers owned by same people. Sent in resume, but nothing happened.

Plaintiff is a primary caretaker of his son Gunner. Gunner Walters was born in 2007 with a rare genetic disorder called CDKL5. Since birth he has been totally dependent on someone to take care of his needs twenty-four hours a day. He cannot walk, he is non-verbal, he is developmentally delayed and has global seizures. He has been on multiple medications since he was six months old. He has been hospitalized multiple times for respiratory illnesses and seizures. In November of 2019 he went into respiratory distress and was transported to the emergency room. He was later care flighted to Cook Children's hospital in Ft Worth and incubated. He ultimately had to have a tracheotomy placed in December 2019 due to his declining health. Recently in May of 2022 he was hospitalized for a bleeding duodenal ulcer. Due to all his health problems, he has multiple specialist who oversee his care and has many doctors' appointments that he must be taken to by his parents. In his day-to-day life he must be watched constantly due to his tracheotomy and seizure disorder either by his parents or the home health nurse on duty. He has multiple medications that must be given routinely throughout the day along with medications that are given on an as needed basis. Along with his daily care routine is diaper changes as he is fully incontinent, bathing, mouth care which includes brushing his teeth and suctioning his mouth, he cannot eat anything by mouth and has a G-Tube and must be fed a special formula through that tube continuously, which requires adding formula every few hours in addition to the administration of the medication through that G-tube as well. G-Tube care must be maintained as well and the tube itself changed out every six months. His heart rate and oxygen levels must be monitored twenty-four hours a day with a pulse asymmetry machine and oxygen is available as needed. He can not be left alone due the risk of seizures, oxygen levels dropping or any kind of complication due to his tracheotomy. When nursing care is not available the parents must watch him and take over all nursing care for Gunner. He has a very complex health condition which requires constant monitoring.

When Plaintiff was employed by the defendant, Plaintiff and his wife had in home nursing that helped out with the care of Gunner.   After the termination of Plaintiff, the in home nursing was not as available, because of the expense, which is requiring Plaintiff to care for his son, Gunner.

Also see response to Interrogatory No. 16 below.

**INTERROGATORY NO. 15:** Identify all income or financial support Plaintiff has received since March 16, 2022 (including severance pay, unemployment compensation, workers' compensation, disability payments, and any other State or Federal governmental benefits). To avoid vagueness and ambiguity, "identify all sources" means to identify the payee of such funds, the basis for Plaintiff's entitlement to receive such income or financial support, the dates every payment was paid to and/or received by Plaintiff from each source identified, the amount of each payment received, and any date or event after which Plaintiff's entitlement to such funds did or will cease, if applicable.

ANSWER:   Plaintiff received unemployment for a period of time, after the Texas Workforce Commission conducted an investigation and found that Defendant fired Plaintiff for a reason that was not misconduct connected with the work.   Payment received a weekly payment of approximately $549.00.  As set forth in interrogatory No. 16 below Plaintiff is a primary caretaker of his son Gunner.

When Plaintiff was employed by the defendant, Plaintiff and his wife had in home nursing that helped out with the care of Gunner.   After the termination of Plaintiff, the in home nursing was not as available, because of the expense, which is requiring Plaintiff to care for his son, Gunner.

**INTERROGATORY NO. 16:** If you have experienced any condition which prevented you from working between March 16, 2022, through the date of trial in this Lawsuit, or which imposed restrictions on your ability to work during such time, describe such condition. To avoid vagueness and ambiguity, "describe such condition" means to state (a) the date or date range during which Plaintiff experienced the condition, (b) the cause of the condition, (c) whether you were prevented from working entirely or were working under restrictions, and (d) the activities which you were prevented or restricted from performing as a result of the condition.

ANSWER:

Tried several different places, such as ABC auto,, several truck leasing, different positions, good prospect turned  out did away with position.  Logistic  truck leasing
looked at managerl posiitons with local places, such as whataburger that were  close by. Several whataburgers owned by same people.   Sent in resume, but  nothing happened.

Plaintiff is a primary caretaker of his son Gunner.  Gunner Walters was born in 2007 with a rare genetic disorder called CDKL5. Since birth he has been totally dependent on someone to take care of his needs twenty-four hours a day. He cannot walk, he is non-verbal, he is developmentally delayed and has global seizures. He has been on multiple medications since he was six months old. He has been hospitalized multiple times for respiratory illnesses and

seizures. In November of 2019 he went into respiratory distress and was transported to the emergency room. He was later care flighted to Cook Children's hospital in Ft Worth and incubated. He ultimately had to have a tracheotomy placed in December 2019 due to his declining health.  Recently in May of 2022 he was hospitalized for a bleeding duodenal ulcer. Due to all his health problems, he has multiple specialist who oversee his care and has many doctors' appointments that he must be taken to by his parents. In his day-to-day life he must be watched constantly due to his tracheotomy and seizure disorder either by his parents or the home health nurse on duty. He has multiple medications that must be given routinely throughout the day along with medications that are given on an as needed basis. Along with his daily care routine is diaper changes as he is fully incontinent, bathing, mouth care which includes brushing his teeth and suctioning his mouth, he cannot eat anything by mouth and has a G-Tube and must be fed a special formula through that tube continuously, which requires adding formula every few hours in addition to the administration of the medication through that G-tube as well. G-Tube care must be maintained as well and the tube itself changed out every six months.  His heart rate and oxygen levels must be monitored twenty-four hours a day with a pulse asymmetry machine and oxygen is available as needed. He can not be left alone due the risk of seizures, oxygen levels dropping or any kind of complication due to his tracheotomy. When nursing care is not available the parents must watch him and take over all nursing care for Gunner. He has a very complex health condition which requires constant monitoring.

When Plaintiff was employed by the defendant, Plaintiff and his wife had in home nursing that helped out with the care of Gunner.   After the termination of Plaintiff, the in home nursing was not as available, because of the expense, which is requiring Plaintiff to care for his son, Gunner.

See attached pictures of son Gunner.

                                              Respectfully submitted,

                                              _/S/_____
                                              Bob Whitehurst
                                              State Bar No. 21358100
                                              Bob Whitehurst
                                              5380 Old Bullard Road
                                              Suite 600, #363
                                              Tyler, Texas 75703
                                              (903)593-5588
                                              (214)853-9382

CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing instrument was served upon the attorney's of record in accordance with the applicable Rules of Civil Procedure on this 7th day of September, 2023

*Bob Whitehurst*
Bob Whitehurst

Theanna Bezney
Texas Bar No. 24089243
*tbezney@fisherphillips.com*
FISHER & PHILLIPS LLP
500 North Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122

# EXHIBIT 2

**Bezney, Theanna**

| | |
|---|---|
| **From:** | Bezney, Theanna |
| **Sent:** | Friday, October 27, 2023 12:24 PM |
| **To:** | Bob Whitehurst; don.uloth@uloth.pro |
| **Cc:** | Lau, Annie; DALLAS DOCKET |
| **Subject:** | Walters v Exel: Discovery requests |
| **Attachments:** | DEF's 03 RFPs to PLF 102723 - Walters v Exel(48615890.1).pdf; DEF's 03 ROGs to PLF 102723 - Walters v Exel(48615870.1).pdf |

Good morning counsel,

Attached please find Defendant's Third Set of Requests for Production and Interrogatories to Plaintiff.

Additionally, a review of Plaintiff's responses to Defendant's Second Interrogatories (regarding his mitigation efforts) are wholly deficient. For example, No. 14 asked him to describe all steps he's undertaken to mitigate his economic damages, which was defined to include a specific list of information in connection with each position he's sought. Plaintiff responded with vague and non-descript referenced to "several different places," "several truck leasing, different positions, … [and] local places, such as [W]hataburger…." We also note that Plaintiff's document production included his certification to the TWC claiming that he made 95 job contacts over a 30-week period. Defendant requests Plaintiff supplement his response to Defendant's Second Set of Interrogatories to provide all information requested therein.

Defendant further notes Plaintiff hasn't supplemented his Initial Disclosures or his responses to Defendant's First Set of Interrogatories to include his damages claimed in connection with his discrimination claim. Defendant requests Plaintiff accordingly amend and supplement these responses, and any other discovery response that is no longer complete with the addition of claims.

Given the foregoing, Defendant also requests the deadline to disclose any experts it may wish to retain (currently set for today) be extended to three weeks after Plaintiff supplements his discovery responses as requested herein. Defendant would, of course, agree to an in-kind extension of Plaintiff's expert disclosure deadline to that same date.

Please advise whether Plaintiff agrees to the proposed extension.

Thanks,



**Theanna Bezney**
Associate

Fisher & Phillips LLP
500 North Akard St | Suite 3550 | Dallas, TX 75201
tbezney@fisherphillips.com | O: (214) 220-8325

vCard | Bio | Website   *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*