## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**JASON WALTERS**
**Plaintiff**

**vs.**                                          **CIVIL ACTION 3:22-cv-01840-C**
                                                 **JURY REQUESTED**


**EXEL, INC. D/B/A**
**DHL SUPPLY CHAIN**
**Defendant**

### APPENDIX IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

| TAB | Description | App |
|---|---|---|
| 1 | Photograph of Plaintiff at work | 001-010 |
| 2 | Eartis Shaw in control | 011-025 |
| 3 | End of Shift reports submitted by Plaintiff | 026-036 |
| 4 | Adam Elliott no grace period | 037 |
| 5 | Plaintiff not aware of grace period | 038 |
| 6 | Excerpts from deposition of John Dobbins | 039-047 |
| 7 | Excerpts from deposition of Adam Elliott | 048-051 |
| 8 | Excerpts from deposition of Eartis Shaw | 052-054 |
| 9 | Excerpts from deposition of Deneill Hooper | 055-059 |
| 10 | Excerpts from deposition of Tammy Williams | 060-062 |
| 11 | Excerpts from deposition of Mickey Moza | 063-090 |
| 12 | Lack of signature of Plaintiff on correction action form | 091 |

| 13 | Determination from Texas Workforce Commission................. | 092 |
| 14 | Letter to Defendant.................................................... | 093-098 |
| 15 | Discovery requests..................................................... | 099-110 |
| 16 | declaration of Jason Walters.................................... | 111-115 |
| 17 | Mickey I'm trying to figure out when my health and dental insurance expire, 3/21/22................. | 116 |
| 18 | I really am taken by supriseectgst direct questions could not be answered, 3/28/22......................... | 117 |
| 19 | corrective action form not signed | 118 |
| 20 | definitely send Mickey email, one of biggest racist ever worked with............................... | 119 |
| 21 | declaration of Jason Walters.................................... | 120-128 |
| 22 | declaration of Bennille Shelby.............................. | 129-130 |
| 23 | Dismissal and notice of right to sue letter from EEOC | 131-134 |
| 24 | List of employees terminated and ages | 135 |

Plaintiff Jason Walters hereby responds, opposing Defendant's motion for summary judgment.

The matters required by Local Rule 56.4(a) are set forth in the supporting brief filed along with this response, and an appendix containing the material supporting this motion and brief is being filed separately.

Respectfully submitted,

_/S/_____
Bob Whitehurst
State Bar No. 21358100
Bob Whitehurst
5380 Old Bullard Road
Suite 600, #363
Tyler, Texas 75703
(903)593-5588
(214)853-9382


CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing instrument was served upon the attorney's of record in accordance with the applicable Rules of Civil Procedure on this 5th day of March, 2024

*Bob Whitehurst*

Bob Whitehurst


Annie Lau
Texas Bar No. 24057723
FISHER & PHILLIPS LLP
500 N. Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
*alau@fisherphillips.com*

Theanna Bezney
Texas Bar No. 24089243
*tbezney@fisherphillips.com*
FISHER & PHILLIPS LLP
500 North Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122

# TAB 1



APP000001



APP000002



APP000003



APP000004



**APP000005**



APP000006



APP000007



APP000008



APP000009



APP000010

TAB 2

11:00 AT&T                                    ⏰ 📶 .ıll 30% 🔋

‹   **Eartis Shaw**                      📞   🔍   ⋮
    +19728779732



Sunday, July 25, 2021

> Heads up...Arturo
> is in Georgia and
> messaging Daisy
> here in shift...he is
> also on shift is my
> understanding.

10:18 AM

> I asked him to
> stop doing so...he
> threatens to take
> it to John instead
> of heading the
> warning...

10:19 AM

APP000011

 Tell her no cell
phone in whse.
Not worried about
Arturo.

10:2 

      +

   

|||           ◯           ⟨

**APP000012**

11:00 AT&T   30%

< **Eartis Shaw**
+19728779732 📞 🔍 ⋮

## lead off or just didn't show <u>today</u>.

6:44 AM

No idea

6:47 AM Not here

6:48 AM Been calling since 520

Saturday, July 24, 2021

Still on for Sunday shift?

11:40 AM

 Yes haven't heard

**APP000013**

any difference.

11:42 AM

11:42 AM **Ok**

Sunday, July 25, 2021

11:10 AT&T

 28%

< **extra shift** ✕

 Arturo Hernandez

SUNDAY **extra** **shift** was called for yesterday

May 15 2021

 Craig Scott

I had an **extra** **shift** yesterday

Apr 12 2021

 Dennis Hurst

Do I get to work an **extra** **shift**

Apr 11 2021

 Arturo Hernandez, Agustin Rodriguez(2)

Dont forget mandatory **extra** **shift** tomorrow

Mar 6 2021

 Jose Luis Gonzales-DHL

2 **extra** **shift**s this weekend confirmed. Josiah is informed.

Mar 6 2021

 Josiah Fuqua



J

2 **extra** **shift**s this weekend confirmed.

Mar 6 2021

R  Reese Hines

Did anybody approach you about **extra** **shift**s?

Jan 2 2021

|||          O          ‹

11:10 AT&T

28%

< **extra shift** ✕

**B** Bill Huhner

Running 2 **extra** **shift**s this weekend?

Jul 24 2021

**B** Bill Huhner

Then get to follow up with an **extra** Sunday **shift** too.

Jul 24 2021

**C** Casey Lee-DHL

**Extra** **shift** for me. No 2nd Sup

Jul 22 2021

**J** Joel Jess

Just finished at the Dr.  They said the impetigo looks to be under control, and the stuff that's spreading is scabies.  They gave me a steroid shot and a new rx and said it should be cleared up enough to return to work by sunday.  So hopefully I'll be able to

**APP000017**

work the **extra shift** this weekend. I've

Jun 24 2021

 Josiah Fuqua

Jun 12 2021 

 Jordan Kilpatrick

May 15 2021

APP000018

11:10 AT&T  28%

 extra shift 

 Casey Lee-DHL, Joel Jess, Marlon Calix-DHL(3)


Monday we are off for sure that's the reason to run both **extra** **shift**s this weekend.

Sep 3 2021

 Ricky Ballard

Monday we are off for sure that's the reason to run both **extra** **shift**s this weekend.

Sep 3 2021

 Jordan Kilpatrick

Monday we are off for sure that's the reason to run both **extra** **shift**s this weekend.

Sep 3 2021

 9728090512

Did u know we had an **extra** **shift** A team today ???

Jul 25 2021

 Kenis Calderon

**APP000019**



K

Jul 25 2021
Did u know we had an **extra** **shift** A team today ???

A Agustin Rodriguez

Jul 25 2021
Did u know we had an **extra** **shift** A team today ???

B Bill Huhner

Running 2 **extra** **shift** this

III   ○   ＜

APP000020

11:11 AT&T  28%

< **extra shift** ✕

 Justin Sara



Oct 27 2021

 Bill Huhner



Oct 26 2021

 Sarah Nicklas

Did y'all run **extra shift**s over weekend?
I'm process reports from last week.

Sep 27 2021

 2147109206



Sep 4 2021

 Jordan Kilpatrick

I understand the production need,

APP000021

makes it hard to live a life and plan
time with these mandatory **extra
shift**s.

Sep 3 2021

Daryl Reed



Sep 3 2021

11:11 AT&T  28%

< **extra shift** ✕



**Eartis Shaw**

**Extra shift** has been called for Sunday to continue to push ahead to make sure we are good for next week/weekend. I show you on the bubble.

Dec 17 2021



**Sarah Nicklas**



Cooper was out on vacation last week if he was docked for not being here on the Sunday **extra shift**. He is waived for it being it was in conjunction with his vacation. Let me know what you find.

Dec 1 2021



+14693475467



Possibly an **extra shift** on Sunday as well...so be prepared if needed please ma am.

Nov 1 2021



Judo

**APP000023**



Like you working an **extra shift**. I brought it to you a couple of times I know.

Oct 31 2021

Jose Luis Gonzales-DHL



Oct 31 2021

Justin Sara



**Eartis Shaw**

Yeah go ahead and schedule would like to stay out of **extra shifts**.

Mar 10 2022



**Serjio Amaya, Roger Heas...dall, Emma Gallegos(20)**

Per my words...Sunday am is our **extra shift**...Saturday is the night **shift**

Feb 4 2022



**Lori Schmidtke**

Guess i better crash...my boss called me in on my vacation to run an **extra shift**...what an a$$#@!!%^ !!!...3am comes early

Dec 18 2021



**Mark Collins**

Rudiger...Ft. Worth Rodeo Show is this weekend...you want to go tomorrow? I got a call in for Sunday **extra shift**...thanks for taking my last vacation day away

Dec 17 2021



Eartis Shaw

**APP000025**

**From:** Jason Walters (DHL Supply Chain)
**Sent time:** 01/03/2019 06:40:04 PM
**To:** Jason Walters (DHL Supply Chain)
**Cc:** nancy_wynn@goodyear.com; Matthew Spence-CONT (matthew_spence@goodyear.com) <matthew_spence@goodyear.com>; Jason Smith (DHL Supply Chain); Amber Soto (DHL Supply Chain); John Dobbins (DHL Supply Chain); Eartis Shaw (DHL Supply Chain); Chase J Marroquin (DHL Supply Chain); Benníelee Shelby (DHL Supply Chain); Brandon Phillips (DHL Supply Chain); Andres Miranda (DHL Supply Chain); Demarcus Brooks (DHL Supply Chain); Jose Gonzales-CONT <jose_gonzales@goodyear.com>
**Subject:** 01/03/2019

| | |
|---|---|
| *o/b:* | *5,467-units-1,238 lines* |
| *Fed-Ex:* | *551-units-200 lines* |
| *i/b storage:* | *1,080-units-3 loads* |
| *i/b:* | *12,653-units-19 loads* |
| *Total=* | *19,751 total units* |

### *Shift Leaders*

| Name | Work Area |
|---|---|
| Jason Walters | Floor Supervisor |
| Daryl Reed | O/B Lead/ Supervisor |
| Joel Jess | Space/IB Lead |

### *Crew*

| How many Hours | Work Area |
|---|---|
| 89-hours | outbound-9 |
| 30-hours | Inbound-3 |
| 18-hours | w/c & moves-2 |
| 0-hours | Training |
| 20-hour | Fed-Ex-2 |
| | |
| | |
| | |
| 157-hrs. total | 16-total people on hand |

| Has RP feedback been delivered? | | Comments |
|---|---|---|
| Yes | XX | Yes, associates here only. |
| No | | |

| Have Orphan Tires been processed? | | Comments |
|---|---|---|
| Yes | xx | yes |
| | | |

### *Pre-Shift*

| Topics Covered/ Questions |
|---|
| -Clean as you go, be mindful of restroom and break room//Forklift safety/Don't pull tires over the cups/no tunneling. |
| -Do not push racks on or over the painted yellow lines and make sure your forks are lifted 2 inches from the floor. |
| -DRINK PLENTY OF WATER. |
| -Don't leave ANYTHING sitting on top of the battery chargers. |
| -HU labels need to be placed on tires not racks. |
| -make sure to press the stop button on the charger before unplugging the battery(blows the fuses). |

| *Attendance* | |
|---|---|

| | |
|---|---|
| **Jodeci Hawkins** | |
| **Agustin Rodriguez** | **Vacation** |
| **Gonzalo Escobedo** | **Vacation** |
| **Landrick Wilson** | **NC/NS** |
| **Malcolm Polk** | **NC/NS** |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**JASON R. WALTERS**

**Operations Supervisor**

**DHL c/o The Goodyear Tire & Rubber Company**

**301 Apache Trail, Terrell, TX 75160**

**Dir.: 972-551-5309**

**GTN: 548-5309**

**Mob: 903-283-0404**



**From:** Jason Walters (DHL Supply Chain)
**Sent time:** 01/04/2019 05:47:19 PM
**To:** Jason Walters (DHL Supply Chain)
**Cc:** nancy_wynn@goodyear.com; Matthew Spence-CONT (matthew_spence@goodyear.com) <matthew_spence@goodyear.com>; Jason Smith (DHL Supply Chain); Amber Soto (DHL Supply Chain); John Dobbins (DHL Supply Chain); Eartis Shaw (DHL Supply Chain); Chase J Marroquin (DHL Supply Chain); Bennielee Shelby (DHL Supply Chain); Brandon Phillips (DHL Supply Chain); Andres Miranda (DHL Supply Chain); Demarcus Brooks (DHL Supply Chain); Jose Gonzalez-CONT <jose_gonzales@goodyear.com>
**Subject:** 01/04/2019

| | |
|---|---|
| *o/b:* | *11,275-units-3,204 lines* |
| *Fed-Ex:* | *338-units-121 lines* |
| *storage:* | *11,224-units-13 loads* |
| *i/b:* | *3,174-units-6 loads* |
| *Total=* | *26,011 total units* |

### Shift Leaders

| Name | Work Area |
|---|---|
| Jason Walters | Floor Supervisor |
| Samone Williams | O/B Lead/ Supervisor |
| Joel Jess | Space/IB Lead |

### Crew

| How many Hours | Work Area |
|---|---|
| 170 1/2-hours | outbound-17 |
| 31-hours | Inbound-3 |
| 20-hours | w/c & moves-2 |
| 0-hours | Training |
| 12-hour | Fed-Ex-2 |
| | |
| | |
| | |
| 233 1/2-hrs. total | 24-total people on hand |

| Has RP feedback been delivered? | | Comments |
|---|---|---|
| Yes | XX | Yes, associates here only. |
| No | | |

| Have Orphan Tires been processed? | | Comments |
|---|---|---|
| Yes | xx | yes |
| | | |

### Pre-Shift

| Topics Covered/ Questions |
|---|
| -Clean as you go, be mindful of restroom and break room//Forklift safety/Don't pull tires over the cups/no tunneling. |
| -Do not push racks on or over the painted yellow lines and make sure your forks are lifted 2 inches from the floor. |
| -DRINK PLENTY OF WATER. |
| -Don't leave ANYTHING sitting on top of the battery chargers. |
| -HU labels need to be placed on tires not racks. |
| -make sure to press the stop button on the charger before unplugging the battery(blows the fuses). |

*Attendance*

| Attendance | |
|---|---|
| | |
| **Gonzalo Escobedo** | Vacation |
| **Landrick Wilson** | retired |
| Jessie Duron | Off |
| Juan Cabrera | Off |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**JASON R. WALTERS**
**Operations Supervisor**
**DHL c/o The Goodyear Tire & Rubber Company**
**301 Apache Trail, Terrell, TX 75160**
**Dir.: 972-551-5309**
**GTN: 548-5309**
**Mob: 903-283-0404**



| Attendance | |
|---|---|
| Toby Haley and Stephen Shelton | Away team-Columbus |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**JASON R. WALTERS**
**Operations Supervisor**
**DHL c/o The Goodyear Tire & Rubber Company**
**301 Apache Trail, Terrell, TX 75160**
**Dir.: 972-551-5309**
**GTN: 548-5309**
**Mob: 903-283-0404**



**From:** Jason Walters (DHL Supply Chain)
**Sent time:** 01/11/2019 06:03:54 PM

**Cc:** nancy_wynn@goodyear.com; Matthew Spence-CONT (matthew_spence@goodyear.com) <matthew_spence@goodyear.com>; Jason Smith (DHL Supply Chain); Amber Soto (DHL Supply Chain); John Dobbins (DHL Supply Chain); Eartis Shaw (DHL Supply Chain); Chase J Marroquin (DHL Supply Chain); Benniele Shelby (DHL Supply Chain); Brandon Phillips (DHL Supply Chain); Andres Miranda (DHL Supply Chain); Demarcus Brooks (DHL Supply Chain); Jose Gonzalez-CONT <jose_gonzales@goodyear.com>; Jason Walters (DHL Supply Chain)

**Subject:** 01/11/2019

| | |
|---|---|
| *o/b:* | *10,030-units-3,097 lines* |
| *Fed-Ex:* | *140-units-52 lines* |
| *i/b storage:* | *552-units-1 loads* |
| *i/b:* | *11,237-units-19 loads* |
| *Total=* | *21,959 -total units* |

### Shift Leaders

| Name | Work Area |
|---|---|
| Jason Walters | Floor Supervisor / Floor Auditor |
| Jason Smith | O/B Lead/ Supervisor |
| Joel Jess | Space/IB Lead |

### Crew

| How many Hours | Work Area |
|---|---|
| 120-hours | outbound-12 |
| 32-hours | Inbound-3 |
| 20-hours | w/c & moves-2 |
| 0-hours | Training |
| 8-hour | Fed-Ex-1 |
| | |
| | |
| | |
| 180-hrs. total | 18-total people on hand |

| Has RP feedback been delivered? | | Comments |
|---|---|---|
| Yes | XX | Yes, associates here only. |
| No | | |

| Have Orphan Tires been processed? | | Comments |
|---|---|---|
| Yes | xx | yes |
| | | |

### Pre-Shift

| Topics Covered/ Questions |
|---|
| -Clean as you go, be mindful of restroom and break room//Forklift safety/Don't pull tires over the cups/no tunneling. |
| -Do not push racks on or over the painted yellow lines and make sure your forks are lifted 2 inches from the floor. |
| -DRINK PLENTY OF WATER. |
| -Don't leave ANYTHING sitting on top of the battery chargers. |
| -HU labels need to be placed on tires not racks. |
| -make sure to press the stop button on the charger before unplugging the battery(blows the fuses). |

| Attendance | |
|---|---|
| Toby Haley & | Away team-Columbus-2 |

**APP000031**

**From:** Jason Walters (DHL Supply Chain)
**Sent time:** 01/16/2019 05:27:37 PM
**Cc:** nancy_wynn@goodyear.com; Matthew Spence-CONT (matthew_spence@goodyear.com) <matthew_spence@goodyear.com>; Jason Smith (DHL Supply Chain); Amber Soto (DHL Supply Chain); John Dobbins (DHL Supply Chain); Eartis Shaw (DHL Supply Chain); Chase J Marroquin (DHL Supply Chain); Bennielee Shelby (DHL Supply Chain); Brandon Phillips (DHL Supply Chain); Andres Miranda (DHL Supply Chain); Demarcus Brooks (DHL Supply Chain); Jose Gonzalez-CONT <jose_gonzales@goodyear.com>; Jason Walters (DHL Supply Chain)
**Subject:** 01/16/19

---

*o/b:*            *15,100 -units-3,208 lines*
*Fed-Ex:*            *324-units-104 lines*
*i/b storage:*    *1,140 -units-2 loads*
*i/b:*            *12,647 -units- loads*
*Total=*        *29,211 -total units*

### Shift Leaders

| Name | Work Area |
|---|---|
| Jason Walters | Floor Supervisor / Floor Auditor |
| Daryl Reed | O/B Lead/ Supervisor |
| Joel Jess / space Trainee- Darren Wherry | Space/IB Lead |

### Crew

| How many Hours | Work Area |
|---|---|
| 157 1/4-hours | outbound-16 |
| 31 1/2-hours | Inbound-3 |
| 25 1/2 -hours | w/c & moves-2 1/2 |
| 0-hours | Training-0 |
| 8 1/2-hour | Fed-Ex-1 |
| | |
| | |
| | |
| 222 3/4-hrs. total | 22 1/2-total people on hand |

| Has RP feedback been delivered? | | Comments |
|---|---|---|
| Yes | XX | Yes, associates here only. |
| No | | |

| Have Orphan Tires been processed? | | Comments |
|---|---|---|
| Yes | xx | yes |
| | | |

### Pre-Shift

| Topics Covered/ Questions |
|---|
| *-DRINK PLENTY OF WATER!!!...even in wintertime.* |
| *-HU labels why we fill them out completely and what is the reason we use them.* |

| Attendance | |
|---|---|
| Toby Haley & Stephen Shelton | Away team-Columbus |
| Quincy Jackson | Late 6:05 /missed punch also |

APP000032

**From:** Jason Walters (DHL Supply Chain)
**Sent time:** 01/17/2019 06:00:34 PM

**To:** Jason Walters (DHL Supply Chain)

**Cc:** nancy_wynn@goodyear.com; Matthew Spence-CONT (matthew_spence@goodyear.com) <matthew_spence@goodyear.com>; Jason Smith (DHL Supply Chain); Amber Soto (DHL Supply Chain); John Dobbins (DHL Supply Chain); Eartis Shaw (DHL Supply Chain); Chase J Marroquin (DHL Supply Chain); Benmielee Shelby (DHL Supply Chain); Brandon Phillips (DHL Supply Chain); Andres Miranda (DHL Supply Chain); Demarcus Brooks (DHL Supply Chain); Jose Gonzales-CONT <jose_gonzales@goodyear.com>

**Subject:** 01/17/2019

---

| | | |
|---|---|---|
| *o/b:* | *7,017* | *-units-1,017 lines* |
| *Fed-Ex:* | *75* | *-units-23 lines* |
| *i/b storage:* | *1,674* | *-units-3 loads* |
| *i/b:* | *13,289* | *-units-19 loads* |
| *Total=* | *22,055* | *-total units* |

### Shift Leaders

| Name | Work Area |
|---|---|
| Jason Walters | Floor Supervisor / Floor Auditor |
| Samone Williams | O/B Lead/ Supervisor |
| Joel Jess | Space/IB Lead |

### Crew

| How many Hours | Work Area |
|---|---|
| 77-hours | outbound-8 |
| 31-hours | Inbound-3 |
| 15 1/2 -hours | w/c & moves-1 1/2 |
| 20-hours | Training-2 |
| 2-hour | Fed-Ex-1 |
| | |
| | |
| | |
| 145 1/2-hrs. total | 14 1/2-total people on hand |

| Has RP feedback been delivered? | | Comments |
|---|---|---|
| Yes | XX | Yes, associates here only. |
| No | | |

| Have Orphan Tires been processed? | | Comments |
|---|---|---|
| Yes | xx | yes |
| | | |

### Pre-Shift

| Topics Covered/ Questions |
|---|
| -DRINK PLENTY OF WATER!!!...even in wintertime. |
| -HU labels why we fill them out completely and what is the reason we use them again. |

| Attendance | |
|---|---|
| Toby Haley & Stephen Shelton | Away team-Columbus |
| | |
| | |
| | |

**From:** Jason Walters (DHL Supply Chain)
**Sent time:** 01/18/2019 06:32:29 PM
**To:** Jason Walters (DHL Supply Chain)
**Cc:** nancy_wynn@goodyear.com; Matthew Spence-CONT (matthew_spence@goodyear.com) <matthew_spence@goodyear.com>; Jason Smith (DHL Supply Chain); Amber Soto (DHL Supply Chain); John Dobbins (DHL Supply Chain); Eartis Shaw (DHL Supply Chain); Chase J Marroquin (DHL Supply Chain); Bennielee Shelby (DHL Supply Chain); Brandon Phillips (DHL Supply Chain); Andres Miranda (DHL Supply Chain); Demarcus Brooks (DHL Supply Chain); Jose Gonzales-CONT <jose_gonzales@goodyear.com>
**Subject:** 01/18/2019

| | | |
|---|---|---|
| *o/b:* | *11,864* -units-*3,208* lines | |
| *Fed-Ex:* | *105*-units-*54* lines | |
| *i/b storage:* | *1,040* -units-*2* loads | |
| *i/b:* | *11,988* -units-*16* loads | |
| *Total=* | *24,997*-total units | |

*183.8 UPH*

### Shift Leaders

| Name | Work Area |
|---|---|
| Jason Walters | Floor Supervisor |
| Jason Smith | O/B Lead/ Supervisor |
| Joel Jess | Space/IB Lead |

### Crew

| How many Hours | Work Area |
|---|---|
| 140-hours | outbound-14 |
| 30-hours | Inbound-3 |
| 20 -hours | w/c & moves-2 |
| 20-hours | Training-2 |
| 6-hours | Fed-Ex-1/2 |
| 4-hours | Castle project-1/2 |
| | |
| | |
| 200-hrs. total | 20-total people on hand |

| Has RP feedback been delivered? | | Comments |
|---|---|---|
| Yes | XX | Yes, associates here only. |
| No | | |

| Have Orphan Tires been processed? | | Comments |
|---|---|---|
| Yes | xx | yes |
| | | |

### Pre-Shift

| Topics Covered/ Questions |
|---|
| *-DRINK PLENTY OF WATER!!!...even in wintertime.* |
| *-reiterated about the company cell phone policy* |
| *-restricted access to the office area…why….and expectation of compliance* |
| *-HU labels why we fill them out completely and what is the reason we use them again.* |

| Attendance | |
|---|---|
| Toby Haley & | Away team-Columbus |

**From:** Jason Walters (DHL Supply Chain)
**Sent time:** 01/25/2019 06:45:52 PM
**To:** Jason Walters (DHL Supply Chain)
**Cc:** nancy_wynn@goodyear.com; Matthew Spence-CONT (matthew_spence@goodyear.com) <matthew_spence@goodyear.com>; Jason Smith (DHL Supply Chain); Amber Soto (DHL Supply Chain); John Dobbins (DHL Supply Chain); Eartis Shaw (DHL Supply Chain); Chase J Marroquin (DHL Supply Chain); Bennielee Shelby (DHL Supply Chain); Brandon Phillips (DHL Supply Chain); Andres Miranda (DHL Supply Chain); Demarcus Brooks (DHL Supply Chain); Jose Gonzales-CONT <jose_gonzales@goodyear.com>
**Subject:** 01/25/2019

---

*Trailer was ran through the dock door @155….so it is out of commission*

*o/b:*              *9,901 -units-2,122-lines*
*Fed-Ex:*          *101-units-37 lines*
*o/b storage:*   *3,160-units-4 loads*
*i/b:*              *13,301 -units-16 loads*
*Total=*          *26,463-total units*

### Shift Leaders

| Name | Work Area |
|---|---|
| Jason Walters | Floor Supervisor |
| Jason Smith | O/B Lead/ Supervisor |
| Joel Jess | Space/IB Lead |

### Crew

| How many Hours | Work Area |
|---|---|
| 124-hours | outbound-13 |
| 46-hours | Inbound-4 |
| 20-hours | w/c & moves-2 |
| 10-hours | Bundle-1 |
| 10-hours | Fed-Ex-1 |
| 8-hours | Training- |
|  |  |
|  |  |
| 218-hours | Bodies-21 |

| Has RP feedback been delivered? | | Comments |
|---|---|---|
| Yes | XX | Yes, associates here only. |
| No |  |  |

| Have Orphan Tires been processed? | | Comments |
|---|---|---|
| Yes | xx | yes |
|  |  |  |

### Pre-Shift

| Topics Covered/ Questions |
|---|
| -*DRINK PLENTY OF WATER!!!...even in wintertime.* |
| -*reiterated about the company cell phone policy*-*wrote 3 up for use of cell on warehouse floor today.* |
| -*restricted access to the office area…why….and expectation of compliance* |
| -*HU labels why we fill them out completely and what is the reason we use them again.* |

| Attendance | |
|---|---|
| Toby Haley & Stephen Shelton | Away team-Columbus |
| Malcolm Polk | NC/NS |
| Quincy Jackson | General Purpose Day |
| Jessie Duron | Left sick @0830 |
| | |
| | |
| | |
| | |
| | .. |
| | |
| | |
| | |
| | |
| | |

**JASON R. WALTERS**
**Operations Supervisor**
**DHL c/o The Goodyear Tire & Rubber Company**
**301 Apache Trail, Terrell, TX 75160**
**Dir.: 972-551-5309**
**GTN: 548-5309**
**Mob: 903-283-0404**



EXHIBIT

EXHIBIT "A"

_C_

TAB 4

Retention: 18 Month Deletion (1 year, 6 months) Expires: Thu 8/31/2023 3:32 PM

**Adam Elliott (DHL Supply Chain) <Adam.Elliott@dhl.com>**
Fri 3/4/2022 2:32 PM

To: **Forney Supervisors**

Cc: Jose Gonzalez-CONT; Eartis Shaw-CONT; Jason Smith (DHL Supply Chain) <jason.smith5@dhl.com>

**External Email....WARNING....Think before you click or respond....WARNING**

Below is the HR policy on clocking in. There is not a grace period that I am aware of. Mickey is also not aware of a grace period.
If someone has a repeat pattern of coming in late. Please let your manager know so we can address it appropriately.

4.1.1 Clock-in/Clock-out: Each associate is expected to clock in and be at their assigned work area by the scheduled start time. In addition to the daily In/Out punch, associates will be required to record punches for mandatory meal periods. In addition, some sites may have associates 'cross-punch' between various job functions within the site.

**Adam Elliott**
General Manger
Automotive, Engineering & Manufacturing

**DHL Supply Chain**
1500 Akron Way
Forney, TX 75126
USA

Office 972.703.6051
Mobile 254.716.0613

Adam.Elliott@dhl.com
www.dhl-usa.com/supplychain
DHL Supply Chain- Excellence. Simply Delivered

CONFIDENTIALITY NOTICE: This message is from DHL and may contain confidential business information. It is intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient please contact the sender and delete this message and any attachment from your system. Unauthorized publication, use, dissemination, forwarding, printing or copying of this E-Mail and its attachments is strictly prohibited.

**TAB 5**

| | |
|---|---|
| **From:** | Eartis Shaw |
| **Sent:** | Friday, March 11, 2022 11:27 AM |
| **To:** | Mickey Moza (DHL Supply Chain); Adam Elliott (DHL Supply Chain) |
| **Subject:** | FW: [EXT] Re: Needed for statement |

Mickey see below from Jason

Eartis Shaw
Operations Manager
DHL Supply Chain c/o The Goodyear Tire & Rubber Company
1500 Akron Way
Forney, TX 75126
Mobile: 972-877-9732
Office: 972-703-6052

**From:** jason walters <m249sawgunr@yahoo.com>
**Sent:** Friday, March 11, 2022 11:25 AM
**To:** Eartis Shaw-CONT <eartis_shaw@goodyear.com>
**Subject:** [EXT] Re: Needed for statement

External Email....WARNING....Think before you click or respond....WARNING

On Thursday morning in preshift I addressed all the associates that were late to pre-shift and asked them to meet me where I was standing in the protected area we designate for preshift after everyone else had finished and headed to work. I addressed everyone in general and no-one specifically. As I was talking about the pre-shift topics,  Ms. Hooper started talking over me and arguing...I asked her to hold on we could speak in private afterwards, as I felt that her approach undermined the things I was saying.  I did not grab her jacket...I may have touched it saying something about safety colors and steel toes...but in no way did I maliciously address or touch anyone. I did not threaten to choke her either. I included everyone that was late, for whatever reason, to be fair. Last week, I asked about if there was a grace period for coming in to pre-shift late, I was told there was no such grace period. I am very understanding when it comes to life's ups and downs. I also know, that when people habitually come in late, it is bad for moral and order, not to mention it comes out of their attendance bucket whether I know about it or not. I care about all of my people, and I try my best to keep them from getting themselves into an attendance issue (used to be points) or any other trouble.

Jason R. Walters
Operations Supervisor
N65B Forney

Sent from Yahoo Mail on Android

Sr$Jw@Q ev$5O$6466$x$55›46$EQ C{evwﬁw›le{ 1GSRX$
@ievwvwle{ D kssh}ievﬂusq B${ vsxi$

Jason,

1

1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF TEXAS
2                               DALLAS DIVISION
3    JASON WALTERS                      )
                                        )
4    vs.                                )    CIVIL ACTION
                                        )    3:22-cv-01840-C
5                                       )    JURY REQUESTED
     EXEL, INC. D/B/A                   )
6    DHL SUPPLY CHAIN                   )
7
8
9
10                   ORAL/VIDEOCONFERENCED DEPOSITION OF
                                JOHN DOBBINS
11                        TUESDAY, JUNE 27, 2023
                          9:51 A.M. - 12:43 P.M.
12
13
14
15
16        ORAL DEPOSITION OF JOHN DOBBINS, produced as a
17   witness at the instance of the Plaintiff, and duly
18   sworn, was taken in the above-styled and -numbered
19   cause on the 27th day of June, 2023, from 9:51 a.m. to
20   12:43 p.m., before Maribel Torres, Certified Shorthand
21   Reporter in and for the State of Texas, reported by
22   computerized stenotype machine, held remotely,
23   pursuant to the Federal Rules of Civil Procedure and
24   the agreements herein after set forth, if any.
25   Signature reserved.

APP000039

1    APPEARANCES
2
     REPRESENTING THE PLAINTIFF:
3    BOB WHITEHURST, ESQ.
     WHITEHURST & WHITEHURST, ESQ.
4    5380 OLD BULLARD ROAD
     SUITE 600, #363
5    TYLER, TEXAS 75703
     TELEPHONE: (903) 593-5588
6    EMAIL: whitehurstlawfirm@yahoo.com
7
     REPRESENTING THE DEFENDANT:
8    THEANNA BEZNEY, ESQ.
     FISHER PHILLIPS, LLP
9    500 NORTH AKARD STREET
     SUITE 3550
10   DALLAS, TEXAS 75201
     TELEPHONE: (214) 220-8325
11   EMAIL: tbezney@fisherphillips.com
12
     ALSO PRESENT:
13   MR. JASON WALTERS, PLAINTIFF
14
15
16
17
18
19
20
21
22
23
24
25

3

1                          I N D E X

2

Appearances.........................          2
3    WITNESS:   JOHN DOBBINS
Examination by Mr. Whitehurst........    5, 90, 117
4    Examination by Ms. Bezney............      59, 109
Acknowledgment.......................        121
5    Court Reporter's Certificate.........        123

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

APP000041

**4**

1                     PLAINTIFF'S EXHIBITS
2

    NO.      DESCRIPTION                              PAGE
3

4   A    Photographs                                   16
    B    Emails, Exel_000368-369                       19
5   C    3/4/2022 Email from Adam Elliott             23
         to Forney Supervisors
6   D    Pass-down emails, Exel_00201, 203,           27
         205, 207, 209, 211, 213, 215, 217
7   E    Corrective Action Notice,                    30
         Exel_00196-198
8   F    Text Message                                 37
    G    Investigation Summary Form,                  38
9        Exel_00112-113
    H    Corrective Action Form,                      45
10       Exel_00119
    I    Text Messages                                48
11
12                    DEFENDANT'S EXHIBITS
13

    J    Role Profile, Exel_000020-22                 61
14  K    Note To File 08-20, Exel_001591              70
    L    Staff Statements, Exel_001590 and 1589       72
15  M    Statement from Omar Flores,                  72
         Exel_001584
16  N    Jason Walters' Statement,                    73
         Exel_001582
17  O    Statement by Jason Walters,                  74
         Exel_001583
18  P    Complainant/Witness Statement Form,          80
         Exel_001575-1578
19  Q    March 11, 2022 Emails,                       81
         Exel_001579-1580
20
21
22
23
24
25

```
 1                    P R O C E E D I N G S
 2              TUESDAY, JUNE 27, 2023 - 9:51 A.M.
 3                    (REPORTER'S NOTE:  Names not spelled on
 4                    the record may be spelled phonetically.
 5                    Quotation marks may be used with
 6                    indirect, inexact quotes.)
 7                    (Prior to commencement, Plaintiff's
 8                    Exhibits A through I marked.)
 9                    THE COURT REPORTER:  We are on the
10      record.  This is June 27th, 2023, and this is the
11      remote oral deposition of John Dobbins, taken by Zoom.
12                         JOHN DOBBINS,
13      having been administered the oath, testifies as
14      follows:
15                          EXAMINATION
16      BY MR. WHITEHURST:
17           Q.   State your name for the record, please, sir.
18           A.   What was that?
19           Q.   Would you state your name for the record,
20      please, sir?
21           A.   It's John Dobbins.
22           Q.   And how are you employed, sir?
23           A.   Full-time employed with DHL Supply Chain.
24           Q.   And how long have you been so employed?
25           A.   Ten-plus years.
```

1    know, warehousing, in general.

2                    As the general manager, I stayed a

3    little bit more in the office area.  As a supervisor,

4    Walters would have been more out on the floor.

5        Q.   Okay.  Did you ever see Mr. Walters drive a

6    forklift?

7        A.   Yes, a time or two, really, during our

8    startup of the Forney location --

9        Q.   Okay.

10       A.   -- which would have been early in 2020.

11       Q.   He didn't work -- Mr. Walters, he didn't

12   work in an air-conditioned office, did he?

13       A.   There would have been times he would have

14   been in the office, but about 70 percent of his day

15   would have been out on the floor.

16       Q.   Okay.  And part of Mr. Walters' job was to

17   make sure the employees show up, correct?

18       A.   Not necessarily to make sure they showed up,

19   but to monitor for attendance.

20       Q.   Okay.

21                    Now, have you seen any documents, sir,

22   that Ms. Hooper was ever disciplined for showing up

23   late on March 8th, 2022 -- or 2021, is what you're

24   saying?

25       A.   I do not remember specific dates of the

1    last checkpoint is in the teens.  Like, hey, if you

2    get down to 15 hours, hey -- it's not really a

3    corrective action; it's just, hey, you're at -- you're

4    at kind of the end of your bucket hours.  If you run

5    out, you're terminated.

6              So we use Kronos to kind of gut-check

7    that for us.  So Kronos, at certain points, would

8    issue the corrective actions.  They -- all we would

9    have to do is click print on them, and the supervisor

10   issued them.

11       Q.   So the supervisors didn't have to input

12   anything in the system when someone was late, in order

13   for the system to track that.

14       A.   Correct.  Basically, Kronos knew their start

15   time and would automatically start deducting points or

16   time from the bucket at that point.

17       Q.   Did you ever have a discussion with

18   Ms. Hooper about an agreement that she could be,

19   potentially, a few minutes late due to child care

20   issues?

21       A.   Yes.

22       Q.   And what was that discussion?  When was that

23   discussion?

24       A.   So during COVID, there were a lot of

25   concessions given to associates for, like, child care

APP000045

1          Q.    (BY MR. WHITEHURST)   Sure.

2                     Are you aware of the headbutt incident

3     that Mr. Walters was involved in?

4                     MS. BEZNEY:  Object to form.

5          A.    Headbutt incident.   Not specifically, no.

6          Q.    (BY MR. WHITEHURST)   What do you know

7     generally?

8          A.    I'm not aware of him being headbutted.

9          Q.    Okay.

10                    If there was an agreement between

11    Ms. Hooper and yourself, would it have gone -- to show

12    up late, would that have been in her file?

13                    MS. BEZNEY:  Object to form.

14         A.    No.   It would -- it would have been

15    reflected on the timekeeping side, so the admin and

16    Eartis would have been aware of it.   I'm unaware if it

17    made it down -- like I said, I do not know if it made

18    it down to Jason.

19         Q.    (BY MR. WHITEHURST)   Well, I mean, my

20    understanding, he was her supervisor, was he not?

21         A.    He was.

22         Q.    So why in the world wouldn't you tell him?

23         A.    I -- I am -- I cannot -- I cannot remember

24    if I told him specifically, is -- I may have; I -- I

25    may not have.   I do not know.

1        Q.   Did you make the agreement with Ms. Hooper,
2   or did Mr. Shaw make the agreement?
3        A.   We would have both made the agreement with
4   Ms. Hooper, because I -- at that time, we would have
5   had to report on hours that were missed due to COVID.
6        Q.   Okay.  So when did COVID start?
7        A.   March of 2020.
8        Q.   Okay.  And when did it end?
9        A.   I don't think it has, but a lot of the
10  concessions -- really, at the end of -- I would say
11  about 2021, the reporting and everything really
12  stopped.  We no longer had to report on outages or
13  cases or anything to that nature -- or, sorry, about
14  mid-2022.  I said 2021.  I meant 2022.
15       Q.   Okay.  Well, I'm looking at Exhibit E, which
16  we've already looked at today, and that document is
17  signed March the 12th, 2021, by Ms. Hooper and
18  Mr. Walters.
19            What's going on here?  Why didn't he
20  know this?
21       A.   I --
22            MS. BEZNEY:  Object to form.
23       A.   -- I do not know.
24       Q.   (BY MR. WHITEHURST)  Well, isn't that kind
25  of a common-sense thing?  You're going to tell

APP000047

1      IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
2                     DALLAS DIVISION
3   JASON WALTERS              )
                               )
4   vs.                        )   CIVIL ACTION
                               )   3:22-cv-01840-C
5                              )   JURY REQUESTED
    EXEL, INC. D/B/A           )
6   DHL SUPPLY CHAIN           )
7
8
9
                     ORAL DEPOSITION OF
10                     ADAM ELLIOTT
                   THURSDAY, APRIL 13, 2023
11                  9:53 A.M. - 11:09 A.M.
12
13
14
15        ORAL DEPOSITION OF ADAM ELLIOTT, produced as a
16   witness at the instance of the Plaintiff, and duly
17   sworn, was taken in the above-styled and -numbered
18   cause on the 13th day of April, 2023, from 9:53 a.m.
19   to 11:09 a.m., before Maribel Torres, Certified
20   Shorthand Reporter in and for the State of Texas,
21   reported by computerized stenotype machine at the law
22   offices of Fisher Phillips, LLP, 500 North Akard
23   Street, Suite 3550, Dallas, Texas, pursuant to the
24   Federal Rules of Civil Procedure and the agreements
25   herein after set for, if any.  Signature reserved.

```
 1    APPEARANCES
 2
      REPRESENTING THE PLAINTIFF:
 3    BOB WHITEHURST, ESQ.
      WHITEHURST & WHITEHURST, ESQ.
 4    5380 OLD BULLARD ROAD
      SUITE 600, #363
 5    TYLER, TEXAS 75703
      TELEPHONE: (903)593-5588
 6    EMAIL: whitehurstlawfirm@yahoo.com
 7
      REPRESENTING THE PLAINTIFF:
 8    THEANNA BEZNEY, ESQ.
      FISHER PHILLIPS, LLP
 9    500 NORTH AKARD STREET
      SUITE 3550
10    DALLAS, TEXAS 75201
      TELEPHONE: (214)220-8325
11    EMAIL: tbezney@fisherphillips.com
12
      ALSO PRESENT:
13    MR. JASON WALTERS, PLAINTIFF
14
15
16
17
18
19
20
21
22
23
24
25
```

APP000049

ADAM ELLIOTT - 4/13/2023

19

1       Q.    -- what are the hours of the day shift?

2       A.    5:00 a.m. to 5:00 p.m.

3       Q.    5:00 a.m. to 5:00 p.m. is the day shift?

4       A.    Yes.

5       Q.    Okay.  And that was the same when

6    Mr. Walters was there.

7       A.    Yes.

8       Q.    Okay.  Has that changed?

9       A.    No.

10      Q.    Has there been any change in the way

11   operations supervisors, such as Mr. Walters, have been

12   paid since he left in March of 2022?

13      A.    In what regard?  Like...?

14      Q.    Are they still paid a salary?  Are they paid

15   an hourly wage?  Or how does that work?

16      A.    They're still paid a salary.

17      Q.    Okay.  And are they still working the three

18   hours -- 36 hours plus weekends sometimes?

19      A.    If that's their schedule, yes.

20      Q.    Right.

21            Do you set the schedule?

22      A.    Their operations manager sets the schedule.

23      Q.    And who is that?

24      A.    Eartis Shaw.

25      Q.    Okay.

APP000050

1     A.   Yes.

2          Q.   Okay.  Is that his attire, usually?  Is that

3     what operations supervisors wear?  He's got a hardhat

4     and a radio and some other stuff.

5          A.   No.

6          Q.   What do they wear?

7          A.   Normally just a safety vest and a radio.

8          Q.   Okay.

9          A.   And steel-toed shoes.

10         Q.   Now, the operations supervisors all work in

11    the warehouse.  Is that correct?

12         A.   Yes.

13         Q.   Okay.  Do they work somewhere else?

14         A.   Just the warehouse and, then, possibly out

15    on the yard, where the trucks --

16         Q.   Right.

17         A.   -- are --

18         Q.   But if you're working, I think you said, a

19    three-day shift -- and that started January, I think

20    you said?  When did that start, to your knowledge?

21         A.   To my knowledge, it started in January of

22    2021.

23         Q.   2021.  Okay.

24              But you -- that's 36 hours.  And also

25    sometimes they work day and -- did Mr. Walters, to

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
 2                       DALLAS DIVISION
 3    JASON WALTERS              )
                                 )
 4    vs.                        )   CIVIL ACTION
                                 )   3:22-cv-01840-C
 5                               )   JURY REQUESTED
      EXEL, INC. D/B/A           )
 6    DHL SUPPLY CHAIN           )
 7
 8
 9
                        ORAL DEPOSITION OF
10                          EARTIS SHAW
                        THURSDAY, APRIL 13, 2023
11                      11:25 A.M. - 2:23 P.M.
12
13
14
15         ORAL DEPOSITION OF EARTIS SHAW, produced as a
16    witness at the instance of the Plaintiff, and duly
17    sworn, was taken in the above-styled and -numbered
18    cause on the 13th day of April, 2023, from 11:25 a.m.
19    to 2:23 p.m., before Maribel Torres, Certified
20    Shorthand Reporter in and for the State of Texas,
21    reported by computerized stenotype machine at the law
22    offices of Fisher Phillips, LLP, 500 North Akard
23    Street, Suite 3550, Dallas, Texas, pursuant to the
24    Federal Rules of Civil Procedure and the agreements
25    herein after set for, if any.  Signature reserved.
```

```
 1    APPEARANCES
 2
      REPRESENTING THE PLAINTIFF:
 3    BOB WHITEHURST, ESQ.
      WHITEHURST & WHITEHURST, ESQ.
 4    5380 OLD BULLARD ROAD
      SUITE 600, #363
 5    TYLER, TEXAS 75703
      TELEPHONE: (903)593-5588
 6    EMAIL: whitehurstlawfirm@yahoo.com
 7
      REPRESENTING THE PLAINTIFF:
 8    THEANNA BEZNEY, ESQ.
      FISHER PHILLIPS, LLP
 9    500 NORTH AKARD STREET
      SUITE 3550
10    DALLAS, TEXAS 75201
      TELEPHONE: (214)220-8325
11    EMAIL: tbezney@fisherphillips.com
12
      ALSO PRESENT:
13    MR. JASON WALTERS, PLAINTIFF
14
15
16
17
18
19
20
21
22
23
24
25
```

1              MS. BEZNEY:  It's right in the middle
2    of the handbook.
3         Q.   (BY MR. WHITEHURST)  Is that correct,
4    Mr. Shaw, the employee handbook is about 78 pages?
5         A.   Possibly.  It's a good amount of pages, yes,
6    sir.
7         Q.   It's not 200 or 300.
8         A.   No.  It's about this thick.
9         Q.   Okay.  All right.
10             Okay.  So had Mr. Walters corrected
11   anyone else prior to that day, about not having the
12   correct safety gear on, anything of that nature?
13        A.   I'm sure he did.
14        Q.   Okay.  That would be his job.
15        A.   Yes, sir.
16        Q.   Because that's what DHL told him to do.
17   Right?
18        A.   It's a requirement of the job, yes.
19        Q.   Right.  Because that's what they told him.
20   All right.
21             But Mr. Walters says this, and
22   Ms. Hooper says that.  But we do know -- he says, "I
23   did not threaten to choke her either."  Is that -- the
24   choke, is that the way you think HR terminated
25   Mr. Walters?

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
 2                       DALLAS DIVISION
 3    JASON WALTERS              )
                                 )
 4    vs.                        )    CIVIL ACTION
                                 )    3:22-cv-01840-C
 5                               )    JURY REQUESTED
      EXEL, INC. D/B/A           )
 6    DHL SUPPLY CHAIN           )
 7
 8
 9
                       ORAL DEPOSITION OF
10                       DENEILL HOOPER
                     THURSDAY, APRIL 13, 2023
11                    3:24 P.M. - 4:19 P.M.
12
13
14
15        ORAL DEPOSITION OF DENEILL HOOPER, produced as a
16    witness at the instance of the Plaintiff, and duly
17    sworn, was taken in the above-styled and -numbered
18    cause on the 13th day of April, 2023, from 3:24 p.m.
19    to 4:19 p.m., before Maribel Torres, Certified
20    Shorthand Reporter in and for the State of Texas,
21    reported by computerized stenotype machine at the law
22    offices of Fisher Phillips, LLP, 500 North Akard
23    Street, Suite 3550, Dallas, Texas, pursuant to the
24    Federal Rules of Civil Procedure and the agreements
25    herein after set for, if any.  Signature reserved.
```

```
 1    APPEARANCES
 2

      REPRESENTING THE PLAINTIFF:
 3    BOB WHITEHURST, ESQ.
      WHITEHURST & WHITEHURST, ESQ.
 4    5380 OLD BULLARD ROAD
      SUITE 600, #363
 5    TYLER, TEXAS 75703
      TELEPHONE: (903)593-5588
 6    EMAIL: whitehurstlawfirm@yahoo.com
 7

      REPRESENTING THE PLAINTIFF:
 8    THEANNA BEZNEY, ESQ.
      FISHER PHILLIPS, LLP
 9    500 NORTH AKARD STREET
      SUITE 3550
10    DALLAS, TEXAS 75201
      TELEPHONE: (214)220-8325
11    EMAIL: tbezney@fisherphillips.com
12

      ALSO PRESENT:
13    MR. JASON WALTERS, PLAINTIFF
14
15
16
17
18
19
20
21
22
23
24
25
```

1      Q.   (BY MR. WHITEHURST)  Was he supposed to do
2 what the office -- or general manager and everybody
3 else told him to do?
4      A.   Supposed to.
5      Q.   Okay.  And if he didn't do that, he wouldn't
6 be doing his job.  Is that right?
7      A.   Right.
8      Q.   Is that right, yes or no?
9      A.   Yes.
10     Q.   Okay.
11          Did you ask either of these two ladies
12 to write a statement for you?
13     A.   No.
14     Q.   You didn't, okay.
15          Did anyone else, after this incident
16 happened, come to you and ask you anything?
17     A.   No.
18     Q.   Okay.  I'm going to show you what I think is
19 marked as No. 10 here.  Is that the incident you're
20 talking about?
21     A.   Yes.  This is the incident.
22     Q.   Okay.
23          All right.  Have you seen the video?
24     A.   No.
25     Q.   Okay.  Is -- there's a second page, I

1   have not even asked to see the video.

2       Q.   Okay.

3       A.   Because I don't want to relive it.

4       Q.   You don't want to relive it.

5       A.   No.

6       Q.   Huh.

7               All right.  If Mr. Walters had believed

8   that you were wearing the wrong uniform, would it have

9   been his job to correct you?

10      A.   If I was in the wrong uniform --

11      Q.   Right.

12      A.   -- yes, it was his job to correct me.

13      Q.   Okay.  And if Mr. -- okay.

14              As far as you know, there's not but one

15  video.  Is that right?

16      A.   As far as I know.

17      Q.   Has somebody said there's two videos?

18      A.   I don't know if it would be.  I don't know.

19      Q.   Okay.  Well, I've looked at the video, and

20  it's just like that.  I can't tell who it is right

21  there.  That's what I'm asking.  You may have seen a

22  video.  You've not even seen the video today.

23              MS. BEZNEY:  Objection, asked and

24  answered.  Sorry.

25      Q.   (BY MR. WHITEHURST)  Is that right?

1       A.   Right.
2       Q.   Okay.   And that was part of Mr. Walters'
3   job, is to make sure everybody's safe.
4       A.   Right.
5       Q.   Okay.   And if he didn't do that, he wouldn't
6   be doing his job.
7       A.   Right.
8       Q.   Okay.   So if you'd been run over and killed
9   and Mr. Walters had not said anything, would that be
10  his fault?
11      A.   If I had been run over and killed, yes, it
12  would -- it would -- it would be a problem.   But at
13  this point in time, since we are talking about this
14  video and this meeting right here, we have not talked
15  about safety.   This whole -- everything right here, we
16  were not talking about being in safety colors, safety
17  nothing.   We were not talking about being in any of
18  that.
19      Q.   Okay.   So why was he grabbing you?
20      A.   You might need to ask him that, because I
21  don't know why he grabbed me.
22      Q.   Okay.   Why does he even come close to you?
23      A.   I don't know that, either.
24      Q.   Okay.   And you correct me if I'm wrong, now.
25  I'm going to get about -- the closest person to you

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
 2                        DALLAS DIVISION
 3    JASON WALTERS              )
                                 )
 4    vs.                        )    CIVIL ACTION
                                 )    3:22-cv-01840-C
 5                               )    JURY REQUESTED
      EXEL, INC. D/B/A           )
 6    DHL SUPPLY CHAIN           )
 7
 8
 9
                         ORAL DEPOSITION OF
10                         TAMMY WILLIAMS
                       THURSDAY, APRIL 13, 2023
11                      2:31 P.M. - 3:15 P.M.
12
13
14
15         ORAL DEPOSITION OF TAMMY WILLIAMS, produced as a
16    witness at the instance of the Plaintiff, and duly
17    sworn, was taken in the above-styled and -numbered
18    cause on the 13th day of April, 2023, from 2:31 p.m.
19    to 3:15 p.m., before Maribel Torres, Certified
20    Shorthand Reporter in and for the State of Texas,
21    reported by computerized stenotype machine at the law
22    offices of Fisher Phillips, LLP, 500 North Akard
23    Street, Suite 3550, Dallas, Texas, pursuant to the
24    Federal Rules of Civil Procedure and the agreements
25    herein after set for, if any.  Signature reserved.
```

1    APPEARANCES
2

     REPRESENTING THE PLAINTIFF:
3    BOB WHITEHURST, ESQ.
     WHITEHURST & WHITEHURST, ESQ.
4    5380 OLD BULLARD ROAD
     SUITE 600, #363
5    TYLER, TEXAS 75703
     TELEPHONE: (903)593-5588
6    EMAIL: whitehurstlawfirm@yahoo.com
7

     REPRESENTING THE PLAINTIFF:
8    THEANNA BEZNEY, ESQ.
     FISHER PHILLIPS, LLP
9    500 NORTH AKARD STREET
     SUITE 3550
10   DALLAS, TEXAS 75201
     TELEPHONE: (214)220-8325
11   EMAIL: tbezney@fisherphillips.com
12

     ALSO PRESENT:
13   MR. JASON WALTERS, PLAINTIFF
14
15
16
17
18
19
20
21
22
23
24
25

TAMMY WILLIAMS - 4/13/2023

41

1      A.    Yes.

2          Q.    What is that?  What am I talking about?

3          A.    High-vis is a color; and you need to be able

4    to see someone out on the floor, so they require

5    high-vis coloring to wear: bright yellow, bright

6    green, bright orange, reflective gray.

7          Q.    Right.

8          A.    Just high-visibility colors.

9          Q.    Does this lady have that on?

10         A.    I don't know that the site accounts for that

11   jacket being high-vis or not.

12         Q.    I'm sorry, what?  Yes, she does --

13         A.    The site gave out those jackets.  Whether or

14   not they claim that that yellow on that jacket is

15   high-vis, I don't know.

16         Q.    Okay.  So maybe yes and maybe no.

17         A.    Correct.

18         Q.    Okay.  So if it was not, would it be the job

19   of Mr. Walters to tell her?

20         A.    Yes, sir.

21         Q.    Okay.  And if he doesn't, he wouldn't be

22   doing his job.

23         A.    Correct.

24         Q.    Okay.

25               Now, it shows there he's touching her,

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

JASON WALTERS                    )
                                 )
vs.                              )    CIVIL ACTION
                                 )    3:22-cv-01840-C
                                 )    JURY REQUESTED
EXEL, INC. D/B/A                 )
DHL SUPPLY CHAIN                 )


ORAL/VIDEOCONFERENCED DEPOSITION OF

MICKEY MOZA

TUESDAY, JUNE 27, 2023

1:15 P.M. - 3:06 P.M.


ORAL DEPOSITION OF MICKEY MOZA, produced as a
witness at the instance of the Plaintiff, and duly
sworn, was taken in the above-styled and -numbered
cause on the 27th day of June, 2023, from 1:15 p.m. to
3:06 p.m., before Maribel Torres, Certified Shorthand
Reporter in and for the State of Texas, reported by
computerized stenotype machine, held remotely,
pursuant to the Federal Rules of Civil Procedure and
the agreements herein after set forth, if any.
Signature reserved.

1   APPEARANCES
2
    REPRESENTING THE PLAINTIFF:
3   BOB WHITEHURST, ESQ.
    WHITEHURST & WHITEHURST, ESQ.
4   5380 OLD BULLARD ROAD
    SUITE 600, #363
5   TYLER, TEXAS 75703
    TELEPHONE: (903) 593-5588
6   EMAIL: whitehurstlawfirm@yahoo.com
7
    REPRESENTING THE DEFENDANT:
8   THEANNA BEZNEY, ESQ.
    FISHER PHILLIPS, LLP
9   500 NORTH AKARD STREET
    SUITE 3550
10  DALLAS, TEXAS 75201
    TELEPHONE: (214) 220-8325
11  EMAIL: tbezney@fisherphillips.com
12
    ALSO PRESENT:
13  MR. JASON WALTERS, PLAINTIFF
14
15
16
17
18
19
20
21
22
23
24
25

3

1                    I N D E X

2

     Appearances..........................        2
3    WITNESS:  MICKEY MOZA
     Examination by Mr. Whitehurst........     4,  75
4    Examination by Ms. Bezney............        73
     Acknowledgment.......................        97
5    Court Reporter's Certificate.........        99

6

            PREVIOUSLY MARKED PLAINTIFF'S EXHIBITS
7

8    NO.    DESCRIPTION                          PAGE

9

     E     Corrective Action Notice,            51
10         Exel_00196-198
     F     Text Message                         12
11   G     Investigation Summary Form,          19
           Exel_00112-113
12   H     Corrective Action Form,              26
           Exel_00119
13   I     Text Messages                        28

14

            PREVIOUSLY MARKED DEFENDANT'S EXHIBITS
15

16   P     Complainant/Witness Statement Form,  73
           Exel_001575-1578
17   Q     March 11, 2022 Emails,               76
           Exel_001579-1580

18

19

20

21

22

23

24

25

APP000065

4

```
 1                    P R O C E E D I N G S
 2              TUESDAY, JUNE 27, 2023 - 1:15 P.M.
 3                    (REPORTER'S NOTE:  Names not spelled on
 4                     the record may be spelled phonetically.
 5                     Quotation marks may be used with
 6                     indirect, inexact quotes.)
 7                    THE COURT REPORTER:  We are on the
 8   record.  Today's date is June 27, 2023, and the time
 9   is 1:15 p.m.  This is the remote oral deposition of
10   Mickey Moza, taken by Zoom.
11                        MICKEY MOZA,
12   having been administered the oath, testifies as
13   follows:
14                         EXAMINATION
15   BY MR. WHITEHURST:
16        Q.   Would you state your name for the record,
17   please, sir?
18        A.   Mickey Moza.
19        Q.   And how are you currently employed?
20        A.   I'm not sure -- what do you mean by that?
21        Q.   Who do you work for right now?
22        A.   I work for JPMorgan Chase.
23        Q.   And what do they do?
24        A.   They're a bank.
25        Q.   I'm sorry, what?
```

APP000066

1      A.   Various reasons.  So I -- you know, I don't

2  recall specifically, specific conversations that he

3  and I spoke face-to-face, but, you know -- it might be

4  for different -- different reasons, I -- but I don't

5  recall specific, you know, instances where he and I

6  spoke, or the subject matter, I should say, either.

7  So.

8      Q.   Okay.  Did you keep any records regarding

9  Jason Walters when you left DHL?

10     A.   No.

11     Q.   Okay.  Did you look at any tapes or

12  videotapes prior to your deposition here today?

13     A.   Not since I left DHL, no.

14     Q.   Okay.

15          You were going to school while you were

16  working for DHL, correct?

17     A.   Yes.

18     Q.   Okay.  What school was that?

19     A.   That was the University of Texas at

20  Arlington.

21     Q.   Okay.  And what did you receive your degree

22  in?

23     A.   Human resource management.

24     Q.   So looking at the documents, Mr. Walters was

25  let go sometime in March of 2022.  Is that correct?

APP000067

 1    of doing a complete investigation.  Is that correct?
 2         A.    Not necessarily, no.  When you say do and
 3    completing, what do you -- I mean, what do you mean?
 4         Q.    Okay.  You were at -- were you at the
 5    location while all this was going on?
 6         A.    I had many other locations, so I don't think
 7    I was ever physically present during this
 8    investigation, at that location.
 9         Q.    So all you got was by phone or fax?
10         A.    I don't remember -- by phone and by email,
11    yes.
12         Q.    Email and fax, okay.
13         A.    Email and phone.
14         Q.    Email and phone.
15               And you were talking to Eartis Shaw?
16         A.    Yes.
17         Q.    You were talking to who else?
18         A.    I would say, as well as Eartis Shaw, it
19    would be the general manager of the facility.
20         Q.    Adam Elliott?
21         A.    Yes.  As well as the director for that
22    location, the operations director for that location,
23    which would be John Dobbins.
24         Q.    All right.  Anybody else?
25         A.    At that location?

1        Q.   Yes.

2        A.   No.  At that location, only those three.

3        Q.   Okay.  But you were not actually at that

4   location.  Is that right?

5        A.   Yeah, I didn't work at that location, no.

6        Q.   Where did you work?

7        A.   I worked at many locations.  I, basically,

8   would go to different locations every day.  So there

9   was not one location that I was at, you know, for more

10  than one or two days in a row.

11       Q.   Besides Jason Walters, who else have you

12  been involved in terminating with DHL?

13       A.   Many people.

14       Q.   Many people?

15       A.   Yes.

16       Q.   Okay.  And have you got a procedure that you

17  follow in investigation?

18       A.   Yeah, yes.  We had a procedure, certainly,

19  yes.

20                (Plaintiff's Exhibit F previously

21                marked.)

22       Q.   (BY MR. WHITEHURST)  I'm going to show you

23  what's been marked Exhibit F, hopefully.

24                Do you know Tammy Williams?

25       A.   I did know her, yes.

1      Q.   Okay.  And if you see this, is Exhibit F,

2   this is from Tammy Williams; it says, "I will

3   definitely send Mickey an email today when I get to

4   Kentucky.  I am so sorry your going through this.  She

5   is one of the biggest racists I've ever worked with."

6             Did you ever get this email or text?

7      A.   Not that I --

8             MS. BEZNEY:  Object to form.

9      A.   -- recall.

10     Q.   (BY MR. WHITEHURST)  I'm sorry, sir, go

11  ahead.

12     A.   Not that I can recall.

13     Q.   This is a pretty blatant email.  You're

14  saying you never got it?

15             MS. BEZNEY:  Object to form.

16     A.   Not that I can recall.

17     Q.   (BY MR. WHITEHURST)  Is there something that

18  would affect your memory here today?

19     A.   I don't recall getting any email that's

20  referring to whatever that is there, on your phone.

21     Q.   Okay.  Are you on any kind of drugs or

22  medication that would affect your memory here today,

23  Mr. Moza, Mickey?

24     A.   No.

25     Q.   Okay.  But if you had gotten this email from

1        A.   I haven't terminated, myself--like, I'm not

2    the one who communicated the termination--but I've

3    been involved in many terminations.

4        Q.   So -- but you did the investigation.  Is

5    that correct?

6        A.   I'm involved in the investigations.  I

7    don't, necessarily, do them.  The investigations are

8    typically an effort between the -- you know, someone

9    at that location that I was responsible for and

10   myself.  So yeah.

11       Q.   Okay.  You just gather the facts, right?

12       A.   Sure.  Yeah, you could say that.

13       Q.   Okay.  All right.

14                 (Plaintiff's Exhibit G previously

15                 marked.)

16       Q.   (BY MR. WHITEHURST)  All right.  This is

17   Exhibit G, the lady's going to show you, hopefully.

18                 MR. WHITEHURST:  Okay.

19       Q.   (BY MR. WHITEHURST)  Have you ever seen this

20   document before, Mr. Moza?

21       A.   Yes.  This looks like the standard

22   investigation summary form that we did at -- that we

23   used at DHL for investigations.  Yes, so I believe --

24   so I believe this is -- looks like the one that we,

25   probably, did for this matter, yeah.

1    weren't going to talk to them anyway.  Is that right?

2                  MS. BEZNEY:  Object to form.

3        A.    I don't -- I don't agree with that.  I think

4    it would depend on if the witnesses were witness to,

5    you know, what the situation was in this -- in this

6    case, for example.  So.

7        Q.    (BY MR. WHITEHURST)  Are you aware that

8    Mr. Walters was complaining about Ms. Hooper

9    interrupting during the pre-shift meeting?

10       A.    I don't recall.

11       Q.    You don't recall that?

12       A.    No, I don't recall that specific part of

13   this.

14       Q.    Okay.

15       A.    I don't know.

16       Q.    And this document is dated March 11th, 2022,

17   and it --

18                  MR. WHITEHURST:  It's at the bottom,

19   please, ma'am.  It's up at the top, too.

20       A.    Okay.

21       Q.    (BY MR. WHITEHURST)  Okay.  And it says --

22   at the second page, sir, it says, "We have suspended

23   Jason pending the results of our investigation."

24       A.    Okay.

25       Q.    Did you type that?

1          A.   I -- I believe so.

2          Q.   Did you have a secretary typing all this

3     stuff up, or did you do it yourself?

4          A.   I would have done it myself.

5          Q.   Okay.  And you did that at your home,

6     correct?

7          A.   No, not necessarily at my home.  As I

8     mentioned before, I was, every day, at different

9     locations.  So probably at another DHL location is

10    likely where I typed this up.

11         Q.   So you possibly could have been at the

12    location when this was going on.

13         A.   I don't believe I was at that location when

14    this was going on, no.  I mean other locations.

15         Q.   You were at another location.  What other

16    locations did you go to?

17         A.   The other locations?  What do you mean by

18    that?  Do you mean, like, where are they and -- where

19    are they?

20         Q.   Yes.  Where do -- yes.

21         A.   So there are locations that I am responsible

22    for in Denton, in Fort Worth, in Irving, in

23    Carrollton, in Frisco, in Hutchins, and then multiple

24    locations in Dallas.  So I could have been at any one

25    of those.

1    the general manager, Adam Elliott; and the director,

2    John Dobbins.

3         Q.   So you didn't actually speak to anybody.  Is

4    that right?

5              MS. BEZNEY:  Object to form.

6         A.   I spoke to the people whose names I just

7    said.

8         Q.   (BY MR. WHITEHURST)  Okay.  Mr. Moza, I just

9    want to make sure I'm clear in my mind.  You only

10   spoke to Eartis Shaw and John Dobbins.

11        A.   And Adam Elliott.

12        Q.   And Adam Elliott.  You didn't talk --

13        A.   Regarding this matter.

14        Q.   All the information you're getting is in a

15   written statement.  Is that right?

16             MS. BEZNEY:  Object to form.

17        A.   Other than the conversation with those three

18   individuals, yes.  As far as these three, Jason

19   Walters, as well as the other two individual -- or

20   other three individuals, on this form that we looked

21   at just a minute ago, at the top of the form, I didn't

22   speak to any of those individuals directly.  I think I

23   spoke to Jason Walters maybe near the end of this

24   matter, but I don't believe I spoke to any of the

25   other individuals directly.

1              (Plaintiff's Exhibit I previously
2              marked.)
3         Q.   (BY MR. WHITEHURST)  Okay.  But, Mr. Moza,
4    my understanding is -- do you know who Tammy Williams
5    is or not?
6         A.   I knew her when I was at DHL.
7         Q.   Okay.
8              MR. WHITEHURST:  All right.  If we can
9    kind of go through the document, please, ma'am.
10        Q.   (BY MR. WHITEHURST)  Apparently, this is on
11   Friday, March 18th, 2022.  It says, "Did you call
12   Mickey?"  But as we sit here today, you don't remember
13   getting any phone calls from Ms. Williams or anyone
14   else.
15        A.   From who?
16        Q.   Tammy Williams.
17        A.   I don't recall getting a phone call from
18   Tammy Williams.  No, I don't believe so.
19        Q.   Do you even know who I'm talking about?
20   Tammy Williams?
21        A.   Yes, I do -- I do recall Ms. Williams from
22   when I worked there, yes.
23        Q.   Okay.  Did you ever have any conversations
24   with her?
25        A.   Regarding this matter or just in general?

APP000075

1         Q.   Well, first of all, in general, yeah.

2         A.   Yes.  We had conversations when I worked at

3    DHL, but not regarding this matter.

4         Q.   She would know you well enough to call you

5    Mickey.  Is that right?

6         A.   Back then -- when I was at DHL, yes.

7         Q.   Okay.  All right.

8              MR. WHITEHURST:  Then if you'd go to

9    the second page, please, ma'am.

10        Q.   (BY MR. WHITEHURST)  Okay.  And it's got

11   "Mickey HR-DHL" at the top, and it's got

12   "817-269-4794."  Is that your phone number?

13        A.   When I was at DHL, that was the phone

14   number, yes, that I had.

15        Q.   Yes.

16              And, then, it looks like a history of

17   calls, March 16th, one, two, three, four, five -- six

18   calls.  Did Mr. Walters try to contact you at that

19   time?

20        A.   I believe so, yes.

21        Q.   Okay.  All right.  And do you know why?

22        A.   Regarding his termination, yes, I believe

23   so.

24        Q.   Okay.  Did you ever tell Mr. Walters why he

25   was terminated?

1          A.   I don't recall.

2          Q.   You don't recall?  Did he ever ask why he

3    was terminated?

4          A.   I don't recall if he asked me directly.  I

5    do recall one of these calls.  I think it's near the

6    top one on this list.

7               THE WITNESS:  If you could scroll up a

8    little bit.  Yep.

9          A.   I think that call, I recall it happening;

10   but I don't recall the specifics of the call, you

11   know, what we -- what we discussed specifically.  So.

12         Q.   (BY MR. WHITEHURST)  Okay.  Did he ever ask

13   you why he was terminated?

14         A.   Again, I don't recall.

15         Q.   Okay.

16              All right.  If you will look at the

17   next document.

18              MR. WHITEHURST:  Please, ma'am.

19              THE COURT REPORTER:  The next page?

20              MR. WHITEHURST:  Yes, ma'am.  It's

21   page 3, yeah.

22         Q.   (BY MR. WHITEHURST)  This says, "I have been

23   in contact with some of the people there."  You may

24   not be able to read that yet -- yeah.  "No statements

25   taken from them.  Im just really at a loss."  And

1   Ms. Williams' response is, "They didn't take

2   statements from the peeps that were there?  That's

3   weird.  I am so sorry.  I'm pretty shocked."

4                 Is it the policy of DHL not to take

5   statements from all the people that were there?

6                 MS. BEZNEY:  Object to form.

7         A.    I don't believe -- I don't know if there is

8   a policy that specifically states when and when not to

9   take statements and who and who not to take statements

10  from.  So I don't know if there's a specific policy

11  that states that, what -- you know, exactly what to do

12  with which statements -- sorry, which witnesses to

13  collect statements from, which ones to not.  So I

14  guess I can't answer that definitively.  I don't

15  recall the policy verbatim, so can't answer that

16  definitively, I guess.

17        Q.    (BY MR. WHITEHURST)  Okay.  But it was your

18  policy not to talk to anybody else, right?

19                MS. BEZNEY:  Object -- object to form.

20        A.    That -- I don't agree with that, no.

21        Q.    (BY MR. WHITEHURST)  Okay.  Who else did you

22  talk to?

23        A.    As I believe I said earlier, I didn't speak

24  to anyone other than the two people I mentioned.  So

25  yeah.

APP000078

1      Q.   But you're the guy in charge of the
2  investigation, correct?
3      A.    I -- I don't believe that I'm the only
4  person involved in the investigation or responsible
5  for it.  I believe that the investigation is a joint
6  effort between the management team at the location, as
7  well as myself as HR.
8      Q.   Mr. Moza, you're the human resource person.
9  You're trained on this.  Correct?
10     A.    I don't believe, at DHL, I was trained on
11 this -- I don't recall if I was trained or not on the
12 investigations at DHL.  But what I do recall is that
13 HR--and I believe it's a policy, in DHL's policy -- I
14 don't recall if this was the policy name--that both HR
15 and management worked together to collect statements
16 and to conduct an investigation.  So it's not
17 something that just HR does by themselves.
18     Q.    But you take the lead, do you not?
19     A.    Yes.  HR has to guide it, certainly.
20     Q.   Okay.
21            MR. WHITEHURST:  Then the next page,
22 please, ma'am.
23     Q.   (BY MR. WHITEHURST)  Says, "I am sorry.  I
24 am pretty shocked to hear about it as well.  I was
25 hoping Mickey would give some in-sight."

1              So Ms. Williams was correct; you didn't

2     provide any insight to Mr. Walters.  Is that right?

3              MS. BEZNEY:  Object to form.

4          A.    I don't know what -- I don't know if -- I

5     don't know the answer to that question, I mean,

6     what -- what exactly are you asking?

7          Q.    (BY MR. WHITEHURST)   Okay.   My understanding

8     from your previous testimony, you talked to Mr. Jason

9     Walters one time.  Is that right?

10         A.    I believe so, yes.

11         Q.    Okay.  He tried to call you several times,

12    but you talked to him one time.

13         A.    I don't know --

14         Q.    Right?

15         A.    -- I don't know if that's true, that he

16    tried to call me several times.  And if he did -- you

17    know, I don't know how many calls were exchanged back

18    and forth.  What I do know is that we did speak one

19    time; yes, that's true.

20         Q.    Okay.

21              Then he says, "They said they did not

22    [sic]...when I asked Daisy...she said they haven't

23    asked her anything."  You see where I'm reading from?

24         A.    I can see it, yes.

25         Q.    Okay.  But you didn't talk to Daisy.  Is

APP000080

MICKEY MOZA - 6/27/2023

34

1    that right?

2         A.   I don't believe so.  I don't recall that

3    individual, the name.

4                   MR. WHITEHURST:  If you go to the next

5    page, please, ma'am.

6         Q.   (BY MR. WHITEHURST)  Then it says, "When I

7    asked to see the accusations/statements...I was

8    denied...."

9                   Did Mr. Walters ask you to see the

10   accusation statements?

11        A.   I don't recall.

12        Q.   Well, if he had, would you have given them

13   to him?

14                   MS. BEZNEY:  Object to form.

15        A.   I don't know if I would or wouldn't have.

16        Q.   (BY MR. WHITEHURST)  Why not?

17        A.   Because that's not what happened -- or, at

18   least, I don't recall that happening, I should say.

19        Q.   Now, wait a minute.  There was accusation

20   statements from Ms. Hooper and the other two ladies.

21   Is that correct?

22        A.   Yes.

23        Q.   Okay.  Did you allow Mr. Walters to see

24   those statements?

25        A.   He -- I don't believe -- I don't recall if

1  he even asked me for them, so I can't answer that

2  question.  I don't know if I would have given --

3      Q.   This says, "When I asked to see the

4  accusations/statements...I was denied...."

5      A.   Okay.

6      Q.   Do you have any --

7      A.   I don't know if that happened or not, if he

8  asked -- I don't recall him asking me or not, one way

9  or the other, so.

10      Q.   Well, he could have; you just don't

11  remember.

12              MS. BEZNEY:  Object to form.

13      A.   I suppose that's possible.

14      Q.   (BY MR. WHITEHURST)  Okay.

15              Now, as we sit here today, if he had

16  asked you for the statements from those three ladies,

17  would you have provided them to him?

18              MS. BEZNEY:  Object to form.

19      A.   If I was working at DHL right now and

20  this -- and this matter was occurring as we speak, I

21  don't know whether I would have provided them or not.

22  I don't recall if that had happened before and if

23  there was a specific policy or procedure that

24  addresses that at DHL.  So I likely would have

25  researched that, and I likely would have probably

1    spoken to my management, as well, to get that

2    information.  That's why I say I don't know whether we

3    would -- whether I would have provided it or not, even

4    if I recalled it.

5         Q.   (BY MR. WHITEHURST)  So you don't know if

6    DHL has a policy or no policy on it?

7         A.   Yeah, I don't recall.  I don't recall

8    actually providing statements other people have

9    written, to employees, while I was at DHL.  So I don't

10   know if -- if you're asking me about a

11   hypothetical--it sounds like you are--whether I would

12   have provided or not, because I don't recall that

13   happening, and so I don't recall some policy where I

14   would have typically done that or not.

15        Q.   Okay.

16             MR. WHITEHURST:  Then if you'll scroll

17   down just a little bit, please, ma'am.

18             Yes, ma'am, right there.

19        Q.   (BY MR. WHITEHURST)  Then it says -- this is

20   from Ms. Williams.  She says, "Wow, I thought they had

21   to tell you why you were being fired.  I guess I don't

22   know the policy anymore."

23             So Ms. Williams was wrong.  They don't

24   have to tell you why you're fired.  Is that right?

25             MS. BEZNEY:  Object to form.

1      A.    I don't recall if there was a policy or not

2    that stated that we had to tell you you were fired or

3    not.  What I do know is that we do provide the

4    information, and I believe it's related to that

5    corrective action form that you showed earlier.  I

6    would, basically, relay that information to the

7    individual.  So whatever was communicated with regards

8    to his termination would have been communicated --

9    should -- I would have expected it probably would have

10   been communicated based on that form.

11             However, with that said, I don't know

12   what was or wasn't communicated to him regarding why

13   he was being terminated, because, one, I don't recall

14   he and I's -- he and I's conversation that we had that

15   one time, specifically whether -- what that

16   conversation entailed, but also because HR is not --

17   not the -- not the -- HR does not provide termination

18   notification.  That's something that management does.

19   And I don't believe -- I don't recall whether I

20   notified him he was terminated or not.

21      Q.    (BY MR. WHITEHURST)  Okay.

22             MR. WHITEHURST:  Go to the next page,

23   please, ma'am.

24      Q.    (BY MR. WHITEHURST)  Okay.  Now, this is

25   dated March 21st, 2022.  It says, "Mickey I'm trying

1  to figure out when my health and dental insurance

2  expire on my family...I called the benefits number,

3  they referred me back to HR."  HR is you, is that not?

4      A.   Not necessarily.  I don't know who -- who

5  is -- who they're referring to when -- or who he's --

6  who they told him, you know, that HR is.

7      Q.   Okay.  "I need this information for the

8  state...due to my special needs child."

9           Do you remember this?

10     A.   I don't recall this specifically, no.

11     Q.   You don't recall this, either?

12     A.   I -- I recall something about him needing to

13  get the COBRA information, I believe it was.  This

14  specific message, with all this information, no, I

15  don't recall all this information, no.  I just -- but

16  I do remember something about him needing to get the

17  COBRA information.

18     Q.   For his child.

19     A.   That, I don't know.  I don't recall that.

20     Q.   Okay.

21           "Is there another person that I need to

22  contact about this."  Your response --

23           MR. WHITEHURST:  If you'll scroll down,

24  please.

25     Q.   (BY MR. WHITEHURST)  -- says, "The site

APP000085

1          A.    I can understand that, if he's communicating

2     that in these text messages, that it might be true

3     that he's frustrated.  Okay, sure.

4          Q.    Do you think that the investigation that you

5     did with Mr. Walters and Ms. Hooper was the same as

6     you responded to in this email about his COBRA

7     benefits?

8                     MS. BEZNEY:  Object to form.

9          A.    I don't understand the question.  I'm sorry.

10         Q.    (BY MR. WHITEHURST)  Okay.  My

11    understanding, from looking at these texts and emails,

12    Mr. Walters did not understand his COBRA benefits.

13    Would you agree with that?

14         A.    I don't know what -- I don't -- again, I

15    don't understand -- I don't know what he did or didn't

16    understand.  I believe I communicated there the

17    information that I am capable of providing, with my

18    role there, and that's all that I could communicate.

19    So as far as him not understanding his COBRA

20    information, I don't know the answer to that question

21    because I don't -- I'm not involved in the COBRA

22    process at DHL.

23         Q.    Right.

24                     MR. WHITEHURST:  If you'll go back just

25    a little bit, please, ma'am; says, "I really am taken

1    by."  Yes, ma'am.

2         Q.   (BY MR. WHITEHURST)  All right.  And that's

3    his comments.  Would you agree with me Mr. Walters did

4    not understand what was going on here?

5              MS. BEZNEY:  Object to form.

6         A.   I don't know -- I don't know what -- I don't

7    know -- I don't know what you mean.  He didn't

8    understand what was going on here with regard to what,

9    exactly?

10        Q.   (BY MR. WHITEHURST)  Mr. Moza, could you

11   read that statement that's on the screen right now,

12   please?

13        A.   "I really am taken by surprisectgst my

14   direct questions could not be answered when I clearly

15   asked when my benefits would end being that I have a

16   special needs child that has 24/7 nursing and medicine

17   needed so that he does not have a stroke and die...I

18   am more than aggravated at this point with how."  Then

19   it ends after the letter "t."

20        Q.   Would you agree with me, Mr. Moza, that

21   Mr. Walters is pretty upset about this procedure?

22              MS. BEZNEY:  Object to form.

23        A.   I would agree that he's communicating that,

24   you know, he does not -- that he's trying to get

25   information so his child doesn't have a stroke and die

1   and that he's aggravated.  That's what I would agree

2   with because that's what he's written there.

3        Q.   (BY MR. WHITEHURST)  Was the same thorough

4   response given in this text, from yourself to

5   Mr. Walters, about his COBRA benefits, the same clear

6   understanding of why he was terminated, to

7   Mr. Walters?

8              MS. BEZNEY:  Object to form.

9        A.   I don't recall -- I guess I don't know the

10  answer to that question because I don't recall what

11  was communicated to him when he was notified of his

12  termination, nor do I recall the details of our call

13  that we had, that we talked about earlier.

14       Q.   (BY MR. WHITEHURST)  Okay.

15             When you were going to school, you

16  didn't graduate until August, September of 2022.  Is

17  that right --

18             MS. BEZNEY:  Object to form.

19       Q.   (BY MR. WHITEHURST)  -- with a master's

20  degree?

21       A.   I graduated, I believe -- it was the fall of

22  2022, yes.

23       Q.   Right.  And how many hours a day were you

24  spending on that, your graduate studies?

25       A.   How many hours per day?  On average, how

1          Q.   Did you receive an email?  Did you receive a
2     book?  How did you receive your training?
3          A.   Oh.   Various forms.   So there was in-person
4     training.   There was training that was done, I guess,
5     like this, right, online, similar -- similar fashion.
6     Probably those two are probably the most common ones,
7     I would say, in person or like this, in, you know --
8     yeah.
9          Q.   And during that time, did you receive any
10    written documentation, either in person or online,
11    from DHL?
12         A.   Yes, probably both.   Probably in person and
13    online, yes.
14         Q.   Okay.   And do you still have those
15    documents?
16         A.   I don't think so, no.
17         Q.   So did you delete them?
18         A.   I don't believe I deleted them.   I believe
19    that if I saved them on my computer or if they are in
20    the emails somewhere on the computer that I used, that
21    I don't believe I deleted them.   And I'm quite certain
22    that I gave all -- my computer back -- I know I gave
23    my computer back to DHL.
24                    So, no, I don't believe I deleted them.
25    And I don't know what they've done with that computer

APP000089

 1  since I've left -- what DHL has done since I left,

 2  with that computer.  But I don't believe I deleted any

 3  of those documents that I would have received.

 4          Q.    Okay.  So you had a computer that DHL issued

 5  you.

 6          A.    Correct.

 7          Q.    And that computer, when you left in

 8  September of 2022, went back to DHL.

 9          A.    Yes, that's correct.  I gave it back to

10  them, yes.

11          Q.    Okay.  Notebook?  Laptop?  What was it?

12          A.    Laptop.

13          Q.    Okay.  Do you remember if it was a Dell?

14  Apple?  What?

15          A.    Oh, man.  I don't recall, honestly, which

16  brand -- which brand it was.  I -- I don't believe it

17  was Apple, but I don't recall exactly which brand it

18  was.

19          Q.    Okay.

20                  Who made the management -- who made the

21  final decision to terminate Mr. Walters?

22          A.    So I don't know if there was a final

23  decision and one person solely.  I can tell you, you

24  know, who I spoke to during that -- that termination

25  process, about -- about whether or not, you know, and

**TAB 12**

## Corrective Action Form
## Exempt Level Associates

| | |
|---|---|
| **Associate Name:** | **Jason Walters** |
| **Associate Number:** | **015448** |
| **Manager Name:** | **Eartis Shaw** |
| **Date:** | **3/16/2022** |
| **Re:** | **Corrective Action - Exempt** |

This document serves as official notification that your performance regarding Class 2 work rule #2 Gross Misconduct "threatening associate" has been deemed unacceptable and therefore we are terminating your employment effective immediately.

**Eartis Shaw** met with you on 3/16/2022 to discuss the following:

1. Termination for violating work rule #2 class 2 rules Gross Misconduct

2. Grabbing associates clothing and pulling closer to body

3. Telling the associate to calm down before being put in choke hold

4. Associate was termed by phone 3/16/2022 @ 9:25am by Eartis Shaw (OM) and witnessed by Adam Elliott (GM)

The expectation(s) going forward is for you to:
1. Return any company property in accordance with this termination.

*I have received and read this Corrective Action – Exempt Level form.  I understand the original document will become a part of my personnel file.  My signature does not necessarily mean I agree.*

_____
Associate's Signature

_____     Date
Manager's Signature

Date: 3-16-2022

Distribution:  Original - Personnel File
　　　　　　　 Copy - Associate

**CONFIDENTIAL**

**APP000091**

**TAB 13**

UI Support & Customer Service
TEXAS WORKFORCE COMMISSION
PO BOX 149346
AUSTIN TX 78714-9346



## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed: April 8, 2022

JASON R WALTERS
142 COUNTY ROAD 2437
MINEOLA TX 75773-2997

Social Security Number: XXX-XX-2532
Employer: EXEL INC
As:
Employer Account No: 01-943383-8
All dates are shown in
month-day-year order.

| Decision |
|---|

**Issue:** Separation from Work
**Decision:** We can pay you benefits, if you meet all other weekly requirements, such as being able and available to work, and be actively searching for work.
**Reason for Decision:** Our investigation found that your employer fired you for a reason that was not misconduct connected with the work.
**Law Reference:** Section 207.044 of the Texas Unemployment Compensation Act.

### Understanding your Decision
If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits. TWC will notify you of any appeal hearing. If you do not participate, you may lose your benefits and have to repay benefits you received.

| Determination of Potential Chargeback for the Employer |
|---|

We will charge your former employer's account if we pay you benefits.

| If You Disagree with this Decision |
|---|

**If you disagree with this decision, you may appeal. Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before**   **04-22-22**   .

TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time. If you appeal by fax, you should keep your fax confirmation as proof you sent it. Please include a copy of this determination notice with your appeals correspondence.

**If you receive multiple determination notices, you must appeal each determination separately.**

Mail the appeal to:

| You may appeal by submitting TWC's online appeal form. Go to www.texasworkforce.org/uiappeal |
|---|

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

| Case No.: 7 |
|---|
| Claim ID.: 03-13-22 |
| Claim Date: 03-13-22 |
| HEARING IMPAIRED CLIENTS CALL 711 for RELAY TEXAS |

**Please See Reverse For How To File An Appeal.**
BD300E 02/28/2018

## APP000092

EXHIBIT "A"

**TAB 14**

# WHITEHURST & WHITEHURST
### ATTORNEYS AT LAW

5380 OLD BULLARD ROAD, SUITE 600, #363
TYLER, TEXAS 75703

(903) 593-5588
(214) 853-9382 (FAX)

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Exel, Inc.
DBA DHL Supply Chain
360 Westar Bvld.
Westerville, Ohio 43082

July 18, 2022

      Re: Jason R. Walters

Dear Sirs:

    I have been requested to investigate some claims that Mr. Jason R. Walters has regarding his employment with your company. Please direct all communications concerning this matter to my office.

    These claims arise in part for violations of the Fair Labor Standards Act.

    Mr. Walters was employed by your company and was not paid for all hours worked.

    Prior to any litigation being filed, we would request that the records regarding Mr. Walters be produced. I am enclosing a release of records signed by Mr. Walters.

    If we have not received a response within fourteen (14) days of this letter, we will be left with little choice but to began the litigation process.

    If your company has insurance that covers matters such as these, we would request that you contact said insurance company.

             Sincerely,

             *Bob Whitehurst*

             Bob Whitehurst

## AUTHORIZATION FOR RELEASE OF RECORDS - EMPLOYMENT

**TO WHOM IT MAY CONCERN:**

**EXEL, INC. D/B/A DHL SUPPLY CHAIN.** is authorized to furnish the Law Firm of Whitehurst & Whitehurst, 5380 Old Bullard Road, Suite 600, #363, Tyler, Texas 75703 (hereinafter referred to as "ATTORNEY"), ATTORNEY's agents and representatives, or the bearer of this authorization, any and all desired information concerning my employment history, including, but not limited to the following:

1.     Applications for employment.

2.     Prior employment verification.

3.     Pre-employment background or health documentation.

4.     Applications for insurance and/or insurance forms.

5.     Physician or medical reports or records of any kind pertaining to physical examination required for employment, continued employment or health or disability insurance.

6.     Reports or records of job or other injury.

7.     Attendance records.

8.     Time records.

9.     Clock in/clock out records.

10.     Punch in/punch out records.

11.     Letters of complaint, letters of commendation, disciplinary records and performance evaluations.

12.     Work description records, including pay scale information.

13.     Records reflecting reasons for absences from work, lay-offs or termination for any and all times, occasions or reasons.

14.     Copy of your annual employee benefit package.

15.     All records in regards to monies or benefits paid or payable, including, but not limited to salaries, bonuses, commissions, allowances, overtime, or other similar payments from date of employment to the present.

16.     Salary history.

17.     W-2 forms and/or any other income tax records.

18.     Expense account records.

19.     All records in regards to benefits provided, including, but not limited to disability

**APP000094**   *1 of 2*

benefits, pensions, retirement and/or annuity plans, including all records in regards to the contribution to the same by the employer as well as myself.

20.     All records in regards to investment options, stock purchase plans and/or any similar plans available, including all records in regards to the contribution to the same by the employer as well as myself.

21.     All medical, hospitalization, doctor, prescription drugs, and dental insurance and benefits provided, and the amount of money contributed to the same by the employer as well as myself.

22.     All life insurance benefits provided, and the amount contributed thereto by the employer as well as myself.

23.     All sick days accrued and possible benefits if said sick days are not actually used.

24.     All vacation time accrued and possible benefits if said vacation time is not actually utilized.

25.     Any other benefits received as a result of employment.

26.     Individual employee personnel file from date of employment to the present.

Furthermore, "**EXEL, INC. D/B/A DHL SUPPLY CHAIN**" and/or agent thereof is authorized to discuss my employment history with said attorney's, agents and representatives.

A copy or facsimile transmission of this authorization has the same force and effect as an original.

Jason Walters



**USPS TRACKING #**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 4879 9032 6408 62

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**Whitehurst & Whitehurst**
Attorneys at Law
5380 Old Bullard Rd. Ste., 600-363
Tyler, Texas 75703

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ 7/25    □ Agent<br>               □ Addressee<br>B. Received by *(Printed Name)*    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Excel DBA DHL<br>360 Westar Blvd.<br>Westerville, OH 43082 | D. Is delivery address different from item 1?   □ Yes<br>    If YES, enter delivery address below:   □ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 4879 9032 6408 62 | 3. Service Type<br>□ Adult Signature<br>□ Adult Signature Restricted Delivery<br>□ Certified Mail®<br>□ Certified Mail Restricted Delivery<br>□ Collect on Delivery<br>□ Collect on Delivery Restricted Delivery<br>□ Insured Mail<br>□ Insured Mail Restricted Delivery<br>   (over $500) | Mail™<br>...d Mail Restricted<br>...ery<br>□ Return Receipt for Merchandise<br>□ Signature Confirmation™<br>□ Signature Confirmation Restricted Delivery |
| 2. Article Number<br>7019 0160 0000 9911 4761 | |
| PS Form 3811, July 2015 PSN 7530-02-000-9053 | Domestic Return Receipt |

APP000097

# USPS Tracking®

FAQs >

## Track Another Package  +

**Tracking Number:** 70190160000099114761     Remove ✕

Your item was delivered to an individual at the address at 11:36 am on July 22, 2022 in WESTERVILLE, OH 43082.

**USPS Tracking Plus® Available**  ⌄

## ✅ Delivered, Left with Individual

July 22, 2022 at 11:36 am
WESTERVILLE, OH 43082

**Get Updates**  ⌄

Feedback

| | |
|---|---|
| **Text & Email Updates** | ⌄ |
| **Tracking History** | ⌄ |
| **USPS Tracking Plus®** | ⌄ |
| **Product Information** | ⌄ |

**See Less**  ⌃

## Can't find what you're looking for?

APP000098

8/16/2022, 10:44 AM

**TAB 15**

# WHITEHURST & WHITEHURST
### ATTORNEYS AT LAW

**5380 OLD BULLARD ROAD, SUITE 600, #363**                                    **(903) 593-5588**
**TYLER, TEXAS 75703**                                                       **(214) 853-9382 (FAX)**

Ms. Theanna Bezney                                           July 31, 2023
Attorney at Law
Fisher & Phillips LLP
500 North Akard, Suite 3550
Dallas, Texas 75201
*tbezney@fisherphillips.com*

      Re: Walters v. Excl, Inc. d/b/a DHL SUPPLY CHAIN: Cause No. 3:22-cv-01840-C

Dear Ms. Bezney:

      In response to Plaintiff's Fourth Set of Production of Documents it was stated as follows:

**REQUEST NO. 1:** A copy of the calendar, referred to in the deposition of Eartis Shaw, that was maintained and kept by Eartis Shaw for the operations supervisors for the year 2022 at the location where Plaintiff was employed by the Defendant.

**RESPONSE:** As stated by Mr. Shaw during his deposition, no such calendar(s) remain in Defendant's possession, custody, or control.

      I am attaching page 49 from the deposition of Mr. Shaw, which states as follows:

Q. Okay. But all those calendars have been
9 thrown away?
10 A. Yes, sir. They would have been disposed of
11 when we moved from the building.
12 Q. So is there any record of any of those
13 calendars anywhere?
14 A. Last year's.
15 Q. I'm sorry?
16 A. Would have had my calendar that I had from
17 last year. That's it.
18 Q. That's 2022.
19 A. Yes, sir**.**

      According to Mr. Shaw the calendar does exist.

I am also attaching a document that show the lawsuit was served on August 23, 2022 on the registered agent of Excel, Inc. d/b/a Dhl Suppl Chain.

Also attached is defendant's Motion to Dismiss that was filed on September 27, 2022.

**REQUEST NO. 3:** A copy of all emails from Jason Walters to other employees of DHL Supply Chain, similar to the document bate stamped EXEL_00215.

**RESPONSE:** Defendant objects to this Request on the grounds its references to "other employees" and "emails… similar to the document bate stamped EXEL_00215 is vague and ambiguous. Defendant further objects to this Request on the grounds it is overly broad and unduly burdensome in that responding thereto would require Defendant to review every document sent to every employee of Defendant prior to, during, and after Plaintiff's term of employment with Defendant to identify every email "from Jason Walters" and determine whether any such email is "similar" to a particular document.

In response to Plaintiff's Fifth  Set of Production of Documents it was stated as follows:

**REQUEST NO. 1:** A copy of the end of shift reports submitted by Plaintiff during his employment with the defendant other than those previously produced being bate stamped 00199 to 00245.

**RESPONSE:** Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, and not limited in relevant temporal scope. Specifically, Plaintiff's claims in this lawsuit do not extend beyond the three-year period beginning August 19, 2019 (at most), therefore the requested emails dating back to Plaintiff's June 2011 hire date are irrelevant. Moreover, this Request would require Defendant to search for and identify any handover emails sent by Plaintiff to any other employee of Defendant over a more than 12-year period, which is unduly burdensome and not proportional to the needs of this case. Additionally, as evidenced by the documents produced as EXEL_00199 through 00245, a majority of the recipients of the "handover" emails were directed to non-DHL email addresses, therefore no additional responsive documents have been identified in Defendant's possession, custody, or control.

I  am attaching page 117, 118 from the deposition of Mr. Dobbins, which states as follows:

Q. Mr. Dobbins, do the reports that I'm looking
18 at -- this is marked Exhibit D. It's also
19 Bates-stamped 201. Do those documents still exist, as
20 far as when you report through, from 2020, 2021, and
21 2022? Do those documents still exist for those years?
22 MS. BEZNEY: Object to form.
23 A. Which document? I'm not seeing the exhibit.
24 Q. (BY MR. WHITEHURST) Okay. It's Exhibit D.
25 I'm not sure she can show you. I think she can

THE COURT REPORTER: Give me one
2 second.
3 A. Okay. The -- the post-shifts.
4 Q. (BY MR. WHITEHURST) Yes, yes, sir.
5 A. Yes.
6 Q. Do they --
7 A. So there are -- yes, there are -- variations
8 of this report still exist. They -- I have not
9 received them since early 2022 because I got off of
10 all that communication, but I do know that shift
11 pass-downs still exists.

**REQUEST NO. 3:** A copy of the computer records of Mickey Moza regarding Plaintiff, as referred
to in the deposition of Mickey Moza on June 27, 2023, that were returned to Defendant at the end of
the employment of Mickey Moza.

**RESPONSE:** Defendant objects to this Request on the grounds it is vague, ambiguous, overly broad,
and irrelevant.

To the extent this Request seeks the production of documents evidencing any notes taken by Mr.
Moza regarding his investigation of Ms. Hooper's complaint about Plaintiff on or about March 10,
2022, Defendant states no additional responsive documents have been identified.

To the extent this Request seeks the production of documents evidencing any text messages between
Mr. Moza and Plaintiff regarding (i) Mr. Moza's investigation of Ms. Hooper's complaint about
Plaintiff on or about March 10, 2022 or (ii) Plaintiff's termination from employment with Defendant,
Defendant states no responsive documents have been identified

I am attaching pages 70 and 71 from the deposition of Mr. Moza

Q. And during that time, did you receive any
10 written documentation, either in person or online,
11 from DHL?
12 A. Yes, probably both. Probably in person and
13 online, yes.
14 Q. Okay. And do you still have those
15 documents?
16 A. I don't think so, no.
17 Q. So did you delete them?
18 A. I don't believe I deleted them. I believe
19 that if I saved them on my computer or if they are in
20 the emails somewhere on the computer that I used, that
21 I don't believe I deleted them. And I'm quite certain

**APP000101**

22 that I gave all -- my computer back -- I know I gave
23 my computer back to DHL.
24 So, no, I don't believe I deleted them.
25 And I don't know what they've done with that computer
since I've left -- what DHL has done since I left,
2 with that computer. But I don't believe I deleted any
3 of those documents that I would have received.
4 Q. Okay. So you had a computer that DHL issued
5 you.
6 A. Correct.
7 Q. And that computer, when you left in
8 September of 2022, went back to DHL.
9 A. Yes, that's correct. I gave it back to
10 them, yes

The purpose of this letter is to make sure that there are  no documents that the Defendant has in its possession and/or control despite the fact (1) Mr. Shaw stated  that the 2022 calendar still existed  (2) Mr. Dobbins stated the shift pass downs (what was requested in both 4th and 5th request for production of documents as reflected above), still existed, and (3) the computer records that Mickey Moza returned at the end of his employment to the defendant, were there when he left.

If there are any questions or problems, do not hesitate to contact my office.

Sincerely,

*Bob Whitehurst*

Bob Whitehurst

Annie Lau
Texas Bar No. 24057723
Theanna Bezney
Texas Bar No. 24089243
Fisher & Phillips LLP
500 N. Akard Street, Suite 3550
Dallas, TX 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
*alau@fisherphillips.com*
*tbezney@fisherphillips.com*

EARTIS SHAW - 4/13/2023

49

1      A.    Yes.  We would have had a calendar for every

2  year.

3      Q.    For every year.

4      A.    Yes, sir.

5      Q.    Okay.  But -- that was on the wall in your

6  office?

7      A.    Yes, sir.

8      Q.    Okay.  But all those calendars have been

9  thrown away?

10      A.    Yes, sir.  They would have been disposed of

11  when we moved from the building.

12      Q.    So is there any record of any of those

13  calendars anywhere?

14      A.    Last year's.

15      Q.    I'm sorry?

16      A.    Would have had my calendar that I had from

17  last year.  That's it.

18      Q.    That's 2022.

19      A.    Yes, sir.

20      Q.    Okay.  Okay.

21              Who is Roger Heaster?  He's not on

22  there, sir; it's another document.

23      A.    Who is what?

24      Q.    Well, let me see -- let's see if we can just

25  go ahead and mark this.

APP000103

# UNITED STATES DISTRICT COURT
### for the
### NORTHERN DISTRICT OF TEXAS - DALLAS DIVISION

| | | |
|---|---|---|
| JASON WALTERS, | § | |
| | § | |
| | § | |
| Plaintiff(s), | § | |
| vs. | § | Civil Action No. **3:22-cv-1840-C** |
| | § | |
| EXEL, INC. D/B/A DBA DHL SUPPLY | § | |
| CHAIN, | § | |
| Defendant(s). | § | |

## RETURN OF SERVICE

Came to my hand on **Tuesday, August 23, 2022 at 12:39 PM,**
Executed at: **1999 BRYAN STREET, SUITE 900, DALLAS, TX 75201**
at **2:05 PM**, on **Tuesday, August 23, 2022,**
by delivering to the within named:

### EXEL, INC. D/B/A DHL SUPPLY CHAIN

by delivering to its **Registered Agent, CT CORPORATION**
by personally delivering to its **Authorized Employee, TERRI THONGSAVAT**
a true copy of this

### SUMMONS IN A CIVIL ACTION and PLAINTIFF'S ORIGINAL COMPLAINT

having first endorsed thereon the date of the delivery.

BEFORE ME, the undersigned authority, on this day personally appeared Ryan McColm who after being duly sworn on oath states: "My name is Ryan McColm. I am a person not less than eighteen (18) years of age and I am competent to make this oath. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained herein and aver that each is true and correct. I am not a party to nor related or affiliated with any party to this suit. I have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I am familiar with the Texas Rules of Civil Procedure, and the Texas Civil Practice and Remedies Codes as they apply to service of process. I am certified by the Judicial Branch Certification Commission to deliver citations and other notices from any District, County and Justice Courts in and for the State of Texas in compliance with rule 103 and 501.2 of the TRCP.

By: _____
   **Ryan McColm - PSC 6317 - Exp 01/31/23**
   served@specialdelivery.com

**Subscribed and Sworn to by Ryan McColm, Before Me, the undersigned authority, on this**
**24th** day of August, 2022.

BRITTNEY LEIGH WOODALL
Notary Public
STATE OF TEXAS
ID#12979020-7
My Comm. Exp. Sept. 9, 2023

_____
Notary Public in and for the State of Texas

**APP000104**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JASON WALTERS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 3:22-cv-01840-C** |
| | § | |
| **EXEL, INC. d/b/a DHL SUPPLY CHAIN,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT'S MOTION TO DIMISS AND
ALTERNATIVE MOTION FOR MORE DEFINITIVE STATEMENT**

Defendant Exel Inc. d/b/a DHL Supply Chain (incorrectly identified in the case caption as "Exel, Inc. d/b/a DHL Supply Chain") ("**Defendant**") hereby moves to Dismiss the Complaint [Doc. #1] ("**Complaint**") filed by Plaintiff Jason Walters ("**Plaintiff**") pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state facts sufficient to constitute a cause of action under either the Fair Labor Standards Act, the Consolidated Omnibus Budget Reconciliation Act, or any other recognized law. Alternatively, should the Court decline to grant Defendant's Motion to Dismiss, Defendant alternatively moves for a more definite statement pursuant to Rule 12(e). Defendant cannot determine what causes of action Plaintiff is attempting to assert against Defendant in his current Complaint and, therefore, cannot reasonably be required to prepare a response or defenses thereto. This Motion is supported by and accompanying Brief and Memorandum of Law in accordance with the applicable Rules of Civil Procedure and Local Rules of this Court.

Submitted this 27th day of September 2022.

Respectfully Submitted,

 /s/ Arthur V. Lambert
Arthur V. Lambert
Texas Bar No. 11841250
*alambert@fisherphillips.com*
Theanna Bezney
Texas Bar No. 24089243
*tbezney@fisherphillips.com*
FISHER & PHILLIPS LLP
500 North Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122

**COUNSEL FOR DEFENDANT
EXEL INC. D/B/A DHL SUPPLY CHAIN**

## CERTIFICATE OF SERVICE

On September 27, 2022, I filed the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served, by a manner authorized by Federal Rules of Civil Procedure 5 (b)(2), the foregoing document on all counsel of record, as follows:

Bob Whitehurst
5380 Old Bullard Road, Suite 600, #363
Tyler, TX 75703

 /s/ Arthur V. Lambert
Arthur V. Lambert

JOHN DOBBINS - 6/27/2023

117

1      A.   Yeah, every week through the end of the

2  year, we ran extra shifts.  But our supervisors really

3  only worked one extra day per month.

4      Q.   All right.

5      A.   Yep.

6      Q.   And the rest of the weeks, they were working

7  36 hours a week?

8      A.   Correct.

9             MS. BEZNEY:  I pass the witness.

10           MR. WHITEHURST:  Did you pass?  I

11  didn't hear you.

12           MS. BEZNEY:  I did, yes.

13           MR. WHITEHURST:  Oh, okay.  Sorry,

14  sorry.

15               FURTHER EXAMINATION

16  BY MR. WHITEHURST:

17      Q.   Mr. Dobbins, do the reports that I'm looking

18  at -- this is marked Exhibit D.  It's also

19  Bates-stamped 201.  Do those documents still exist, as

20  far as when you report through, from 2020, 2021, and

21  2022?  Do those documents still exist for those years?

22           MS. BEZNEY:  Object to form.

23      A.   Which document?  I'm not seeing the exhibit.

24      Q.   (BY MR. WHITEHURST)  Okay.  It's Exhibit D.

25  I'm not sure she can show you.  I think she can.

APP000107

JOHN DOBBINS - 6/27/2023

118

1            THE COURT REPORTER:   Give me one
2    second.
3        A.   Okay.   The -- the post-shifts.
4        Q.   (BY MR. WHITEHURST)   Yes, yes, sir.
5        A.   Yes.
6        Q.   Do they --
7        A.   So there are -- yes, there are -- variations
8    of this report still exist.   They -- I have not
9    received them since early 2022 because I got off of
10   all that communication, but I do know that shift
11   pass-downs still exists.
12       Q.   So Mr. Walters, who -- or whoever, they
13   would still be required to send this out at the end of
14   their shift.
15       A.   Yes.   One of the two supervisors that's on
16   the shift would be responsible for sending this out.
17       Q.   Okay.
18       A.   This was a split responsibility between the
19   two supervisors that were on shift.
20       Q.   Okay.
21            And what do you call this document,
22   sir?
23       A.   This would have been a shift handover.
24       Q.   Shift handover.
25       A.   Yes.

MICKEY MOZA - 6/27/2023

70

1      Q.    Did you receive an email?  Did you receive a
2  book?  How did you receive your training?
3      A.    Oh.  Various forms.  So there was in-person
4  training.  There was training that was done, I guess,
5  like this, right, online, similar -- similar fashion.
6  Probably those two are probably the most common ones,
7  I would say, in person or like this, in, you know --
8  yeah.
9      Q.    And during that time, did you receive any
10  written documentation, either in person or online,
11  from DHL?
12      A.    Yes, probably both.  Probably in person and
13  online, yes.
14      Q.    Okay.  And do you still have those
15  documents?
16      A.    I don't think so, no.
17      Q.    So did you delete them?
18      A.    I don't believe I deleted them.  I believe
19  that if I saved them on my computer or if they are in
20  the emails somewhere on the computer that I used, that
21  I don't believe I deleted them.  And I'm quite certain
22  that I gave all -- my computer back -- I know I gave
23  my computer back to DHL.
24            So, no, I don't believe I deleted them.
25  And I don't know what they've done with that computer

APP000109

MICKEY MOZA - 6/27/2023

71

1    since I've left -- what DHL has done since I left,

2    with that computer.  But I don't believe I deleted any

3    of those documents that I would have received.

4         Q.    Okay.  So you had a computer that DHL issued

5    you.

6         A.    Correct.

7         Q.    And that computer, when you left in

8    September of 2022, went back to DHL.

9         A.    Yes, that's correct.  I gave it back to

10   them, yes.

11        Q.    Okay.  Notebook?  Laptop?  What was it?

12        A.    Laptop.

13        Q.    Okay.  Do you remember if it was a Dell?

14   Apple?  What?

15        A.    Oh, man.  I don't recall, honestly, which

16   brand -- which brand it was.  I -- I don't believe it

17   was Apple, but I don't recall exactly which brand it

18   was.

19        Q.    Okay.

20              Who made the management -- who made the

21   final decision to terminate Mr. Walters?

22        A.    So I don't know if there was a final

23   decision and one person solely.  I can tell you, you

24   know, who I spoke to during that -- that termination

25   process, about -- about whether or not, you know, and

**TAB 16**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**JASON WALTERS**
    **PLAINTIFF**

**vs.**
                           **CIVIL ACTION 3:22-cv-01840-C**
                           **JURY REQUESTED**

**EXEL, INC. D/B/A**
**DHL SUPPLY CHAIN**
    **DEFENDANT**

.

**DECLARATION  OF JASON WALTERS IN OPPOSITION TO DFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, Jason Walters  hereby declare as follows:

1. My name is Jason Walters, I am a resident of the State of Texas.   I am over the the age of 18, and have never been convicted of a felony or crime of moral turpitude.  The following matters are within my personal knowledge, true and correct.

2.  I am a former employee of Exel, Inc. d/b/a DHL Supply Chain.

3.  I started working for the Defendant on or about June 9, 2011.

4.  I was terminated from the Defendant on or about March 16, 2022.

5.  I worked on the floor in the warehouse with the forklifts and the tires.

6.   Eartis  Shaw, my manager,  instructed me to arrive at work at 5:00 a.m. for my shift.

7.  I would often work more than 12 hours a day.

8.  Eartis Shaw, my manager, made the decision as to whether extra shifts were needed or not.

9.  All the work that I performed while working for the Defendant was a the instruction of Eartis Shaw or some other manager.

10.  I worked a four day schedule, Wednesday through Saturday, and I was  sometimes assigned to  work on Sunday.

11.   After working the schedule I then had to prepare data entry and productivity reports.

12.  I was assigned that schedule by Eartis Shaw.

13.  My job entailed a great deal of repetition work, that is reminders to other employees, such as clean as you go, drink plenty of water, do not push racks on or over the yellow lines,   don't leave anything sitting on top of the battery chargers, all tires labeled properly,  The majority of my time was spent doing the same thing over and over to make sure the other employees were being safe. Those tasks were assigned to me by Eartis Shaw and upper management with the defendant. There was little to no independent judgment on my part.  My job to a great deal was making sure the tires got out, as reflected in the end of shift reports

14. I walked and drove around the outside of the building, picking up debris, boxes and trash.

15.  When Fedex would deliver certain items, I would load the delivery truck off the dock staging area.   I did this because I was a certified forklift operator and that was part of my job.

16.  The environment in which I worked was very loud with the forklifts firing up, and the reverse alarms going off, making it very difficult to hear at times.

17.   In my job as operation supervisor, I was not allowed to hire or fire personnel, and anything that had to do with discipline had to go through the operations manager, Eartis Shaw.

18.  The shared desk that was used on the operations supervisors was on the warehouse floor, which was shared by the operations supervisors, in an open area.

19. Eartis Shaw, the operations manager, had the power to fire and hire employees.

20.. I did not use independent judgment, but did what the operations manager, Eartis Shaw, and others told me to do.

21.  I was not involved in planning long or short term business ideas, that was the job of upper management.

22.   My understanding was there was no excuses and/or a grace period for being late to work. This was supported by an email text from Adam Elliott the plant manager to Jose Gonzalez, Eartis Shaw, and Jason Smith dated March 4, 2022, that stated in part "There is no grace period that I am aware of Mickey is also not aware of a grace period.   Each associate is expected to clock in and be at their assigned work area by the scheduled start time."   I was not included in the email/text as a Forney supervisor.

23.  I have seen the video that was produced by the Defendant in this case, and is labeled APP 212 by the Defendant.

24.  The reason I touched Ms. Hooper's coat was that I told her she was  not wearing high visibility colors, and the jacket that she had on did not meet the proper requirements.   High visibility  colors are yellow, orange, and green.  That was required by the company.   Ms. Hooper had on a company jacket which was not approved.  This  also visible in the video with a gentlemen with a orange shirt on and a guy with a green shirt on.   There is also a gentlemen walking in the background with a green shirt on.  .   I was doing what I was instructed to do by my managers.

25.   My job entailed in great part making sure employees had on the proper safety clothing and gear.

26.  On March 11, 2022 at 11:25 a.m.   I forwarded an email/text to Eartis Shaw that stated in part "Last week, I asked if there was a grace period for coming in to pre-shift late, I was told there was no such grace period."   I was not aware that Ms. Hooper and made an agreement with John Dobbinis and Eartis Shaw that she could come in late work.  John Dobbins nor Eartis Shaw

ever informed me of that fact.

27.   Eartis Shaw would often call me Paw Paw in reference to my age and gray hair.

28. Eartis Shaw would call me Paw Paw daily.   Mr. Shaw would also call me old man.

29.   This is supported by the declaration of Mr. Bennielee Shelby.

30.   I was not told on March 16, 2022, why I was being terminated by Eartis Shaw.

31. .  Document bated stamped EXEL -00246 shows my termination date as March 16, 2022.

32.   Document bated stamped EXEL-00246 shows that John Ifegwu Oloh replaced me on March 16, 2022, which is also reflected in bated stamped EXEL-00246

33.   John Ifegwu Oloh has an  adjusted service date of March 16, 2022, being the same day as my termination.

34.   The date of birth of John Ifegwu is October 10, 1998.

35.   My date of birth is December 22, 1972.

36.   Mickey Moza never talked to me about my termination.

37.   After I was terminated, I applied for and received unemployment compensation.

38.   I had insurance for myself and my son Gunner Walters, while I was employed by the Defendant.

39.   Our son, Gunner Walters, is a special needs person that needs a lot of care, which caused a great deal of concern when the insurance was discontinued by the Defendant.

40.    After I was terminated I and my son were no longer insured.

41. As a result of that I had uninsured medical expenses.

42. After I was terminated by the Defendant I needed a letter from the company about when my benefits ended so that my son and I could be put on my wife's insurance.   I did not get that letter.

43.  On March 21, 2022, I sent Mickey Moza a email/text regarding my health and dental

insurance that was needed for my special needs child.   (See Exhibit "A" attached hereto)

45.  On March 28, 2022, I sent Mikey Moza another email that about when my benefits would end so that my son would not have a stroke and die.   (See Exhibit "B" attached hereto)/

46.  I did not see document dated March 16, 2022, as to the reason I was being terminated; therefore, had no reason to know why I was being terminated. (See Exhibit "C" attached hereto)

47. After I was terminated, I corresponded with Tammy Williams, who is/was a manager at the facility.   One of the email/text from Ms. Williams staated in part "I will definitely send Mickey an email today when I get to Kentucky..   She is one of the biggest racists I have ever worked with."   (See Exhibit "D" attached hereto.

48.  I worked about 20 hours a week that I was not paid for at Excel, Inc.

Jason Walters

9:27             20%

‹    **Mickey HR-DHL**
       8172694794        📞   🔍   ⋮

Monday, March 21, 2022

**EXHIBIT "A"**

> Mickey I'm trying to figure out when my health and dental insurance expire on my family...I called the benefits number, they referred my back to HR. I need this information for the state...due to my special needs child.

11:32 AM

Tuesday, March 22, 2022

> Is there another person I need to contact about this?

11:44 AM

**M**   The site management team must process the separation first, which they told me they just did yesterday. Then it typically takes 1-2 weeks for the benefits team to receive the separation notification, so you can follow up with them then.

12:33 PM

> Of course the site sent me phone numbers that all

     |    

|||      ◯      ‹

**TAB 18**



### ‹ Mickey HR-DHL
8172694794

📞 🔍 ⋮

so you can follow up with
them then.

12:33 PM

EXHIBIT "B"

Of course the site sent me
phone numbers that all
referred me back to HR.

12:40 PM

Monday, March 28, 2022

I really am taken by
suprisectgst my direct
questions could not be
answered when I clearly
asked when my benefits
would end being that i have a
special needs child that has
24/7 nursing and medicine
needed so that he does not
have a stroke and die...I am
more than aggravated at this
point with how t

💬 View all ›

2:39 PM

You told me the 21st...now
the info sent to my pharmacy
says the benefits termed on
the 16th...

2:58 PM



EXHIBIT "C"

DHL Supply Chain

## Corrective Action Form
## Exempt Level Associates

**TAB 19**

| | |
|---|---|
| **Associate Name:** | **Jason Walters** |
| **Associate Number:** | **015448** |
| **Manager Name:** | **Eartis Shaw** |
| **Date:** | **3/16/2022** |
| **Re:** | **Corrective Action - Exempt** |

This document serves as official notification that your performance regarding Class 2 work rule #2 Gross Misconduct "threatening associate" has been deemed unacceptable and therefore we are terminating your employment effective immediately.

**Eartis Shaw** met with you on 3/16/2022to discuss the following:

1. Termination for violating work rule #2 class 2 rules Gross Misconduct

2. Grabbing associates clothing and pulling closer to body

3. Telling the associate to calm down before being put in choke hold

4. Associate was termed by phone 3/16/2022@ 9:25am by Eartis Shaw (OM) and witnessed by Adam Elliott (GM)

The expectation(s) going forward is for you to:
1. Return any company property in accordance with this termination.

*I have received and read this Corrective Action – Exempt Level form. I understand the original document will become a part of my personnel file. My signature does not necessarily mean I agree.*

| | |
|---|---|
| Associate's Signature | Date |
| Manager's Signature | 3-16-2022 |
| | Date |

Distribution: Original - Personnel File
                    Copy - Associate

**APP000118**

**TAB 20**

< **Tammy Williams**
+16822297230

📞  🔍  ⋮

EXHIBIT "D"

I will definitely send Mickey an email <u>today</u> when I get to Kentucky.  I am so sorry your going through this.  She is one of the biggest racists I have ever worked with.

10:47 AM

11:06 AM   Yes she is

Thank you so much...that was end of day Thursday.

11:11 AM

APP000119

**TAB 21**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JASON WALTERS
    PLAINTIFF

vs.                                             CIVIL ACTION 3:22-cv-01840-C
                                                JURY REQUESTED

EXEL, INC. D/B/A
DHL SUPPLY CHAIN
    DEFENDANT

.

**DECLARATION  OF JASON WALTERS IN OPPOSITION TO DFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, Jason Walters  hereby declare as follows:

1. My name is Jason Walters, I am a resident of the State of Texas.   I am over the the age of 18,

and have never been convicted of a felony or crime of moral turpitude.  The following matters

are within my personal knowledge, true and correct.

2.  I am a former employee of Exel, Inc. d/b/a DHL Supply Chain.

3.  I started working for the Defendant on or about June 9, 2011.

4.  I was terminated from the Defendant on or about March 16, 2022.

5.  I worked on the floor in the warehouse with the forklifts and the tires.

6.   Eartis  Shaw, my manager,  instructed me to arrive at work at 5:00 a.m. for my shift.

7.  I would often work more than 12 hours a day.

8.  Eartis Shaw, my manager, made the decision as to whether extra shifts were needed or not.

9.  All the work that I performed while working for the Defendant was a the instruction of Eartis

Shaw or some other manager.

10.  I worked a four day schedule, Wednesday through Saturday, and I was  sometimes assigned to  work on Sunday.

11.   After working the schedule I then had to prepare data entry and productivity reports.

12.  I was assigned that schedule by Eartis Shaw.

13.   My job entailed a great deal of repetition work, that is reminders to other employees, such as clean as you go, drink plenty of water, do not push racks on or over the yellow lines,   don't leave anything sitting on top of the battery chargers, all tires labeled properly,  The majority of my time was spent doing the same thing over and over to make sure the other employees were being safe. Those tasks were assigned to me by Eartis Shaw and upper management with the defendant. There was little to no independent judgment on my part.  My job to a great deal was making sure the tires got out, as reflected in the end of shift reports

14. I walked and drove around the outside of the building, picking up debris, boxes and trash.

15.  When Fedex would deliver certain items, I would load the delivery truck off the dock staging area.   I did this because I was a certified forklift operator and that was part of my job.

16.  The environment in which I worked was very loud with the forklifts firing up, and the reverse alarms going off, making it very difficult to hear at times.

17.   In my job as operation supervisor, I was not allowed to hire or fire personnel, and anything that had to do with discipline had to go through the operations manager, Eartis Shaw.

18.  The shared desk that was used on the operations supervisors was on the warehouse floor, which was shared by the operations supervisors, in an open area.

19. Eartis Shaw, the operations manager, had the power to fire and hire employees.

20.. I did not use independent judgment, but did what the operations manager, Eartis Shaw, and others told me to do.

21.  I was not involved in planning long or short term business ideas, that was the job of upper management.

22.  My understanding was there was no excuses and/or a grace period for being late to work. This was supported by an email text from Adam Elliott the plant manager to Jose Gonzalez, Eartis Shaw, and Jason Smith dated March 4, 2022, that stated in part "There is no grace period that I am aware of Mickey is also not aware of a grace period.   Each associate is expected to clock in and be at their assigned work area by the scheduled start time."   I was not included in the email/text as a Forney supervisor.

23.  I have seen the video that was produced by the Defendant in this case, and is labeled APP 212 by the Defendant.

24.  The reason I touched Ms. Hooper's coat was that I told her she was  not wearing high visibility colors, and the jacket that she had on did not meet the proper requirements.   High visibility  colors are yellow, orange, and green.  That was required by the company.   Ms. Hooper had on a company jacket which was not approved.  This  also visible in the video with a gentlemen with a orange shirt on and a guy with a green shirt on.   There is also a gentlemen walking in the background with a green shirt on.  .   I was doing what I was instructed to do by my managers.

25.  My job entailed in great part making sure employees had on the proper safety clothing and gear.

26.  On March 11, 2022 at 11:25 a.m.  I forwarded an email/text to Eartis Shaw that stated in part "Last week, I asked if there was a grace period for coming in to pre-shift late, I was told there was no such grace period."  I was not aware that Ms. Hooper and made an agreement with John Dobbinis and Eartis Shaw that she could come in late work.  John Dobbins nor Eartis Shaw

ever informed me of that fact.

27.   Eartis Shaw would often call me Paw Paw in reference to my age and gray hair.

28. Eartis Shaw would call me Paw Paw daily.   Mr. Shaw would also call me old man.

29.   This is supported by the declaration of Mr. Bennielee Shelby.

30.   I was not told on March 16, 2022, why I was being terminated by Eartis Shaw.

31. .   Document bated stamped EXEL -00246 shows my termination date as March 16, 2022.

32.   Document bated stamped EXEL-00246 shows that John Ifegwu Oloh replaced me on March 16, 2022, which is also reflected in bated stamped EXEL-00246

33.   John Ifegwu Oloh has an  adjusted service date of March 16, 2022, being the same day as my termination.

34.   The date of birth of John Ifegwu is October 10, 1998.

35.   My date of birth is December 22, 1972.

36.   Mickey Moza never talked to me about my termination.

37.   After I was terminated, I applied for and received unemployment compensation.

38.   I had insurance for myself and my son Gunner Walters, while I was employed by the Defendant.

39.   Our son, Gunner Walters, is a special needs person that needs a lot of care, which caused a great deal of concern when the insurance was discontinued by the Defendant.

40.    After I was terminated I and my son were no longer insured.

41. As a result of that I had uninsured medical expenses.

42. After I was terminated by the Defendant I needed a letter from the company about when my benefits ended so that my son and I could be put on my wife's insurance.   I did not get that letter.

43.   On March 21, 2022, I sent Mickey Moza a email/text regarding my health and dental

insurance that was needed for my special needs child.   (See Exhibit "A" attached hereto)

45.   On March 28, 2022, I sent Mikey Moza another email that about when my benefits would end so that my son would not have a stroke and die.   (See Exhibit "B" attached hereto)/

46.   I did not see document dated March 16, 2022, as to the reason I was being terminated; therefore, had no reason to know why I was being terminated. (See Exhibit "C" attached hereto)

47. After I was terminated, I corresponded with Tammy Williams, who is/was a manager at the facility.   One of the email/text from Ms. Williams staated in part "I will definitely send Mickey an email today when I get to Kentucky..   She is one of the biggest racists I have ever worked with."   (See Exhibit "D" attached hereto.

48.  I worked about 20 hours a week that I was not paid for at Excel, Inc.

Jason Walters

9:27

## Mickey HR-DHL
8172694794

**EXHIBIT "A"**

Monday, March 21, 2022

> Mickey I'm trying to figure out when my health and dental insurance expire on my family...I called the benefits number, they referred my back to HR. I need this information for the state...due to my special needs child.

11:32 AM

Tuesday, March 22, 2022

> Is there another person I need to contact about this?

11:44 AM

The site management team must process the separation first, which they told me they just did yesterday. Then it typically takes 1-2 weeks for the benefits team to receive the separation notification, so you can follow up with them then.

12:33 PM

> Of course the site sent me phone numbers that all

9:28 📷 N 🔋 📶 20%

< **Mickey HR-DHL**
8172694794  📞  🔍  ⋮

so you can follow up with
them then.

12:33 PM

**EXHIBIT "B"**

Of course the site sent me
phone numbers that all
referred me back to HR.

12:40 PM

Monday, March 28, 2022

I really am taken by
suprisectgst my direct
questions could not be
answered when I clearly
asked when my benefits
would end being that i have a
special needs child that has
24/7 nursing and medicine
needed so that he does not
have a stroke and die...I am
more than aggravated at this
point with how t

💬 View all  >

2:39 PM

You told me the 21st...now
the info sent to my pharmacy
says the benefits termed on
the 16th...

2:58 PM



🖼 📷 ＋  😊 ᮧᥚᥫ

||| ◯ ‹

**APP000126**

**EXHIBIT "C"**

DHL Supply Chain

## Corrective Action Form
## Exempt Level Associates

| | |
|---|---|
| **Associate Name:** | **Jason Walters** |
| **Associate Number:** | **015448** |
| **Manager Name:** | **Eartis Shaw** |
| **Date:** | **3/16/2022** |
| **Re:** | **Corrective Action - Exempt** |

This document serves as official notification that your performance regarding Class 2 work rule #2 Gross Misconduct "threatening associate" has been deemed unacceptable and therefore we are terminating your employment effective immediately.

**Eartis Shaw** met with you on 3/16/2022to discuss the following:

1. Termination for violating work rule #2 class 2 rules Gross Misconduct

2. Grabbing associates clothing and pulling closer to body

3. Telling the associate to calm down before being put in choke hold

4. Associate was termed by phone 3/16/2022@ 9:25am by Eartis Shaw (OM) and witnessed by Adam Elliott (GM)

The expectation(s) going forward is for you to:
1. Return any company property in accordance with this termination.

*I have received and read this Corrective Action – Exempt Level form.  I understand the original document will become a part of my personnel file.  My signature does not necessarily mean I agree.*

_____          _____
Associate's Signature                              Date

_____          3-16-2022
Manager's Signature                               Date

Distribution:  Original - Personnel File
                    Copy - Associate

**CONFIDENTIAL**



< **Tammy Williams**
+16822297230

EXHIBIT "D"

I will definitely send Mickey an email <u>today</u> when I get to Kentucky.  I am so sorry your going through this.  She is one of the biggest racists I have ever worked with.

10:47 AM

11:06 AM   Yes she is

Thank you so much...that was end of day Thursday.

11:11 AM

APP000128

# TAB 22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**JASON WALTERS**
**PLAINTIFF**

**vs.**                                          **CIVIL ACTION 3:22-cv-01840-C**
                                               **JURY REQUESTED**

**EXEL, INC. D/B/A**
**DHL SUPPLY CHAIN**
        **DEFENDANT**

.

### DECLARATION OF BENNIELEE SHELBY

Pursuant to 28 U.S.C. § 1746, I, Bennielee Shelby, hereby declare as follows:

1. I am more than eighteen (18) years of age and I am competent to make this declaration. I have

personal knowledge of the facts stated herein, and would testify to such facts under oath if asked to

do so.

2. I am a former employee of Exel, Inc. d/b/a DHL Supply Chain.

3. During my employment with Exel, Inc. d/b/a DHL Supply Chain, I worked with Eartis Shaw

and Jason Walters.

4. I heard Eartis Shaw call Jason Walters "old man" and "papa bear" at work.

5. As an operation supervisor I did not have the power to hire or fire and employee.

6. I was employed in the same position as Jason Walters.

7. I often worked more thsn 40 hours per week during my employment with DHL Supply Chain.

8. I was not paid any overtime.

9. I worked approximately 10-15 hours a week that I was not paid for.

10. I worked on the warehouse floor with the material handlers and forklift operators.

**APP000129**

11.  I shared an area with others, but no office.  We had a shared desk.

12.  I was directed what to do by Eartis Shaw and John Dobbins,  and used no independent

judgment.

13. I was not involved in planning long or short term business decisions.

14.  Disciplinary issues had to go through the operations manager.

15  I worked 12 hours or more a day, depending on the workload.

16.  I was also assigned another shift on my days off.

17. I did not represent the company in the handling of complaints or in resolving grievances.

_____

Bennielee Shelby

*Bennielee Ojedha Shelby*

# TAB 23

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Dallas District Office**
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 01/18/2023

**To:** Jason Walters
    142 County Road 2437
    Mineola, TX 75773
Charge No: 450-2023-02417

EEOC Representative and email:    JUAN MUNOZ
    Intake Supervisor
    Juan.Munoz@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 450-2023-02417.

On behalf of the Commission,

Digitally Signed By: Travis Nicholson
01/18/2023

Travis Nicholson
District Director

**APP000131**

**Cc:**

Diane Whitehurst
Whitehurst & Whitehurst
5380 Old Bullard Road, Suite 600-363
Tyler, TX 75703


Please retain this notice for your records.

APP000132

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 450-2023-02417 to the District Director at Rayford O. Irvin, 207 S. Houston Street 3rd Floor

Dallas, TX 75202.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

**APP000133**

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

APP000134

CONFIDENTIAL_EXEL_00246

| Employee Number | Full Name | Age | Job Name | Location Code | Pay Basis | Orginal Hire Date | Latest Start Date | Adjusted Service Date | Supervisor Full Name | Termination Date | Shift |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 011589 | Wynn, Nancy | 63 | SUPERVISORS.Operations Supervisor | 3138 - Goodyear Terrell TX | ANNUAL | 01-Feb-1999 | 26-May-2020 | 01-Feb-1999 | Dobbins, John R | 22-Nov-2019 | First Shift |
| 044736 | Prochaska, Edward E | 65 | SUPERVISORS.Operations Supervisor | 3138 - Goodyear Terrell TX | ANNUAL | 27-Aug-2012 | 27-Aug-2012 | | Betancourt, Joshua | 29-May-2020 | Second Shift |
| 239466 | Oloh, John Ifegwu | 24 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 24-May-2021 | 08-Jun-2022 | 16-Mar-2022 | Shaw, Eartis | 30-Dec-2022 | Rotating Shift |
| 273547 | Pierce, Wesley | 45 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 25-Jan-2022 | 25-Jan-2022 | | Shaw, Eartis | | First Shift |
| 201789 | Bell, Jaamal Donta | 46 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 21-Oct-2019 | 21-Oct-2019 | | Smith, Jason A | 11-Aug-2021 | Second Shift |
| 011581 | Zamora, Joel | 53 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 01-Feb-1999 | 01-Feb-1999 | 01-Feb-1999 | Smith, Jason A | | Second Shift |
| 263045 | Darrow, Braden Jon David | 26 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 04-Oct-2021 | 04-Oct-2021 | | Smith, Jason A | | First Shift |
| 015693 | Miranda, Andres | 39 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 04-Mar-2004 | 04-Mar-2004 | 04-Mar-2004 | Shaw, Eartis | | First Shift |
| 103200 | Fuqua, Josiah | 29 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 03-Jun-2013 | 03-Jun-2013 | | Gonzalez, Jose Luis | | First Shift |
| 011554 | Frazier, Shelia | 62 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 15-Mar-1999 | 15-Mar-1999 | 15-Mar-1999 | Shaw, Eartis | | First Shift |
| 129573 | Shelby, Benneilee O | 34 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 14-Sep-2015 | 14-Sep-2015 | | Betancourt, Joshua | 03-Sep-2020 | Second Shift |
| 051542 | Brooks, DeMarcus | 34 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 06-Nov-2012 | 06-Nov-2012 | | Smith, Jason A | 17-Sep-2021 | Second Shift |
| 015448 | Walters, Jason R | 50 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 20-Jun-2011 | 20-Jun-2011 | | Shaw, Eartis | 16-Mar-2022 | Rotating Shift |
| 193550 | Brock, Diana J | 25 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 03-Jun-2019 | 15-Jul-2020 | 06-May-2020 | Gonzalez, Jose Luis | 07-Jul-2022 | First Shift |
| 269424 | Reynolds, Jon | 54 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 01-Dec-2021 | 01-Dec-2021 | | Smith, Jason A | | Second Shift |
| 051671 | Phillips, Charles Brandon | 42 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 26-Nov-2012 | 26-Nov-2012 | | Shaw, Eartis | | Weekend Nights |
| 264155 | Lopez, Enrique S | 50 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 18-Oct-2021 | 18-Oct-2021 | | Smith, Jason A | | Second Shift |
| 128548 | Beasley, Jennifer Michael | 41 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 17-Aug-2015 | 26-Jun-2018 | 26-Jun-2018 | Elliott, Adam | | First Shift |
| 261128 | Bradley, Antwon | 39 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 20-Sep-2021 | 20-Sep-2021 | | Smith, Jason A | 29-Dec-2021 | Second Shift |
| 155754 | Huhner, William | 64 | SUPERVISORS.Operations Supervisor | 3517 - Goodyear Forney TX | ANNUAL | 12-Jun-2017 | 12-Jun-2017 | | Shaw, Eartis | 25-Apr-2022 | First Shift |