# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **JASON WALTERS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:22-cv-01840-K** |
| | § | |
| **EXEL, INC. D/B/A DHL SUPPLY CHAIN,** | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

*/s/ Annie Lau*
Annie Lau
Texas Bar No. 24057723
FISHER & PHILLIPS LLP
500 N. Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
*alau@fisherphillips.com*

**COUNSEL FOR DEFENDANT**
**EXEL INC. d/b/a DHL SUPPLY CHAIN**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      SUMMARY ........................................................................................................ 1

II.     PLAINTIFF'S "OBJECTIONS" TO SUMMARY JUDGMENT EVIDENCE ................. 2

III.    LEGAL AUTHORITY AND ARGUMENT ........................................................ 2

        A.      Plaintiff Fails to Raise an Issue of Material Fact Regarding his FLSA Claim ....... 2

        B.      Plaintiff Fails to Raise an Issue of Material Fact Regarding his Age
                Discrimination Claim .................................................................................. 5

                1.      Plaintiff fails to establish the prima facie elements of his age
                        discrimination claim ................................................................... 5

                2.      Plaintiff cannot overcome Defendant's legitimate, non-discriminatory
                        reason for his termination ........................................................... 7

        C.      Plaintiff Fails to Raise an Issue of Material Fact Regarding his COBRA Claim ... 8

        D.      Plaintiff Does Not Dispute That He is Not Entitled to Compensatory or Punitive
                Damages ................................................................................................... 9

        E.      Plaintiff Makes Unsubstantiated Accusation that "Records Gone Missing" .......... 9

        F.      Plaintiff Improperly Objects to Witnesses ......................................................... 10

IV.     CONCLUSION .............................................................................................. 10

CERTIFICATE OF SERVICE ......................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amezquita v. Beneficial Texas,*
    264 F. App'x 379 (5th Cir. 2008) ............................................................................7

*Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v.*
    *Moulton Masonry & Const., LLC,*
    779 F.3d 182 (2nd Cir. 2015)................................................................................5

*Diduck v. Kaszyci & Sons Contractors, Inc.,*
    974 F.2d 270 (2nd Cir 1992)................................................................................5

*King v. Illinois Cent. R.R.,*
    337 F.3d 550 (5th Cir. 2003) ..............................................................................10

*United States v. Wise,*
    221 F.3d 140 (5th Cir. 2000) .............................................................................9, 10

**Statutes**

29 U.S.C. §1161, *et seq.*..............................................................................................8

Tex. Lab. Code § 213.007 .............................................................................................8

<u>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**</u>

Defendant Exel Inc. d/b/a DHL Supply Chain ("Defendant" or "Exel") files this Reply to Plaintiff Jason Walter's Brief in Opposition ("Plaintiff's Opposition")[1] (Dkt. 59) to Defendant's Motion for Summary Judgment ("MSJ") (Dkt. 56). In support thereof, Defendant would respectfully show the Court as follows:

## I.    SUMMARY

The facts in this matter are simple. Plaintiff put his hands on a subordinate and threatened her. Accordingly, he was terminated. Plaintiff's termination had no relation whatsoever to his age. Further, Plaintiff was properly classified as an exempt employee given his plethora of managerial responsibilities that he himself admits. Finally, COBRA notice was properly sent to Plaintiff.

In an effort to obscure these straightforward facts, Plaintiff attempts to cloud the record and create an issue of material fact by manufacturing inadmissible and unsupported conjectures. Plaintiff's Opposition consists of incorrect legal authority, a hodgepodge of deposition excerpts, and inadmissible evidence.[2] Although much of Plaintiff's Opposition is inapposite to the legal authorities and arguments set forth in the MSJ, this Reply seeks to address and parse through Plaintiff's inadmissible evidence, speculation, confusing and conclusory arguments.

Ultimately, Plaintiff has failed to present evidence of any discriminatory animus relating to his termination and fails to overcome Defendant's legitimate non-discriminatory reason for his termination. With regard to his FLSA claim, Plaintiff cites to and argues the incorrect exemption. Nevertheless, Plaintiff does not dispute the vast amount of managerial responsibilities that were set forth in Defendant's MSJ. Finally, Plaintiff fails to rebut Defendant's evidence that he was in

---

[1] Plaintiff's Opposition is 30 pages and contains no table of contents and no table of authorities. Accordingly, this is not in compliance with LOCAL RULE 7.2(d).

[2] Defendant will separately address the litany of inadmissible evidence Plaintiff relies on in its Motion to Strike.

fact sent the COBRA notice as required and does not even argue that he did not receive it.

Defendant has demonstrated there is no triable issue as to any material fact and would respectfully ask the Court to grant its motion for summary judgment in full.

## II.    PLAINTIFF'S "OBJECTIONS" TO SUMMARY JUDGMENT EVIDENCE

Before addressing the merits, Defendant notes that Plaintiff's Opposition contains several objections to Defendant's summary judgment evidence. *See, e.g.*, Plaintiff's Opposition at 22 (objecting to the declarations of Juarez, Gillis, Etter based on Plaintiff's cryptic argument that "it does not appear they have been disclosed in proper discovery requests); *Id.* at 24 (objecting to substantive portions of the Gillis declaration). Similarly, Plaintiff's Opposition appears to take issue with purported "Records Gone Missing" in connection with Shaw's Calendar and Moza's computer records. *Id.* at 22. As further discussed below, the Court should disregard the objections to the Juarez, Gillis, and Etter declarations, as Plaintiff has failed to provide adequate argument or authorities to support an objection under FED. R. CIV. P. 56(c)(2). *See* LOCAL RULE 7.1(d) ("[a]n opposed motion must be accompanied by a brief that sets forth the moving party's objections of fact and/or law, *and argument and authorities*") (emphasis added). While it is not entirely clear what relief Plaintiff's Opposition seeks by its "Records Gone Missing" paragraph, the Court should similarly disregard this improper objection as Plaintiff has not sought the appropriate relief.

## III.    LEGAL AUTHORITY AND ARGUMENT

### A.    Plaintiff Fails to Raise an Issue of Material Fact Regarding his FLSA Claim

As an initial matter, Plaintiff opens his brief by citing requirements for the administrative exemption under the Fair Labor Standards Act ("FLSA"). However, Defendant does not argue that Plaintiff falls under the administrative exemption. Rather, Defendant has demonstrated that Plaintiff's role as an Operations Supervisor qualified for the <u>executive</u> exemption under the FLSA.

Plaintiff appears to argue the following to support his position that he was not a manager:

- Plaintiff's job description stated that "management maintains the right to assign or reassign duties and responsibilities to this job at any time."

- Plaintiff worked on the warehouse floor with the employees and the equipment.

- Eartis Shaw, Operations Manager, was in charge of employees and made the decision as to whether to run an extra shift or not.

- Plaintiff's job was repetitive where he met with employees each morning discussing various safety issues and the day's activities and reminders.

- He was not aware of any grace period that was provided to DeNeill Evaite Hooper (the employee who had reported Plaintiff grabbed her jacket and threatened her).

- He did not set what time he was supposed to show up for work.

- Mickey Moza, Human Resources Representative, failed to conduct a sufficient investigation, which led to Plaintiff's termination.

Plaintiff cites to a March 4, 2022 email that was "sent out to management level employees" and instead of stating plainly that he did not receive this email, he instead craftily argues that Plaintiff's name was not on the document. (*See* Plaintiff's APP 37.) Yet, the email clearly states that it was sent to "Forney Supervisors." This an example of an attempt by Plaintiff to muddy the waters and manufacture purported fact issues. As discussed further in Defendant's Motion to Strike, much of Plaintiff's evidence is unauthenticated and inadmissible. Moreover, Plaintiff draws improper conclusions from the inadmissible evidence. However, even taking Plaintiff's arguments at face value, he fails to raise any issue of material fact regarding his FLSA claim.

Plaintiff does not deny the facts set forth in Defendant's MSJ. As discussed, Exel's job description for the Operations Supervisor role states 70 percent of that position involves "Associate Interaction," including conducting one-on-one coaching and performance reviews, directing

Associates' daily activities, and managing turnover of hourly staff. (Defendant's APP 189-191). Process improvement and planning were also responsibilities of the Operations Supervisors, as were conducting interviews and enforcing Exel's company policies. (*Id.)* Plaintiff does not deny any of this.

By Plaintiff's own account, he admits he "supervised a 45-member team," "manage[d] labor and expenses[,]" delegated work to staff and set their priorities, set employees' schedules, and "[r]ecruited, interviewed[,] and selected employees to fill vacant roles[.]" (*See* Defendant's APP 062-063 (Plaintiff's resumé); *see also* APP 041, Lines 9-21 (Plaintiff verifying the accuracy of his resumé); *see, e.g.,* APP 049, Line 25; APP 050, Lines 1-11 (Plaintiff testifying he would redirect employees throughout the day to ensure timely delivery of loads)). He also recommended a subordinate employee for promotion, which Exel granted. (Defendant's APP 047, Lines 22-25; APP 048, Lines 1-5). Plaintiff also avers he trained employees, monitored employee compliance with company policies, and coached employees who he identified as having performance problems. (Defendant's APP 062-063). Plaintiff claims he would monitor employee safety and productivity and, if someone was having an issue, he would discuss with them how to improve and, if those efforts were unsuccessful, would issue them disciplinary actions. (Defendant's APP 038, Lines 10-20; APP 039, Lines 14-19; APP 044, Line 25; APP 045, Lines 1-9; APP 051, Lines 6-15; APP 054, Lines 14-20). Moreover, Plaintiff claims his supervisor, Shaw, selected him to "rewrite and modernize" the procedural manuals for Exel's Forney, Texas warehouse, which he did based upon his knowledge and experience. (Defendant's APP 042, Lines 7-25; APP 043, Lines 1-17). When Exel relocated its operations from Terrell to Forney, Texas, Plaintiff testified he was in charge of shutting down and setting up Exel's operations at those facilities. (Defendant's APP 043, Lines 18-25). On a daily basis, Plaintiff used his skills and experience to determine how to

best address problems that had been reported to him by the prior shift's Operations Supervisor and to set the warehouse's priorities for the day. (Defendant's APP 008, Lines 16-25; APP 009, Lines 1-25; APP 010, Lines 1-25; APP 011, Lines 1-25; APP 012, Lines 1-5; APP 053, Lines 13-23). Plaintiff does not dispute any of this.

Plaintiff also raises a convoluted argument about Mr. Shaw knowing that Ms. Hooper could be late and failed to inform Mr. Moza – and that this failure to inform could constitute a material false representation especially in the context of a fiduciary relationship (if there even is one). In support of this argument, Plaintiff cites to *Diduck v. Kaszyci & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2nd Cir 1992). As an initial matter, the matter has received severe negative treatment and abrogation has been recognized by more recent cases. *See Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182 (2nd Cir. 2015). Moreover, this is a case regarding participants and beneficiaries of pension and welfare funds alleging breach of fiduciary duty by the trustee. It is unclear how this argument relates to Plaintiff's FLSA claim, or any of his other claims. Contrary to Plaintiff's assertion, this incoherent argument does not create a genuine dispute of material fact.

Plaintiff has not disputed the vast amount of evidence provided by Defendant and has failed to create a genuine dispute of material fact regarding his FLSA claim that he was improperly classified as an exempt employee. Accordingly, Defendant is entitled to summary judgment as a matter of law.

**B. Plaintiff Fails to Raise an Issue of Material Fact Regarding his Age Discrimination Claim**

*1. Plaintiff fails to establish the prima facie elements of his age discrimination claim*

Once again, Plaintiff relies on unauthenticated evidence on which he draws his own improper conclusion. Plaintiff asserts that he was replaced by an employee named John Ilegwu

Oloh, age 24. Plaintiff relies on a spreadsheet, which Plaintiff did not create, and that is in no way authenticated through deposition or otherwise. Incredibly, Plaintiff relies on his own unsupported and erroneous speculation as evidence and asserts that Mr. Oloh replaced Plaintiff because the unauthenticated spreadsheet reflects an "Adjusted Service Date" of March 16, 2022, and the supervisor was noted as Eartis Shaw. This is simply not admissible evidence. Moreover, Plaintiff disregards Defendant's evidence that he was in fact replaced by another existing worker who was age 41. (*See* Defendant's APP 073, Lines 9-17; APP 074, Lines 6-18; APP 126, Lines 5-9; APP 015, Line 25; APP 016, Lines 1-6, APP 186, ¶¶ 8-9.)

Plaintiff also asserts that Shaw would call Plaintiff "papa bear" and "old man." However, as Defendant has shown, while Shaw assisted to compile evidence in connection with the investigation related to Plaintiff, he was not one of the ultimate decision-makers in Plaintiff's termination. (Defendant's APP 068, Lines 16-25; APP 069, Lines 1-7; APP 069, Lines 16-20; APP 070, Lines 3-8; APP 171, Lines 4-14; APP 122, Lines 11-17; APP 174, Lines 3-24; APP 099, Lines 11-23; *see also* APP 132, Lines 18-24; APP 134, Lines 6-16 (Shaw stating that he gathered evidence as requested by Moza and informed Elliott of what evidence he gathered, "And then I had nothing else to do with [the termination decision]" though he did agree with the ultimate decision)). Moreover, Shaw gave Plaintiff raises and good performance reviews. (Defendant's APP 019, Lines 12-21; APP 019, Lines 22-25; APP 020, Lines 1-7).

Finally, Plaintiff again relies on the unauthenticated spreadsheet for the contention of a "pattern of age discrimination." Plaintiff asserts, based on the unauthenticated spreadsheet and his own speculation, that individuals ages 63, 65, and 46 were terminated. Plaintiff cites to no evidence regarding the circumstances of the individuals' separation (e.g. whether voluntary or involuntary, etc.). Even if Plaintiff's evidence was admissible, which is denied, Plaintiff conveniently fails to

mention that the spreadsheet reflects termination dates for a 24-year old, two 34-year olds, a 25-year old, and a 39-year old. (*See* Plaintiff's APP 135.) Ironically, Plaintiff admits that while the spreadsheet states he was 50 years old, in actuality, his actual age at termination was 49 years, 11 months, and 23 days – which is consistent with the evidence submitted by Defendant. (APP 185, ¶8.)

Plaintiff also claims that it is uncertain as to whom employee JA, employee No. 185446 was. However, Plaintiff has the unredacted deposition transcript and documents that Defendant cited and should have no issue identifying who employee JA is. (*See* Defendant's APP 108, Lines 19-25; APP 109, Lines 1-8; APP 203-205.) Accordingly, any claim that it is "uncertain" as to the identity of employee JA, is disingenuous at best. Plaintiff has failed his initial burden to establish the *prima facie* elements of his age discrimination claim.

**2.**     ***Plaintiff cannot overcome Defendant's legitimate, non-discriminatory reason for his termination***

Plaintiff was terminated because he put his hands on an employee and threatened her. (*See* Defendant's APP 155, Lines 24-25; APP 156, Lines 1-17; APP 027, Lines 21-25; APP 028, Lines 1-10; APP 182, Lines 2-10; APP 098, Line 25; APP 099, Lines 1-23; APP 075, Lines 3-20). Plaintiff essentially fails to address Defendant's legitimate, non-discriminatory reason for his termination other than convoluted references to purported deficiencies in the investigation. As stated in Defendant's MSJ, such dispute is immaterial. "[E]ven an employer's incorrect belief in the underlying facts—or an improper decision based on those facts—can constitute a legitimate, non-discriminatory reason for termination." *Amezquita v. Beneficial Texas*, 264 F. App'x 379, 386 (5th Cir. 2008) (citing *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)). Moreover, Plaintiff admits to "touch[ing]" Ms. Hooper's coat. (Plaintiff's APP 122 ¶24.)

Plaintiff appears to rely on the fact that he received unemployment compensation and that the Texas Workforce Commission ("TWC") stated that his termination was not misconduct connected. Plaintiff relies on a myriad of cases (largely non-Texas cases) to argue the Court should take judicial notice of the TWC decision. However, Plaintiff conveniently leaves out Section 213.007 of the Texas Labor Code regarding the Enforcement of the Texas Unemployment Compensation Act, which states:

> Sec. 213.007. COLLATERAL ESTOPPEL DOCTRINE INAPPLICABLE. A finding of fact, conclusion of law, judgment, or final order made under this subtitle is not binding and **may not be used as evidence** in an action or proceeding, other than an action or proceeding brought under this subtitle, even if the action or proceeding is between the same or related parties or involves the same facts.

Tex. Lab. Code § 213.007 (emphasis added). Accordingly, Plaintiff has not and cannot rebut Defendant's legitimate, non-discriminatory reasons for terminating his employment, and his age discrimination claim fails.

## C.    Plaintiff Fails to Raise an Issue of Material Fact Regarding his COBRA Claim

Plaintiff's COBRA argument is all of one paragraph. Plaintiff somehow contends that the declaration of Bruce Gillis does not state the actual Cobra notice was mailed to Plaintiff. However, Mr. Gillis' declaration clearly states:

> On or about March 22, 2022, Businessolver sent Plaintiff the required COBRA information on behalf of Defendant regarding the continuation of Plaintiff's health care coverage and other health care options at his last known address, 142 County Road 2437, Mineola, Texas 75773. Exhibit A attached is a true and correct copy of the COBRA Qualifying Event Notice /Election Form sent to Plaintiff.

(Defendant's APP 214 ¶7). Defendant has certainly satisfied the notice requirement under 29 U.S.C. §1161, *et seq.* and Plaintiff's COBRA claim fails as a matter of law. In fact, Plaintiff does not even argue that he did not receive the COBRA notice. Plaintiff further does not rebut Defendant's argument that he pursued this claim in bad faith despite knowing and being explicitly informed that the notice was timely sent. (*See* Defendant's APP 226, ¶ 3; APP 229-239; APP 240-

241). Accordingly, Defendant's attorneys' fees on this claim should be awarded.

**D.     Plaintiff Does Not Dispute That He is Not Entitled to Compensatory or Punitive Damages**

Plaintiff does not dispute Defendant's argument that it is entitled to summary judgment regarding Plaintiff's claims for compensatory damages, punitive damages, and any prejudgment interest.

**E.     Plaintiff Makes Unsubstantiated Accusation that "Records Gone Missing"**

Plaintiff alleges that Defendant Mr. Moza's computer contained details of whom he talked to, any notes that he made, correspondence he may have gathered, any evidence that he may have gathered during his investigation regarding Plaintiff. Defendant has produced what was in its possession, including witness statements, emails, and the corrective action form for Plaintiff (Defendant's APP 192-193; APP 194; APP 195; APP 196; APP 206-209; APP 210-211.) Accordingly, it is unclear as to what notes or evidence from Mr. Moza's investigation Plaintiff believes was on Mr. Moza's computer that would impact his claims. Plaintiff also asserts that "Mr. Shaw's calendar" were "records gone missing." It is unclear as to what relevance this calendar has on any of Plaintiff's claims and why it would create an issue of material fact.

Plaintiff's contention that documents have purportedly "gone missing" or that Defendant "failed" to produce documents is no more than a garden-variety discovery dispute—a dispute they should have raised within the discovery period. Yet now, Plaintiff is trying to manufacture a fact issue by raising this discovery matter in response to Defendant's MSJ. In essence, Plaintiff appears to argue that the Court should draw an adverse inference against Defendant about its proffered reasons for terminating Plaintiff's employment—*despite* the lack of either any argument about spoliation or any evidence that would support such adverse inference.[3] Put simply, Plaintiff has

---

[3] An adverse inference based upon spoliation of evidence requires a showing by the party seeking the adverse inference that the opposing party acted in bad faith. *See United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000).

not shown that the documentation issue ever existed or that there was any bad conduct by Defendant. Any argument for an adverse inference against Defendant under these circumstances fails.[4]

**F.    Plaintiff Improperly Objects to Witnesses**

Ironically, despite Plaintiff's reliance on inadmissible and unauthenticated evidence, Plaintiff objects to the declarations of Antonio Juarez, Bruce Gillis, and Andrew Etter on the grounds that "it does not appear they have been disclosed in proper discovery requests." Plaintiff cites to no authority to support this contention. The proper foundation has been laid in each of these declarations and Plaintiff does not contend otherwise. Should Plaintiff have legitimate grounds to object to any evidence presented by Defendant, Plaintiff should more appropriately do so in a motion to strike.

Moreover, at a minimum, Antonio Juarez was identified in deposition as one of the decisionmakers in Plaintiff's termination. (Defendant's APP 70, Lines 4-14.) Defendant testified extensively that a third-party benefits administrator handled COBRA notification and provided a copy of the notice. (Defendant's APP 178, Lines 21-25; APP 179, Lines 1-2; APP 179, Lines 14-17.) And finally, Plaintiff's counsel communicated directly with Mr. Etter, where Mr. Etter explicitly notified and provided Plaintiff's counsel a copy of the March 22, 2022 COBRA notice that was sent to Plaintiff. (Defendant's APP 226, ¶ 3; APP 229-239; APP 240-241.)

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that its motion for summary judgment be granted in its entirety, that summary judgment be issued in its favor as to all claims

---

Plaintiffs offer <u>no evidence whatsoever</u> from which the factfinder could conclude that Defendant acted in bad faith to destroy any documents.
    [4] *See id.; King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003).

and causes against them in the above-captioned case, and that the Court grant Defendant such other and further relief, in law or equity, to which it may show itself justly entitled.

Respectfully submitted,

*/s/ Annie Lau*
Annie Lau
Texas Bar No. 24057723
FISHER & PHILLIPS LLP
500 N. Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
*alau@fisherphillips.com*

**COUNSEL FOR DEFENDANT
EXEL INC. d/b/a DHL SUPPLY CHAIN**

## CERTIFICATE OF SERVICE

On the 19th day of March, 2024, I filed the foregoing document with the Clerk of Court for the United States District Court, Northern District of Texas, using the Court's Electronic Case Filing system. I hereby certify that I have served the document on all counsel of record by a manner authorized by FED. R. CIV. P. 5 (b)(2).

Bob Whitehurst
5380 Old Bullard Road, Suite 600, #363
Tyler, TX 75703
*whitehurstlawfirm@yahoo.com*

Donald E. Uloth
LAW OFFICE OF DONALD E. ULOTH
18208 Preston Road, Suite D-9 #261
Dallas, TX 75252
*don.uloth@uloth.pro*

*/s/ Annie Lau*
Annie Lau