## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JASON WALTERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:22-CV-01840-K |
| | § | |
| EXEL, INC. d/b/a DHL SUPPLY | § | |
| CHAIN, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendant Exel, Inc. d/b/a DHL Supply Chain's ("Exel")

Motion for Summary Judgment and Brief and Appendix in support thereof, Doc.

Nos. 55–57, Plaintiff Jason Walters's Response to Exel's Motion for Summary Judg-

ment and Brief and Appendix in support thereof, Doc. Nos. 58–60, Exel's Reply in

Support of Its Motion for Summary Judgment, Doc. No. 63, Mr. Walters's Motion for

Leave to File Reply Brief to Exel's Reply (the "First Motion for Leave"), Doc. No. 66,

Exel's Response to Mr. Walters's Motion for Leave to File Reply Brief to Exel's Reply,

Doc. No. 68, Mr. Walters's Motion for Leave to File Sur-Reply Brief to Exel's Reply

(the "Second Motion for Leave"), Doc. No. 67, Exel's Response to Mr. Walters's Mo-

tion for Leave to File Sur-Reply Brief to Exel's Reply, Doc. No. 69, Exel's Motion to

Strike Mr. Walters's Inadmissible Summary Judgment Evidence (the "Motion to

Strike") and Brief and Appendix in support thereof, Doc. Nos. 61–62, Mr. Walters's

Response to Exel's Motion to Strike, styled "Brief in Reply in Opposition to

Defendant's Motion for Summary Judgment," Doc. No. 64, and Exel's Reply to Mr. Walters's Response to Exel's Motion to Strike.  Doc. No. 65.  The Court **DENIES** Mr. Walters's First and Second Motions for Leave to file sur-reply briefs.

Upon consideration of the parties' remaining submissions, the Court **GRANTS** Exel's Motion for Summary Judgment.  In 2022, Exel initiated an investigation into a claim that one of its warehouse supervisors, forty-nine-year-old Jason Walters, grabbed an employee by the jacket and threatened to put her in a chokehold.  The investigation ended with Mr. Walters's termination.  He now sues Exel for firing him because of his age, for refusing to give him federally mandated overtime pay, and for failing to send him a timely notice of his right to continue his Exel-sponsored health coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").  The Court first dismisses the age discrimination claim because Exel's investigation gave it a valid reason to terminate Mr. Walters.  The Court then dismisses the overtime pay claim because Mr. Walters held a managerial position that was exempt from federal overtime pay requirements.  The Court lastly dismisses the COBRA claim because Exel's third-party benefits administrator mailed a timely notice of rights to Mr. Walters.  Having ruled in Exel's favor, the Court considers and rejects Exel's request to recover attorneys' fees.

## I.    BACKGROUND

### A. Mr. Walters's Job

In June 2011, Jason Walters went to work for Exel as an Operations Supervisor at a warehouse for Goodyear products.  Doc. No. 57 at 21, 64; Doc. No. 60 at 114.

He supervised a team that numbered forty-five individuals at its peak, and his responsibilities were multifarious. Doc. No. 57 at 54. He set priorities for workers on his shift; monitored their behavior, productivity, and compliance with rules and safety requirements; intervened to correct low-level misconduct, provide counseling, and defuse disagreements; and reported complaints to more senior personnel. Doc. No. 57 at 12–15, 27–28, 32–33, 38–41, 47–48, 50–56, 90–91, 102–03, 131, 139–41. He also oversaw the training of new employees, interfaced with vendors, and, at least on some occasions, picked up debris and boxes and loaded delivery trucks. *Id.* at 47, 56; Doc. No. 60 at 115. Although he could not hire and fire employees directly, he interviewed job candidates and could recommend them for hiring. Doc. No. 57 at 78–79, 90, 140–41; Doc. No. 60 at 115. When he did, there was no further review; Exel would hire the recommended candidate so long as they passed a background check and satisfied eligibility requirements. Doc. No. 57 at 78–79, 140–41.

Mr. Walters ostensibly had three or four twelve-hour shifts each week to accomplish all the tasks that fell to him, but he often worked more hours than scheduled. *Id.* at 14, 25; Doc. No. 60 at 53, 110, 114. Taken as a whole, about seventy percent of Mr. Walters's time went to training, supervising, directing, and resolving conflicts among his employees, fifteen percent went to planning work and considering process improvements, and the remaining fifteen percent was, per his job description, supposed to go to his other tasks. Doc. No. 57 at 102–03, 191–92. Monitoring safety was Mr. Walters's most common responsibility and took up a "majority" of his time. Doc.

No. 60 at 115.  A "great deal" of Mr. Walters's work involved giving instructions to employees about safety, as well as other operational matters.  *Id.*

Mr. Walters's had multiple superiors, the most immediate of which was Eartis Shaw, an Operations Manager who befriended Mr. Walters and gave him good performance reviews.  Doc. No. 57 at 19–22, 138.  Mr. Shaw regularly referred to Mr. Walters, who was born in 1972, as "paw paw," and sometimes as "papa bear" or "old man." *Id.* at 24; Doc. No. 60 at 117, 132.

### B. Workplace Rules

Mr. Walters and his team were subject to a collection of rules and policies imposed by Exel to curb "violen[t]," "offensive," and "harmful" behaviors.  Doc. No. 57 at 199, 203.  One rule prohibited "[t]hreatening or inflicting bodily harm on a co-worker, supervisor, manager or customer."  *Id.* at 201.  Breaking this rule was grounds for termination.  *Id.* at 88, 199–200.  An overlapping policy on workplace violence prohibited "[a]ctual or threatened physical contact" and "[d]irect, indirect or veiled threats."  *Id.* at 203.  Transgressing this policy was also grounds for termination.  *Id.*

### C. Mr. Walters Confronts an Action Supervisor

In the summer of 2020, Mr. Walters found himself on the wrong side of Exel's rules and policies.  *Id.* at 104.  Although the details of the incident are not entirely clear, it appears that Mr. Walters aggressively shoved an Action Supervisor at work. *Id.* at 89, 104.  After conducting an investigation, Exel found that Mr. Walters had not acted with ill intent and issued him a warning.  *Id.* at 89, 104–09.  His General

Manager, Adam Elliott, told him to not repeat his misconduct, advised him that similar misconduct would result in corrective action or termination, and stated that this warning would be the "one and only" he would receive. *Id.* at 99, 107–08.

### D. Mr. Walters Confronts an Associate

On March 10, 2022, another workplace incident involving Mr. Walters occurred. *Id.* at 170. After a meeting, Mr. Walters pulled aside several employees for a discussion because they had arrived late. *Id.* at 157–58, 208–09, 212. According to Mr. Walters, he reminded the employees to arrive on time and discussed "pre-shift topics," prompting one employee, DeNeill Evaite Hooper, to claim an exemption from the usual arrival deadline. *Id.* at 208–09, 212. She was apparently referring to an agreement she had with Mr. Shaw that, unbeknownst to Mr. Walters, authorized her to come to work late because her grandson's daycare opened at the same time work started. *Id.* at 156, 171; Doc. No. 60 at 116. Mr. Walters's response to Ms. Hooper was and remains the subject of some disagreement.

Ms. Hooper told Exel that Mr. Walters grabbed her jacket and pulled it. Doc. No. 57 at 170. Although silent security camera footage appears to confirm this account, Mr. Walters disputes it. *Id.* at 31, 62, 163–64, 214. He says he "touched" Ms. Hooper's jacket but did not "grab[]" it. Doc. No. 57 at 37–38; Doc. No. 60 at 116.

Ms. Hooper next reported that Mr. Walters told her to "calm down before he [put her] in a choke hold," which made her feel "threatened and violated." Doc. No. 57 at 158–59, 170. Two fellow employees who were not present, Tenisha and Shaquel

Thomas, spoke to Mr. Walters later and came away believing that Mr. Walters threatened to put Ms. Hooper in a chokehold. *Id.* at 109, 145, 157, 165, 196–97. Unlike Ms. Hooper, they also came away uncertain about whether Mr. Walters was joking. *Id.* at 109, 145, 157, 165, 196–97. For his part, Mr. Walters categorically denied threatening Ms. Hooper. *Id.* at 212. He instead claimed that he was talking to her about her safety equipment. *Id.* at 38, 212; *see also* Doc. No. 60 at 116.

### E. Exel Terminates Mr. Walters

Following the confrontation between Mr. Walters and Ms. Hooper, Exel initiated an investigation into the incident. Doc. No. 157 at 134. Mr. Elliott, the General Manager, Mr. Shaw, the Operations Manager, and Mickey Moza, a Human Resources Manager, collaborated in developing the relevant evidence. *Id.* at 70, 101, 132–34, 144–45. This evidence comprised security camera footage and five written statements setting forth the competing accounts of the incident described in the previous subsection. *Id.* at 77, 129. Three of the statements came from Mses. Hooper, Tenisha Thomas, and Shaquel Thomas. *Id.* at 126, 132–33, 170, 196–97. Two came from Mr. Walters. *Id.* at 129, 208–13. Other employees in the area where Mr. Walters confronted Ms. Hooper denied witnessing the incident. *Id.* at 132.

At the end of the investigation, Messrs. Elliott and Moza recommended Mr. Walters's termination. *Id.* at 71, 101, 176, 184. Meredith Singletary, a Senior Human Resources Director, Antonio Juarez, a Human Resources Director, and John

Dobbins, a Director of Operations, then approved the termination. *Id.* at 71–73, 99, 101, 124–25, 187.

Mr. Shaw conveyed the decision to Mr. Walters by phone on March 16, 2022. *Id.* at 130; Doc. No. 60 at 94. The content of this phone conversation is in doubt. Exel memorialized the conversation in a "Corrective Action Form" stating that Exel was notifying Mr. Walters of his termination for "threatening [an] associate," which Exel viewed as gross misconduct in violation of work rules. Doc. No. 60 at 94. The form also indicates that Mr. Shaw spoke to Mr. Walters specifically about the allegations that Mr. Walters grabbed Ms. Hooper and threatened her. *Id.* This does not match Mr. Walters's recollection. Although he agrees that Mr. Shaw informed him of his termination, Mr. Walters denies receiving any explanation for it. *Id.* at 117–18; Doc. No. 57 at 29.

### F. Mr. Walters Seeks Information About Continuing Insurance Coverage

Mr. Walters's firing left him concerned about his medical insurance. Doc. No. 60 at 126. Because Mr. Walters has a son who is a "special needs person that needs a lot of care," he was interested in covering his son and himself under his wife's medical insurance. *Id.*; Doc. No. 57 at 20. To facilitate this, he requested information from Exel about when his coverage would end. Doc. No. 60 at 126; Doc. No. 57 at 20.

On March 22, 2022, the third-party administrator of Exel's employee benefits plan printed and sent Mr. Walters a notice under COBRA, a statute that allows terminated employees to continue their health coverage in some cases. 29 U.S.C. §§ 1161–

63; Doc. No. 57 at 216, 227.  The notice stated that Mr. Walters's coverage had ended upon termination but could be extended under COBRA for eighteen months.  Doc. No. 57 at 218.  Mr. Walters asserts that he never received this notice.  *Id.* at 20; Doc. No. 60 at 117.  He nonetheless managed to get coverage under his wife's medical insurance.  Doc. No. 57 at 20.  He also obtained unemployment benefits after the Texas Workforce Commission found that Exel fired him "for a reason that was not misconduct connected with work."  Doc. No. 60 at 95, 117.

### G. Exel Replaces Mr. Walters

Sometime later, Exel chose a candidate to fill Mr. Walters's old role.  Doc. No. 57 at 17.  Exel says this was a forty-one-year-old Operations Supervisor with the initials "B.P.," whom it moved from another shift.  Doc. No. 57 at 17–18, 75–76, 128, 188.  Mr. Walters says it was a twenty-three-year-old individual named John Ifegwu Oloh.  *Id.* at 17; Doc. No. 60 at 117.

### H. Mr. Walters Files Suit

In August 2022, Mr. Walters sued Exel for failure to pay him overtime wages under the Fair Labor Standards Act ("FLSA") and for failure to provide him a timely COBRA notice.  Doc. No. 1.  He has amended his complaint twice and currently asserts a claim for wrongful age-based termination under the Age Discrimination in Employment Act ("ADEA") in addition to his FLSA and COBRA claims.  Doc. No. 18.

Exel has moved for summary judgment on all of Mr. Walters's claims and moved to strike a spreadsheet and several text messages presented by Mr. Walters as summary

judgment evidence.  Doc. Nos. 55, 61.  Exel also asks for an award of attorneys' fees incurred defending Mr. Walters's COBRA claim.  Doc. No. 56 at 29–30.  The Court now grants the Motion for Summary Judgment, denies the Motion to Strike as moot, and denies the request for attorneys' fees.

## II.   MOTION TO STRIKE AND EVIDENTIARY OBJECTIONS

Before considering Exel's Motion for Summary Judgment, the Court considers several evidentiary objections raised by the parties, including in Exel's Motion to Strike. The Court sustains one of Exel's objections to Mr. Walters's summary judgment evidence, denies Exel's Motion to Strike, and overrules all other objections.

The Court starts with the objection it sustains.  The evidence at issue is a decision of the Texas Workforce Commission granting Mr. Walters unemployment benefits on the finding that Exel fired him "for a reason that was not misconduct connected with work."  Doc. No. 60 at 95.  As Exel notes, Texas law prohibits the Court from considering this finding as evidence.  Under Texas Labor Code Section 213.007, a finding under the Texas Unemployment Compensation Act "may not be used as evidence in an action or proceeding, other than an action or proceeding under [the same] subtitle."  The Fifth Circuit has said that disregarding evidence covered by Section 213.007 is proper at summary judgment.  *Williams v. Aviall Servs.*, 76 F. App'x 534, 536 (5th Cir. 2003) (per curiam); *see also O'Brien v. Methodist Hosp.*, 2022 WL 18864879, at *9 (S.D. Tex. Dec. 23, 2022), *rep. & rec. adopted*, 2023 WL 2249985 (S.D. Tex. Feb. 24, 2023).  The Court accordingly disregards the Texas Workforce Commission's finding.

The Court overrules the parties' remaining objections.  In the Motion to Strike, Exel asks the Court to disregard a spreadsheet and certain text messages offered by Mr. Walters.  Doc. No. 61.  The spreadsheet records basic information about Mr. Walters's fellow Operations Supervisors, some of the text messages concern shift schedules, and other text messages concern Mr. Moza, one of Exel's Human Resources Managers.  Doc. No. 60 at 14–28, 122, 138.  Whether or not the Court considered these materials, it would resolve Exel's Motion for Summary Judgment the same way.  The Court therefore finds the Motion to Strike moot.  *Simms v. Am. Int'l Grp., Inc.*, 2002 WL 87344, at \*10 (N.D. Tex. Jan. 16, 2002) (Solis, J.).

The Court overrules Mr. Walters's first evidentiary objection for similar reasons. Mr. Walters claims that Exel failed to properly amend "and/or" supplement its interrogatories.  Doc. No. 64 at 5–7.  Although Mr. Walters asks the Court to strike "all of [Exel's] summary judgment evidence" on this basis, he does not explain why any of Exel's interrogatory responses other than its response to his third interrogatory require amendment or supplementation.  *Id.* at 7–8.  The Court therefore limits its attention to the third interrogatory, which asks for the name of the individual who replaced Mr. Walters at Exel.  Doc. No. 64-1 at 6.  Because the Court's decision does not depend on the identity of this individual, the Court overrules Mr. Walters's objection as moot.

The Court also overrules Mr. Walters's objections to two declarations filed by Exel.  Mr. Walters says these declarations do "not appear [to] have been disclosed in proper discovery requests."  Doc. No. 59 at 22.  Assuming Mr. Walters means that Exel

should have disclosed the declarations in response to (not in) discovery requests, the Court cannot sustain his objection because he has provided the Court with no information about the discovery requests. The Court cannot verify whether Exel complied or failed to comply with those requests.

That leaves Mr. Walters's last and most cryptic objection. He claims that Exel failed to produce "the computer records of Mr. Moza" or "the calendar of Mr. Shaw," Mr. Walters's manager. Doc. No. 59 at 21. He appears to believe that the computer records are relevant to his claim that Exel fired him because of his age, but it is unclear why the calendar is relevant. *Id.* at 21–22. It is also unclear what relief Mr. Walters seeks. Exel claims it produced Mr. Moza's documents and no longer possesses Mr. Shaw's calendar. Doc. No. 60 at 102–03. Mr. Walters has not asked the Court to draw the adverse inference that the calendar and any purportedly unproduced computer records were unfavorable to Exel, nor has he moved to defer a summary judgment ruling pending production of these documents. Both forms of relief also require showings Mr. Walters has not attempted to make. An adverse inference requires a showing that Exel acted with the intent to hide information from Mr. Walters, but Mr. Walters asserts only that evidence went missing during the parties' dispute. *See* Fed. R. Civ. P. 37(e)(2); *Ford v. Anderson Cnty.*, 102 F.4th 292, 324 (5th Cir. 2024) (per curiam); *see also Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1183 (11th Cir. 2020) (Grant, J.) ("[A]nticipation of litigation is not the standard for spoliation sanctions—bad faith is."). Deferral of a summary judgment ruling requires the submission of an affidavit or

declaration showing Mr. Walters needs discovery that will be material to the ruling, but Mr. Walters neither offers such a document nor tries to show that there is material discovery he needs to respond to Exel's summary judgment motion.  Fed. R. Civ. P. 56(d); *January v. City of Huntsville*, 74 F.4th 646, 651–52 (5th Cir. 2023).  Insofar as Mr. Walters wants the Court to disregard summary judgment evidence because of Exel's alleged failure to produce documents, he has not identified the evidence, and the Court overrules the objection.

## III.    SUMMARY JUDGMENT

Having resolved the parties' evidentiary disagreements, the Court takes up and grants Exel's Motion for Summary Judgment.

### A. Legal Standard

The Court grants motions for summary judgment when there is no genuine dispute between the parties about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if a reasonable jury could resolve the parties' factual disagreement in favor of either party and the resolution could affect the outcome of their litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record," showing that "the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1).  "The [C]ourt need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

### B. Discussion

The Court grants Exel summary judgment on each of Mr. Walters's three claims. The Court addresses Mr. Walters's ADEA claim in the next subsection, his FLSA claim in the subsection following, and his COBRA claim in a final subsection.

### 1. ADEA

The Court first grants Exel summary judgment on Mr. Walters's ADEA claim. While Mr. Walters claims that Exel terminated him because of his age, the record shows that Exel terminated him because a coworker, Ms. Hooper, accused him of grabbing her and threatening to put her in a chokehold.

The ADEA prohibits an employer from discharging an employee aged forty or older because of his age.  29 U.S.C. §§ 623(a)(1), 631(a); *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 178 (2009).  If an employee asserting a claim of wrongful discharge relies on circumstantial evidence, a three-step burden shifting framework applies to the claim. First, the employee must present a *prima facie* case that (1) his employer fired him from his job, (2) he was qualified for the job, (3) he was within the class protected by the ADEA, and (4) his employer (a) replaced him with someone outside the protected class, (b) replaced him with someone younger, or (c) otherwise discharged him because of his age.  *Benjamin v. Felder Servs., L.L.C.*, 753 F. App'x 298, 301 (5th Cir. 2018) (per curiam).  If the employee makes his *prima facie* case, "the burden shifts to the employer

to provide a legitimate, non-discriminatory reason for the employment decision." *Id.* (citation omitted). If the employer carries its burden, the employee may try to show that the employer's proffered reason is a pretext for discrimination. *Id.* at 301–02.

Since Mr. Walters relies on circumstantial evidence that Exel terminated him because of his age, this burden shifting framework applies. The parties disagree at the first step of the framework about the age of the employee who replaced Mr. Walters after his termination, but the Court will pass over this dispute. Doc. No. 59 at 23; Doc. No. 63 at 9. Assuming Mr. Walters is right that he has made a *prima facie* case of discrimination, his claim still fails at the second and third steps of the framework.

At the second step, Exel undisputedly offers a legitimate, non-discriminatory reason for terminating Mr. Walters. Prior to his termination, Exel found evidence that Mr. Walters twice engaged in or threatened physical violence to others at his warehouse. On the earlier occasion, Exel found evidence that Mr. Walters aggressively shoved another worker and gave Mr. Walters a warning that similar misconduct could result in termination. *Id.* at 89, 99, 104, 107–08. On the later occasion, Exel found evidence that Mr. Walters grabbed Ms. Hooper's jacket and threatened to put her in a chokehold unless she calmed down. Doc. No. 57 at 31, 62, 109, 145, 157–59, 163–65, 170, 196–97, 214. The latter conduct was grounds for termination under Exel's rules and policies, and Exel duly cited the conduct in its record of Mr. Walters's termination. *Id.* at 88, 130, 199–203; Doc. No. 60 at 94. This was a legitimate reason for

the termination. *See Davis v. Wal-Mart Stores, Inc.*, 2013 WL 5935235, at *3 (W.D. La. Nov. 5, 2013).

Mr. Walters's proffered evidence of his innocence does not alter this conclusion. The ADEA prohibits age discrimination, not good faith mistakes picking among the reasonable inferences presented by an investigation into an employee's complaint. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010). The Court expresses no opinion on the wisdom of Exel's decision to fire Mr. Walters as a result of its investigation into Ms. Hooper's complaint against him. The Court simply notes that Mr. Walters offers no reason to think Exel acted on the evidence supporting Ms. Hooper's complaint because of his age. *See Mitchell v. TJX Cos.*, 2019 WL 3806369, at *6 (N.D. Miss. Aug. 13, 2019); *Moore v. Macy's Retail Holdings, Inc.*, 2019 WL 1979363, at *2 (N.D. Tex. May 3, 2019) (Godbey, J.); *Cartagena v. Aegis Mortg. Corp.*, 275 F.3d 46, 2001 WL 1268730, at *4 (5th Cir. 2001) (per curiam) (Title VII).

The Court finds no support for Mr. Walters's argument that Exel's disciplinary rationale for his firing was a pretext for age discrimination. At the third step of the burden shifting framework, Mr. Walters points to evidence that Mr. Walters's manager, Mr. Shaw, called Mr. Walters "old man" or "paw paw." *Id.* at 24; Doc. No. 60 at 117, 132. Whatever Mr. Shaw may have meant by using these nicknames, it was immaterial to Mr. Walters's termination. Mr. Shaw neither participated in the decision to fire Mr. Walters nor recommended that decision. It was Mr. Elliott, a General Manager, and Mr. Moza, a Human Resources Manager, who recommended the termination,

15

and it was Meredith Singletary, a Senior Human Resources Director, Antonio Juarez, a Human Resources Director, and John Dobbins, a Director of Operations, who approved the termination. *Supra* Section I.E.  If Mr. Shaw exercised a more subtle influence on the termination decision, Mr. Walters has not attempted to show it.  The Court has no basis to infer that any ageist attitude held by Mr. Shaw infected the decision on these facts. *See Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 323 (5th Cir. 2020) (per curiam) (supervisor's ageist comments were not evidence of pretext because he did not influence the decision to terminate plaintiff); *Jones v. Cemex, Inc.*, 2019 WL 1259330, at *4–5 (S.D. Tex. Mar. 1, 2019) (similar), *rep. & rec. adopted*, 2019 WL 1255228 (S.D. Tex. Mar. 19, 2019).

Mr. Walters also highlights evidence that Exel terminated at least three other Operations Supervisors over the age of forty, but this provides a seriously incomplete picture of the record.  Doc. No. 59 at 23–24.  The same document on which Mr. Walters relies for his figure suggests that Exel terminated ten Operations Supervisors between November 2019 and April 2022, five of whom were over the age of forty and five of whom were under the age of forty.  Doc. No. 60 at 138; *see Koteras v. Briggs Equip., Inc.*, 2020 WL 13609337, at *7 (W.D. Tex. May 12, 2020) ("Plaintiff's argument regarding the terminations he has cited ignores that other, younger employees were also terminated."), *aff'd*, 854 F. App'x 583 (5th Cir. 2021) (per curiam).  According to that document, the total pool of Operations Supervisors in this period comprised twelve employees over the age of forty and eight under the age of forty.  Doc. No. 60

16

at 138.  Far from showing a pattern of terminations favoring younger Operations Su-pervisors, these figures suggest that Exel disproportionately fired its younger Opera-tions Supervisors.  *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 400 (6th Cir. 2008).  Absent additional evidence linking one or more of the cited terminations to discrimi-natory intent in Mr. Walters's termination, this statistical pattern hardly shows that Exel's stated reason for Mr. Walters's termination was pretextual.  *See Jefferson v. Mil-lerCoors, L.L.C.*, 440 F. App'x 326, 331 (5th Cir. 2011) (per curiam) (citing *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1184 (5th Cir.1996)); *Kennedy v. Parkview Baptist Sch., Inc.*, 2014 WL 7366256, at *10 (M.D. La. Dec. 24, 2014), *aff'd*, 618 F. App'x 233 (5th Cir. 2015) (per curiam).

The Court concludes that Exel had a legitimate, non-discriminatory, and unre-butted reason for terminating Mr. Walters after it discovered evidence he grabbed and threatened Ms. Hooper.  The Court accordingly dismisses Mr. Walters's ADEA claim.

### 2.  FLSA

The Court next grants Exel summary judgment on Mr. Walters's claim for over-time pay under the FLSA.  Exel has shown that Mr. Walters's position with the com-pany was exempt from the FLSA's overtime requirements.

Under the FLSA, covered employees are entitled to a minimum wage of $7.25 an hour and time-and-a-half pay for work in excess of forty hours a week.  29 U.S.C. §§ 206(a)(1)(C), 207(a)(1); *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023).  Some employees are not covered by these pay provisions because of the nature

of their work.  29 U.S.C. § 213(a).  Relevant here is the "executive exemption" from the pay provisions, which withdraws the FLSA's minimum wage and overtime protections from employees "employed in a bona fide executive . . . capacity." *Id.* § 213(a)(1). An employee employed in a bona fide executive capacity is an employee:

> (1) Compensated on a salary basis at not less than the level set forth in [29 C.F.R.] § 541.600;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  Between Mr. Walters's hiring and firing, the required salary level increased from $455 a week to $684 a week.  *Compare id.* § 541.0600(a) (2011), *with id.* § 541.0600(a) (2022).

Exel contends that Mr. Walters is an exempt executive, and Mr. Walters disagrees.  Doc. No. 56 at 20; Doc. No. 59 at 4–5.  Although Mr. Walters's briefing is unclear, he appears to dispute only the assertion that he engaged in management.  A Department of Labor regulation provides that:

> "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and

grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Applying this standard, the Court finds that Mr. Walters's work as a warehouse Operations Supervisor was managerial. The record shows that Mr. Walters oversaw a team of up to forty-five employees and carried out multiple duties defined by regulation as management. Doc. No. 57 at 54. He interviewed prospective employees, and Exel invariably hired candidates he recommended unless they failed a background or other eligibility check. *Id.* at 27, 79, 102. He also supervised the training of employees, planned the work priorities for their shifts, and then directed their work. *Id.* at 12–15, 27–28, 32–33, 47–48, 50–56, 90–91, 131, 139–41. Other managerial duties unenumerated by regulation but closely related to the enumerated duties fell to Mr. Walters as well. These included reviewing productivity reports and monitoring employees for compliance with Exel's rules and safety requirements. *Id.* at 38–41, 56. Considered in its totality, the record shows that Mr. Walters engaged extensively in management. *See Ramos v. Baldor Specialty Foods, Inc.*, 2011 WL 2565330, at *6 (S.D.N.Y. June 16, 2011) (warehouse captain with several similar duties engaged in management), *aff'd,* 687 F.3d 554 (2d Cir. 2012); *Branstetter v. Gen. Parts Distrib., LLC,* 2013 WL 6780672, at *11 (D. Or. Dec. 19, 2013) (similar).

19

The Court is unconvinced by Mr. Walters's attempts to downplay the evidence of his managerial work.  Mr. Walters's theme is that his work required little independent judgment.  *See* Doc. No. 59 at 3–5.  He appears to rely on the fact that his superiors set his schedule, gave him directions he had to obey, tasked him with monitoring employee safety, and had him issue reminders about safety and operational matters that were often repetitive.  *See id.* at 5; Doc. No. 60 at 115–16.  He also complains that his superiors failed to tell him when they gave one of his employees, Ms. Hooper, dispensation to come to work late.  *See* Doc. No. 59 at 5–11.  These facts prove that Mr. Walters was not Exel's top manager, but they are consistent with Mr. Walters being a middle manager.  An employee does not cease to be a manager simply because he manages within constraints imposed by more senior personnel.  *See Aguirre v. SBC Commc'ns, Inc.*, 2007 WL 2900577, at *20–21 (S.D. Tex. Sept. 30, 2007) (Rosenthal, J.), *aff'd*, 299 F. App'x 315 (5th Cir. 2008) (per curiam); *Ramos*, 2011 WL 2565330, at *6 n.5; *Williams v. Vynckier Enclosure Sys., Inc.*, 2005 WL 2810709, at *10 (S.D. Tex. Oct. 27, 2005).  Mr. Walters exercised managerial functions like monitoring, directing, and correcting employees despite the limitations imposed on him by superiors.

Mr. Walters makes one other point in opposition to classifying his work as managerial, but he does not properly present it in his summary judgment briefing.  In his response to Exel's Motion to Strike he suggests that he performed manual labor.  Doc. No. 64 at 10.  Even if it were properly presented, this fact would not change the proper classification of his work.  Managerial work need only be his "primary duty" to support

the classification.  29 C.F.R. § 541.700(a); *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 F. App'x 301, 305 (5th Cir. 2008) (per curiam).  There is no serious dispute that this was the case.  Mr. Walters spent approximately seventy percent of his time training, supervising, directing, and resolving conflicts among his employees.  Doc. No. 57 at 103, 191.  He spent another fifteen percent of his time planning work and evaluating process improvements.  *Id.*  His job description called for him to spend the remainder of his time on tasks like interviewing prospective employees, counseling current employees, interfacing with vendors, and reviewing performance reports.  *Id.* at 191–92. Mr. Walters himself admits that he spent the "majority" of his time monitoring employee safety and that a "great deal" of his work involved giving instructions to employees.  Doc. No. 60 at 115.  That Mr. Walters did some manual work loading items on trucks and picking up debris does not alter the inference that his primary duty was managerial.  *Id.*; *see Velazquez Fernandez v. NCE Foods, Inc.*, 405 F. Supp. 2d 179, 194 (D.P.R. 2005) (primary duty of warehouse manager was management even though he loaded trucks), *aff'd*, 476 F.3d 6 (1st Cir. 2007).

The Court concludes that Mr. Walters's primary duty was management.  Since the other elements of the executive exemption are undisputedly satisfied, Mr. Walters's position was exempt from the FLSA's overtime provisions.  The Court therefore dismisses his claim for overtime pay.

### 3.  COBRA

The Court lastly grants Exel summary judgment on Mr. Walters's claim that he failed to receive a notice of his rights to continuing health benefits under COBRA.  The record evidence demonstrates that Exel discharged its duty to provide notice by having its third-party administrator mail a summary of Mr. Walters's rights to him.  Although the Court rules for Exel, it exercises its discretion not to award Exel attorneys' fees incurred defending Mr. Walters's COBRA claim.

COBRA allows an employee covered by his employer's qualifying group health benefits plan to elect continuing coverage after his termination so long as his employer did not fire him for gross misconduct.  29 U.S.C. §§ 1161(a), 1163(2).  The employer must notify its plan administrator of the termination within thirty days of its occurrence, and the administrator must notify the employee within fourteen days of the employer's notification.  *Id.* §§ 1166(a)(2)–(4), (c).  If the administrator fails to provide the employee with proper notice, the employee may sue the administrator to recover health benefits and civil penalties.  *Id.* §§ 1132(a), (c)(1); 29 C.F.R. § 2575.502c-3.

Mr. Walters claims that he did not receive a COBRA notice from Exel.  Doc. No. 18 ¶¶ 59–68; Doc. No. 57 at 20; Doc. No. 60 at 117.  The parties do not dispute that Exel administers its employees' health plan, so the Court will assume that Exel is a proper defendant.  *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 466 & n.25 (5th Cir. 2018).  The parties' disagreement instead centers on the adequacy of Exel's efforts to give the notice Mr. Walters never received.

Department of Labor regulations provide that required notice "shall be furnished in any manner consistent with the requirements of [29 C.F.R.] § 2520.104b–1." 29 C.F.R. § 2590.606-4(f). The cross-referenced Section 2520.104b-1 states that a plan administrator required to furnish a document "shall use measures reasonably calculated to ensure actual receipt of the material." The Court therefore asks whether Exel used such measures to convey a timely COBRA notice to Mr. Walters. *DeBene v. BayCare Health Sys., Inc.*, 688 F. App'x 831, 839 (11th Cir. 2017) (per curiam).

It did. Exel terminated Mr. Walters on March 16, 2022. Doc. No. 57 at 188; Doc. No. 60 at 114. About six days later, Exel's third-party administrator printed a COBRA notice and sent it to him at his last known address. Doc. No. 57 at 216, 227. This mailing was timely and reasonably calculated to ensure that Mr. Walters received the notice. The Department of Labor's regulations expressly contemplate the possibility that notice will be sent by "first, second, or third-class mail." 29 C.F.R. § 2520.104b-1; *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007) (interpreting the same regulations in a different context). Courts have likewise approved notice by mail. *E.g.*, *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016); *Myrick v. Discover Bank*, 662 F. App'x 179, 183 (3d Cir. 2016) (per curiam); *Hearst v. Progressive Foam Techs., Inc.*, 641 F.3d 276, 281 (8th Cir. 2011); *DeBene*, 688 F. App'x at 839–40; *cf. also Degruise v. Sprint Corp.*, 279 F.3d 333, 337 (5th Cir. 2002) (approving mail notice prior to the Department of Labor's adoption of its current notice regulations). Since there is no indication that mailing was inappropriate under the

circumstances of this case, the Court follows these authorities and finds that the mailing to Mr. Walters sufficient satisfied Exel's notice obligations under COBRA.

Having found that Exel made a reasonable effort to notify Mr. Walters of his COBRA rights, the Court dismisses Mr. Walters's COBRA claim and turns to Exel's request to recover attorneys' fees incurred defending that claim. In a COBRA proceeding, the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party. 29 U.S.C.A. § 1132(g). Five factors guide the Court in the exercise of its discretion. *Randolph v. E. Baton Rouge Par. Sch. Sys.*, 19 F.4th 749, 759 (5th Cir. 2021). They are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Wegner v. Standard Ins. Co.*, 129 F.3d 814, 821 (5th Cir. 1997); *Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 347 (5th Cir. 2017). The Court finds that none of these factors provide more than weak support for a fees award in this case and that an award is, on balance, unwarranted. *See Tenet Healthcare Ltd. v. UniCare Health Plans of Tex., Inc.*, 2008 WL 5101558, at *18 (S.D. Tex. Nov. 26, 2008); *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 358 (5th Cir. 1991).

## IV.     CONCLUSION

The Court **GRANTS** Exel's Motion for Summary Judgment and **DISMISSES** Mr. Walters's claims with prejudice.  The Court **DENIES** Exel's Motion to Strike as moot.  A final judgment will issue separately.

**SO ORDERED.**

Signed July 29th, 2024.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE